FILED

AUG 0 5 2004

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. W-99-CR-70(1)** |
| | § | |
| | § | |
| **CHRISTOPHER ANDRE VIALVA.** | § | |

### MOTION TO DISQUALIFY THE OFFICE OF THE UNITED STATES ATTORNEY, WESTERN DISTRICT OF TEXAS

TO THE HONORABLE COURT:

This Honorable Court ordered the United States Attorney to "show evidence . . . that Mr. Dwight Goains has been screened from the above captioned matter." (Doc. 379). The United States responded that Mr. Goains's geographic location and alleged isolation in Alpine, Texas, has created an effective screen. Resp. at 4 (Doc. 397/398). The facts show that no such effective screen existed. In the absence of an effective screen, Mr. Goains requested permission to communicate with defense counsel from his supervisor. In so doing, Mr. Goains necessarily revealed some of the substance of post-conviction counsel's investigation and case strategy, breaching his ongoing duty to keep client confidences. Mr. Goains's conduct and that of the Office of the United States Attorney falls far short of the diligence required in any case, much less a capital case, to protect the integrity of the proceedings or Mr. Vialva's rights. Noted legal ethicist Lawrence Fox has concluded, "the government's response demonstrates a wholesale violation by the U.S. Attorney's office of the professional responsibility obligations it presently owed Mr. Vialva in light of his having been represented by Mr. Goains." *See* Supp. Decl. of Lawrence J. Fox at 1, attached hereto as Exhibit 1.[1]

---

[1]Mr. Fox submitted a declaration in support of Mr. Vialva's claim that Mr. Goains was and is a conflicted lawyer. *See* Doc. 372, 373 at Ex. II-A (incorporated herein by reference).



Mr. Vialva herein moves for disqualification of the Office of the United States Attorney for the Western District of Texas.

## I.    The Uncontested Facts Demonstrate Disqualification is Required

The United States does not contest that Mr. Goains is prohibited from assisting the United States in this case.[2] The United States does not contest that screening is the appropriate mechanism to isolate Mr. Goains from the United States Attorney's Office ongoing work on Mr. Vialva's case. The United States admits that Mr. Goains did not execute a formal recusal as required under rules 3-2.220 and 3-2.170 of the United States Attorney Manual and offers no explanation for Mr. Goains's failure to comply with these mandatory rules. *See* Resp. at 3. The United States admits that it did not promulgate a formal or informal advisory of recusal. *Id.* The United States admits that Mr. Goains spoke to his supervisor about this case and requested "permission [from the United States] to respond to [Mr.] Vialva's § 2255 counsel's informational request." *Id.* at 2. That action caused Mr. Goains to necessarily reveal to the United States some aspects of Mr. Vialva's current post-conviction defense investigation and case strategy and breached Mr. Goains's duty to Mr. Vialva to keep client confidences. Nevertheless, the United States argues that the United States meets the standards required for effective screening because Mr. Goains lives in a remote area of Texas and has been "*de facto*" geographically screened from relevant matters. *Id.* at 4.

## II.    There Was No Effective Screen and Disqualification Is Required

There was no formal screen in this case. Contrary to the express rules of the Department of Justice, no recusal papers were filed by Mr. Goains and no procedures were implemented to notify

---

[2]Mr. Goains's representation of Mr. Vialva is detailed in Doc. 376 at 2, which is incorporated herein by reference with exhibits.



the employees of the United States Attorney's Office for the Western District of Texas or any investigative agencies that no contact should take place with Mr. Goains regarding the Vialva case. In the absence of a formal recusal or screen, the United States is forced to argue that a *"de facto"* or geographic screen insulates the United States from this disabling conflict.  The United States is wrong.

A geographic screen is insufficient to insulate this case from the impermissible conflict. Although Mr. Goains may be hundreds of miles away from Waco, Mr. Goains is but a keystroke away from accessing electronic documents, or conversing by telephone or electronic mail about the case as he apparently did when from Alpine, Texas, he contacted the Chief of the Criminal Division in San Antonio.  Screening "must be designed both to eliminate opportunities for inadvertent disclosure and to provide a genuine appearance of a security wall around the subject attorney." *State ex rel. Romley v. Superior Court*, 908 P.2d 37, 42 (Ariz. Ct. App. 1995).  Effective screening should include instructing the office on the screen, prohibiting access to the files on the case, and establishing "codes necessary to [control] access [to] pertinent information on electronic hardware." *United States v. Goot*, 894 F.2d 231, 236 (7th Cir. 1990); *see also Hart v. State*, 62 P.3d 566, 572 (Wyo. 2003) (promulgating guidelines for screening conflicted government attorneys including notice to all office staff of the existence of the screen and controlling access to files).  Here nothing was done to prevent Mr. Goains's disclosure of confidential information.  Nothing was done to alert United States Attorney employees or their colleagues in the investigative agencies that they should not at interdepartmental meetings or CLEs or through general announcement electronic mails inadvertently or intentionally discuss the matter with Mr. Goains.  In this day and age, with teleconferencing, electronic access to documents, electronic mail, district wide docketing systems,

and the like, it is not reasonable to assume that geography alone is sufficient to insulate the United States Attorney's Office from this conflict. *See also*, Supp. Decl. of Lawrence J. Fox, attached hereto as Ex. 1 at 4-5.

Most importantly, even if a "*de facto*" screen could theoretically by geography alone insulate Mr. Goains from inadvertent disclosure of confidential information, it did not do so in this case. The geographic screen did not prevent Mr. Goains from requesting permission from his supervisor to answer a defense request for information. Resp. at 2. The geographic screen did not prevent Mr. Goains from breaching client confidentiality when he revealed that defense counsel sought information about his employment with the United States Attorney's Office prior to that issue being raised in Mr. Vialva's 2255 Motion. *Id.* We cannot know the full ramifications of that communication because we are not presented with evidence of what Mr. Goains's supervisor did or did not do with that privileged communication. But we do know that, after that communication was made, Mr. Goains refused to cooperate fully with defense counsel's investigation by, among other things, refusing to sign an affidavit attesting to his conduct – something he has been more than willing to do for the United States.[3] The United States is clearly in error when it claims that the alleged "*de facto*" screen has been effective, that no improper communication or that no harm has occurred.

Screening is "the isolation of a lawyer from any participation in a matter through the ***timely*** imposition of procedures . . . that are reasonably adequate under the circumstances to protect information that the isolated lawyer is obligated to protect." MODEL RULES OF PROFESSIONAL

_____

[3]Mr. Goains's continuing conflict and his hindrance of defense counsel's investigation of that conflict is documented in Mr. Vialva's Motion to Vacate under 28 U.S.C. § 2255 and memorandum in support which is incorporated with exhibits herein by reference. (Docs. 372, 373, 374).

4

208

CONDUCT Rule 1.0(k) (5th ed. 2003) (emphasis added). "[T]o be effective, screening measures must be implemented *as soon as practical* . . . ." *Id.* cmt. [10] Rule 1.0 (emphasis added).  When the conflict arises upon employment, screening must be implemented *before* a conflicted lawyer begins the employment of the work that creates the conflict.  *See Goot*, 894 F.2d at 235 ("screening began before [the affected attorney] took office . . . . and [t]he screening mechanisms employed were in accordance with established institutional procedure.").  Here, because there was no action before Mr. Goains undertook his employment there can be no remedy now other than disqualification, especially after the disclosure of confidential client information as has taken place.  *Goot*, 894 F.2d at 235 ("The predominant theme running through this court's prior decisions is that *disqualification is required* when screening devices were not employed or were not timely employed.") (emphasis added); *State v. Stenger*, 760 P.2d 357, 361 (Wash. 1988) (en banc) (when lawyer "did not effectively screen and separate himself from the case" disqualification is required).

## III.    Request for Relief

For all the foregoing reasons, Mr. Vialva herein moves for the disqualification of the Office of the United States Attorney for the Western District of Texas from this case in its entirety.

Dated this 4th day of August, 2004.

Respectfully submitted,

SUSAN M. OTTO
Oklahoma Bar No. 6818
Federal Public Defender
Western District of Oklahoma


LISA S. McCALMONT
Texas Bar No. 24007629; Oklahoma Bar No. 17096
Assistant Federal Public Defender
Death Penalty Federal Habeas Corpus Division
215 Dean A. McGee, Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930
Telefacsimile: 405 609-5932

**COUNSEL FOR DEFENDANT/MOVANT
CHRISTOPHER ANDRE VIALVA**

## CERTIFICATE OF SERVICE

I certify on the 4th day of August, 2004, a true and correct copy of the foregoing and a copy of the proposed Order was sent via first class mail, postage prepaid to:

For the United States:

Mr. Mark Frazier,
Assistant United States Attorney,
Chief, Waco Division,
800 Franklin Avenue Suite 280,
Waco, Texas 76701

Mr. Mark R. Stelmach
Mr. Douglas Gardner
Ms. Elizabeth Cottingham
Assistant U.S. Attorneys
816 Congress Avenue, Suite 1000
Austin, Texas 78701

6

For Defendant/Movant Brandon Bernard:

Mr. Rob Owen
Law Offices of Owen & Rountree, L.L.P.
P.O. Box 40428
Austin, Texas 78704

Robert H. Gombiner
Assistant Federal Public Defender
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101

Susan M. Otto

209

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CRIMINAL NO. W-99-CR-070(1) |
| | § | |
| CHRISTOPHER VIALVA | § | |

SUPPLEMENTAL DECLARATION
OF
LAWRENCE J. FOX

I have been asked to supplement my original declaration in the above-captioned matter to address this Court's request that the United States of America demonstrate that Dwight Goains, Esq., Mr. Vialva's former lawyer, had been screened from this proceeding and the government's response thereto dated July 30, 2004. I have concluded to a reasonable degree of professional certainty that the government's response demonstrates a wholesale violation by the U.S. Atorney's office of the professional responsibility obligations it presently owed to Mr. Vialva in light of his having been represented by Mr. Goains.

**The Non-existent Screen Was Violated**

First, and truly extraordinarily, the response demonstrates that any pretense that Mr. Goains was in some haphazard way screened from this matter is totally untrue. We learn that, in fact, Mr. Goains went to officials in the U.S. Attorney's office to obtain "permission to respond to Vialva's Section 2255 Counsel's Informational Request and discussing the provisions of this affidavit." That statement reflects two violations of the so-called screen.

CR No. W-99-CR-70(1)
Defendant's Mot. to Disqualify

Exhibit 1

What was Mr. Goains doing asking anyone for permission to respond to Counsel's Informational Request? As former counsel for Mr. Vialva the request from Mr. Vialva's present counsel was a confidential inquiry. The U.S. Attorney's office was not entitled to know the request was made, let alone engage in any discussions about the request. It shocks the conscience to think that the former counsel for Mr. Vialva would so cavalierly breach his duties to his former client, thereby demonstrating yet an additional reason why the U.S. Attorney's office must be disqualified from handling this case. We will never know what was discussed in Mr. Goains' request for permission. We don't have to know. What we do know is a conversation took place that makes a mockery of any assertion that a de facto screen was employed.

Moreover, we learn that further discussion took place between Mr. Goains and the U.S. Attorney's office over this affidavit. What were those discussions? Again, we will never know; but what we do know is that rather than Mr. Goains' being screened from the case, he had discussions regarding his affidavit, which by definition had to include the discussions of client confidential information relating to Mr. Vialva, and also by definition represented attempts by Mr. Goains to lend his assistance to the representation of the U.S. Attorney's office adverse to his former client Mr. Vialva. Mr. Goains, in my view, did not know anything about his ethical obligations when he represented Mr. Vialva (see my original declaration) and, ever since that representation ended, he has simply compounded his earlier ethical lapses.

The fact is that one cannot maintain with a straight face the proposition that an "informal" screen was in place when one is forced to admit that these discussions took place. An effective screen would have meant that Mr. Goains would have responded to Mr. Vialva's counsel without anyone at the U.S. Attorney's office even learning about the request, let alone

being asked to grant permission and, if Mr. Goains were required to provide information to this Court, he should have done so without any discussions with his colleagues at the U.S. Attorney's office.

### The U.S. Attorney's Office Never Implemented a Screen

Even if neither of these discussions had taken place, the response of the U.S. Attorney's office regarding the "screen" would demonstrate the U.S. Attorney's office failed to fulfill the obligations imposed upon the lawyers employed there by the rules of professional conduct.

To understand this point some essential background regarding fundamental ethical principles must be recognized. Lawyers are committed to being loyal to their clients. One aspect of that loyalty is that all lawyers in the same practice setting are subject to the conflicts of interest of every other lawyer in the same office. This is called imputation.

In a few selected instances the rules provide that the principles of imputation can be overcome. One of the most important of these addresses the situations in which government lawyers enter private practice or vice versa. In those instances it is said that the traveling lawyer – entering or leaving private practice – will be allowed to take on the new employment without infecting his or her new colleagues with the new lawyer's conflicts.

But there is a major condition to this exception: The new lawyer must be screened. There is no such thing as a de facto screen. There is no such thing as an informal screen. There is no such thing as a valid assertion that even though we forgot to put a screen in place, the person was somehow screened nonetheless.

While there can be a discussion about how far one must go in implementing a screen, one thing is perfectly clear: a screen, in order to be effective, must be put in place at the outset of the representation, and a screen must include specific, well-communicated procedures that are

- 3 -

designed to assure that no conversations or contacts take place between the lawyers handling the matter and the lawyer or lawyers who are screened. At a minimum a screen includes notice to everyone involved, the securing and legending of files, the establishing of computer firewalls and specific pass codes, and the regular reaffirmation of the screen to all personnel over time as a reminder that the screen continues.

The reason for this is clear. It is simply not enough, under the professional rules of conduct, for the aggrieved former client to be told that there will be or that there have been no contacts. We do not ask clients to "trust us." We tell clients in these rare situations in which allow screening, that specific steps will be taken to protect the loyalty interest their former lawyers owe them and the confidentiality of their information, as well.

It is particularly ironic for the U.S. Attorney's office to ask Mr. Vialva and this Court to trust Mr. Goains. Not only does Mr. Goains' present affidavit demonstrate he is not trustworthy, as explained above, but it is Mr. Goains who was so oblivious of his ethical obligations during his representation of Mr. Vialva, that he failed to inform his own client he had been engaged in discussions with Mr. Vialva's opponent for months before disclosing this disabling conflict of interest on the eve of trial.

Needless to say, given the foregoing, it is totally unavailing for the U.S. Attorney's office to argue that Mr. Goains was many miles away from the lawyers working on the present matter, and therefore – even though no screen was in fact implemented – the client should have no concerns. In a world of the internet, linked computers, cell phones and faxes, such a so-called "geographical" screen has no meaning. Screens can be breached inadvertently or intentionally, on a conference call, through e-mail, via a database search, or in a myriad of other ways that do not require the offending lawyers to be in the same physical location or even in the same country.

- 4 -

Indeed in other contexts, the U.S. Attorney's office touts that it is able to bring to bear on matters its outstanding lawyers from "Main Justice" and other U.S. Attorney offices throughout the country. See, e.g., Department of Justice, Organization, Functions and Missions Manual, March 2004 (Executive Office for United States Attorneys). If they can coordinate across time zones to fulfill the DOJ mission, they could also coordinate across far shorter distances to trample Mr. Vialva's rights to continuing loyalty from his former lawyer.

The essential point here is that screening to erase a conflict of interest is an extraordinary gift that the rules of professional conduct provide to certain government law offices to fulfill certain other important public policy goals. But in order to earn the benefit of the gift, the beneficiaries of this ethical present are honor-bound to fulfill the letter of the ethics rules. This the U.S. Attorney's office did not do. As a result, this Court, as it decides this issue, not only holds in its hands the rights of Mr. Vialva. It also holds on its hands the integrity of the system put in place as the quid pro quo for government agencies' enjoying this privilege. To condone what happened here – a failure to establish a screen and at least two blatant contacts with the lawyer who was to be screened – would depreciate the value of these carefully crafted rules.

I, Lawrence J. Fox, declare under penalty of perjury that the foregoing is true and correct. Executed on this 4th day of August, 2004, in Philadelphia, Pennsylvania.

Lawrence J. Fox

- 5 -

Indeed in other contexts, the U.S. Attorney's office touts that it is able to bring to bear on matters its outstanding lawyers from "Main Justice" and other U.S. Attorney offices throughout the country. See, e.g., Department of Justice, Organization, Functions and Missions Manual, March 2004 (Executive Office for United States Attorneys). If they can coordinate across time zones to fulfill the DOJ mission, they could also coordinate across far shorter distances to trample Mr. Vialva's rights to continuing loyalty from his former lawyer.

The essential point here is that screening to erase a conflict of interest is an extraordinary gift that the rules of professional conduct provide to certain government law offices to fulfill certain other important public policy goals. But in order to earn the benefit of the gift, the beneficiaries of this ethical present are honor-bound to fulfill the letter of the ethics rules. This the U.S. Attorney's office did not do. As a result, this Court, as it decides this issue, not only holds in its hands the rights of Mr. Vialva. It also holds on its hands the integrity of the system put in place as the quid pro quo for government agencies' enjoying this privilege. To condone what happened here – a failure to establish a screen and at least two blatant contacts with the lawyer who was to be screened – would depreciate the value of these carefully crafted rules.

I, Lawrence J. Fox, declare under penalty of perjury that the foregoing is true and correct. Executed on this 4th day of August, 2004, in Philadelphia, Pennsylvania.

_____

Lawrence J. Fox

**LAWRENCE J. FOX**
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103


Partner, Drinker Biddle & Reath (since 1976), specializing in corporate and securities litigation; Managing Partner - 1987-1989, 1991-1998; Former Chairman, Professional Responsibility Committee.


**Professional Organizations**
- Member, ABA House of Delegates, 1998-2001; 2002-
- Member, ABA Commission on the Evaluation of the Rules of Professional Conduct (Ethics 2000) 1997-2002.
- Chair, ABA Post Conviction Death Penalty Representation Project 1996-present.
- Chair, Section Officers Conference, American Bar Association 1996-1998.
- Chair, ABA Standing Committee on Ethics and Professional Responsibility 1996-1997; Member, 1991-1996.
- Chair, ABA Litigation Section, 1995-96.
- Chair, ABA Day in Washington 1997-2001.
- Member, ABA Law Firm Pro Bono Advisory Committee, 1997-2000.
- Chair, National Conference on Professional Responsibility, 1996, 1997, 1998.
- Member, Executive Committee of the Section Officers Conference, 1994-1996.
- Member, ABA Center for Professional Responsibility Publications Board, 1994-1996.
- Member, ABA Working Group on Lawyers Representation of Regulated Clients, 1992-1994.
- Member, ABA Business Section Task Force on Joint and Several Liability Under Rule 10b-5, 1992-1997.
- Member, ABA Task Force on Judicial Removal - 1992-1994.
- Member, Council, Section of Litigation, American Bar Association 1983-1991; 1992-1999; 2002-.
- Chair, Section of Litigation Fall Meeting 1990.
- Budget Officer, Section of Litigation, American Bar Association 1983-1988.
- Member, ABA Section of Litigation, Task Force on Ancillary Business, 1987-1991.
- Member, American Law Institute, 1989-present.
- Special Adviser to ALI Restatement of the Law Governing Lawyers 1988-2000.
- Member, Board of Editors, ABA/BNA Manual on Lawyers' Professional Conduct 1988-1991.
- Member, Philadelphia Bar Association Professional Responsibility Committee, 1978-present.
- Member, House of Delegates, Pennsylvania Bar Association 1988-1991, 1992-present.
- Member, Board of Editors, CPR Alternatives 1991-present.
- Member, ABA Section of Litigation, Legal Services Project, 1997-present.


PHADMIN\314636\1

**Publications: Books**

- "Accounting Experts" in Expert Witnesses, edited by Faust Rossi, published by ABA (1991).
- "The Law of the Third Circuit" in Sanctions, published by ABA (1991).
- "The Special Litigation Committee Investigation: No Undertaking for the Faint of Heart," edited by Brad D. Brian and Barry F. McNeil, published by ABA (1992) (rev'd 2002).
- Legal Tender, (American Bar Association 1995).
- "The Last Thing Dispute Resolution Needs Is Two Sets of Lawyers for Each Party," edited by Russ Bleemer, published by CPR Institute for Dispute Resolution and Alternatives (January 2001).
- "Mediation Values and Lawyer Ethics:  For the Ethical Lawyer the Latter Trumps the Former," Dispute Resolution Ethics, A Comprehensive Guide, edited by Phyllis Bernard and Bryant Garth, published by ABA (2002).
- Traversing the Ethical Minefield, by Susan Martyn and Lawrence J. Fox, published by Aspen (2004).
- "The Academics Have It Wrong:  Hysteria Is No Substitute for Sound Public Policy," ENRON Corporate Fiascos and Their Implications, edited by Nancy B. Rapoport and Bala G. Dharan, published by Foundation Press (2004).

**Publications:  Articles**

- "Waivers of Future Conflicts of Interest: A Blessing Or A Nightmare?" and "Issue Conflicts:  Genuine Ethical Dilemmas Or Problems Of Public Relations" published by Securities Regulation Institute (1989).
- "CB&H Announces New Public Service Initiative" published by The Pennsylvania Lawyer (March, 1991).
- "Two Views on Ancillary Business" published by South Carolina Lawyer (1991).
- "Restraint is Good in Trade," National Law Journal, April 29, 1991.
- "Litigation in 2050 - A Backward Forward, Topsy-Turvy Look at Dispute Resolution," and "Professionalism: Misplaced Nostalgia or Meaningful Loss?" ABA National Conference on Professional Responsibility (May, 1991).
- "Fie On The Purchasing Agents: An Outside Counsel's Reply to Ellis Mirsky's In-House Counsel Recognizing New Buying Opportunities," Corporate Counsel, September, 1991.
- "Slip-Sliding Away," The American Lawyer, October, 1991.
- "The Future Of The Law Firm As An Institution, International Society Of Barristers, October, 1991.
- "The Ghost of Litigation Future," Litigation, Fall, 1991.
- "It Wasn't the Money," The American Lawyer, December 1992.
- "The Inquiry," Business Law Today, December 1992.
- "Cowboy Ethics on the Main Line," Litigation, Winter 1993.
- "Can This Marriage Be Saved?" National Law Journal, June 1993.
- "OTS vs. Kaye Scholer," The Business Lawyer, August, 1993.
- "Mini-trials," Litigation, Summer 1993.
- Letter to Professor Hazard: Maybe Now He'll Get It, Vol. 7 Georgetown Journal of Legal Ethics, Summer 1993.
- "The Right Thing for the Wrong Reason," Alternatives, November 1993.
- "Waivers of Future Conflicts of Interest: A Blessing or a Nightmare?" Corporate Counsel's Guide to Lawyering Laws, 1993.

- "Marketing or Mayhem? The firm is mythical; the nightmare is real," <u>Business Law Today</u>, Jan/Feb 1994.
- Waivers of Future Conflicts of Interest: A Blessing or a Nightmare,? <u>Lawyering Laws, Business Laws, Inc.</u>
- "It's All In The Atmosphere," Vol. 62 Ford. L. Rev., March 1994.
- "Lawyers Can't Serve Two Masters Honestly," <u>National Law Journal</u>, November 1994.
- "Reap As You Sow," <u>Business Law Today</u>, January/February, 1995.
- "Contract" to close courts, <u>Association Trends</u>, May 31, 1995.
- "Direct Doesn't Mean Dull: The Philadelphia Story, Part One," <u>California Litigation</u>, Spring 1995.
- "Conservative Fee Plans Penalize Poor Plaintiffs," <u>National Law Journal</u>, May 29, 1995.
- "Firing the Client," <u>Litigation</u>, Spring 1995.
- "Do Lawyers Deserve Them When Cases Settle Quickly; Yes: Lawyers Should Have the Benefit of the Bargain," <u>ABA Journal</u>, July, 1995.
- "Maintaining Equal Access to Courts in New Climate," <u>National Law Journal</u>, August 7, 1995.
- "Liability Squared," <u>Probate & Property</u>, September/October 1995.
- "Leave Your Clients at the Door," <u>Litigation</u>, Summer 1995.
- "His Honor," <u>California Litigation</u>, Fall 1995.
- "Take Care of Each Other," <u>Litigation</u>, Fall 1995.
- "Congress Slashes Funding 25%, Refuses to Fund Critical Medical Procedures," <u>Litigation Docket</u>, Fall 1995.
- "Politics is Threatening The Federal Judiciary," <u>National Law Journal</u>, March 18, 1996.
- "Opposing Counsel: Ex Parte Contacts," <u>Litigation News</u>, March 1996.
- "A Fortiorari," <u>Litigation</u>, Winter 1996.
- "Why Do They Call It Discovery?" <u>Litigation</u>, Spring 1996.
- "Advocates for the System; Advocates for Ourselves," <u>Litigation Docket</u>, Spring 1996.
- "He Should Know Better," <u>Litigation Docket</u>, Summer 1996.
- "Money Didn't Buy Happiness," <u>Dickinson Law Review</u>, Spring 1996.
- "Lawyers Need Not Be Contingent-Fee Villains," <u>National Law Journal</u>, December 9, 1996.
- "The Phone Call," <u>Litigation</u>, Fall 1996.
- "Why Does Gift Limit Single out Bond Lawyers?" <u>National Law Journal</u>, May 5, 1997.
- "It's OK To Discuss Billing," <u>Solo</u>, Law Office Information for Solo & Small Firm Practitioners, Summer 1997.
- "Accountant Bosses Pose Ethical Threat," <u>National Law Journal</u>, October 6, 1997.
- "Litigating Conflicts: Is it Time to Revive the Appearance of Impropriety?", <u>Professional Lawyer</u>, February 1998.
- "Write Your Chief Justice Today About Rule 4.2!" <u>National Law Journal</u>, March 1998.
- "Leave Your Clients at the Door," 26 Hofstra L. Rev. 595 (1998).
- "I Didn't Realize," 24 Litigation 48 (Spring 1998).
- "Fee Fie Foe Firm: Big Four Gobble Up Lawyers," <u>National Law Journal</u>, July 27, 1998.
- "Pay-to-Play; Cure Would Be Worse Than Disease," <u>National Law Journal</u>, August 3, 1998.
- "ABA Remedy Worse than Illness," <u>USA Today</u>, August 3, 1998.

2101

- "Unethical Billing Practices," <u>Rutgers Law Review</u> Summer 1998.
- "The Accountants Are Coming; the Accountants Are Coming," <u>The Journal of Legal Marketing</u>, October, 1998.
- "Clinton Sanction: Disbarment", <u>National Law Journal,</u> October 26, 1998.
- "The President is a lawyer, so punish him accordingly", <u>The Philadelphia Inquirer,</u> Tuesday, November 3, 1998.
- "Ethics Help for Your In-House Law Firm", <u>In-House Practice & Management",</u> November, 1998.
- "NABL Won't Support Rule Singling Out Muni Lawyers," <u>The Bond Buyer, Inc.,</u> November 17, 1998.
- "Fighting for Independence: We're Lawyers, Not Just Another Service Provider, <u>The Philadelphia Lawyer,</u> Winter 26, 1998.
- "Ethics Crossfire," <u>National Law Journal</u>, February 1, 1999.
- "Ethics: Beyond the Rules" Historical Preface, <u>Fordham Law Review</u>, November 1998.
- "Setting the Priorities: Ethics Over Expediency," <u>Stetson Law Review</u>, Fall 1998.
- "Legal Services and the Organized Bar: A Reminiscence and a Renewed Call for Cooperation," <u>Yale Law & Policy Review</u>, 1998.
- "Conflicts in the Corporate Family: Professor Wolfram Has It Almost Right," <u>2 Journal for the Institute for the Study of Legal Ethics</u> 367 (1999).
- "Delegates: Save Us From Ourselves," <u>National Law Journal</u>, June 21, 1999.
- "Who Shall Live and Who Shall Die," <u>Intellectual Capital.com</u>, June 23, 1999.
- "Lawyers' Ethics According to Nader: Let the Corporate Clients Beware," <u>12 Georgetown Journal of Ethics</u> 367 (1999).
- "Defend Our Clients, Defend Our Profession," <u>The Pennsylvania Lawyer</u>, July/August 1999.
- "MDP's: A Euphemism for Destroying a Profession," <u>1 Journal of Tax Practice & Procedure</u>, 24 (1999).
- "New Firm: Wolf in Sheep's Clothing," National Law Journal, January 24, 2000.
- "Old Wine in Old Bottles: Preserving Professional Independence," 72 Temple L. Rev. 971 (2000).
- "Accountants, the Hawks of the Professional World: They Foul Our Nest and Theirs, Too, Plus Other Ruminations on the Issue of MDP's," 84 Minn. L. Rev. 1097 (2000).
- "MDPs and legal ethics: Big 5 lays siege upon Rule 5.4," <u>Oregon State Bar Bulletin,</u> July 2000.
- "Dan's World: A Free Enterprise Dream; An Ethics Nightmare," 55 The Business Lawyer, 1533 (August 2000).
- "Free Enterprise Heaven; Ethics Hell," 27 William Mitchell L. Rev. 1217 (2000).

2102

- "I'm Just An Associate … At A New York Firm," 69 Fordham L. Rev. 939 (December 2000).
- "The Last Thing Dispute Resolution Needs Is Two Sets of Lawyers for Each Party," Alternatives, Vol. 19, No. 1, January 2001.
- "A Federal Litigator's Guide to Keep Close At Hand," reviewing Business and Commercial Litigation in Federal Courts, (The Pennsylvania Lawyer, March-April, 2001).
- "Ethics 2000:  Is It Good for the Clients?", Vol. 48, No. 6, Louisiana Bar Journal, April 2001.
- "Those Who Worry About the Ethics of Negotiation Should Never be Viewed as Just Another Set of Service Providers," 52 Mercer L. Rev. 977 (Spring 2001).
- "All's O.K. Between Consenting Adults:  Enlightened Rule on Privacy, Obscene Rule on Ethics," 29 Hofstra L. Rev. 701 (Spring 2001).
- "ENRON AFTERSHOCKS Whistleblowing Is a Non-issue," The Legal Intelligencer, February 25, 2002.
- Points of View, Legal Times, March 4, 2002.
- "Litigator Fox Debates Corporate Counsel Critic," The Legal Intelligencer, April 4, 2002.
- "Forgeddabout Conflicts – If Citibar Has Its Way, We Can Have Just One Big Law Firm," Hofstra Law Review, Spring 2002.
- "Former Clients in Florida Beware:  Your Former Lawyer May Become Your Worst Enemy," Professional Lawyer, Summer 2002, Volume 13, Issue Number 4.
- "When It Comes to Sex with Clients, Whom do you Trust:  Nanny or the ABA?" GP Solo, October/November 2002, Volume 19, Number 27.
- "MDPs Done Gone: The Silver Lining in the Very Black Enron Cloud," Arizona Law Review, Fall/Winter 2002.
- "Defending a Deposition of Your Organizational Client's Employee: An Ethical Minefield Everyone Ignores," South Texas Law Review, Winter 2002.
- "It Takes More Than Cheek to Lose Our Way," St. John's Law Review, Spring 2003.
- "Your Client's Employee Is Being Deposed: Are You Ethically Prepared?," ABA Journal of the Section of Litigation, Summer 2003.
- "Making the Last Chance Meaningful: Predecessor Counsel's Ethical Duty to the Capital Defendant," Hofstra Law Review, Summer 2003.
- "Let Us Keep Our Dignity:  Thirteen Habits of Highly Effective Judges (A Lawyer's List)," ABA The Judges' Journal, Fall 2003.
- "The Fallout from Enron: Media Frenzy and Misguided Notions of Public Relations Are No Reason to Abandon Our Commitment to Our Clients," Illinois Law Review, Volume 2003, No. 5.


**Professional Appearances**
- "Ethical Problems in Counseling," University of California, San Diego, Securities Regulation Institute, January, 1989.
- ABA Annual Meeting, "Money Isn't Everything But It May Help: Settling Class Actions", August, 1989.

2103

- "ALI Restatement of Law Governing Lawyers", ABA Section of Litigation, January, 1990.
- "Ancillary Business, Pro and Con," ABA Division of Professional Liability, May, 1990.
- Hearing on Ancillary Business Proposed Rules, ABA Standing Committee on Ethics and Professional Responsibility, February, 1991.
- National Association of Law Firm Marketing, Ancillary Services Debate, April, 1991.
- "The Legal Profession v. The Legal Business," Philadelphia Bar Association, 1991.
- "Doing Business with Clients: The Practice and Professional Implications," American Bar Association, August, 1991.
- "Lawyers and Their Liabilities in the 1990's," ABA Standing Committee on Lawyers' Professional Liability, Santa Fe, New Mexico, September, 1991.
- "Lawyer Dissatisfaction, A View From The Bottom", Philadelphia Bar Association Bench-Bar Conference, November, 1991.
- Pennsylvania Bar Association, "Quality of Life for the Young Lawyer: A Forum", February, 1992.
- "An Introduction: The Legal Profession and Professional Responsibility," Rutgers University School of Law, Camden, February, 1992.
- "Let's Make A Deal: The Ethics of Negotiations," ABA 18th National Conference on Professional Responsibility, June, 1992.
- ABA Presidential Showcase Program, "Lawyers Serving on Clients' Boards/Financial Transactions with Clients: Merit or Mistake," ABA Annual Meeting, August, 1992.
- "After Kaye, Scholer Can We Still Represent our Clients Effectively?," ABA Litigation Section Fall Council Meeting, Pebble Beach, California, September, 1992.
- "Professionalism and Service: The Practical Side of Ethics Beyond the Code," ABA Annual Meeting, Phoenix, Arizona, November, 1992.
- "Ethical Concerns in Today's Practice," Pennsylvania Bar Institute, December, 1992.
- "Evolving Responsibilities and Liabilities of Counsel and Accountants," Twentieth Annual San Diego Securities Regulation Institute, January, 1993.
- "Ethics and Litigation Management: Your Road Map to the Minefield," Fourth Annual Litigation Management Supercourse, New York, New York, March 1993.
- "In-House - Outside Counsel Forum: In-House and Outside Counsel Square Off," Fourth Annual Litigation Management Supercourse, New York, New York, March 1993.
- "The Woman Advocate", Conference on the Woman Advocate, ABA Section of Litigation and Prentice Hall Law & Business, New York, March 1993.
- "Regulatory Residue: The Fallout from Kaye Scholer," 19th National Conference on Professional Responsibility, Chicago, Illinois, May 1993.
- Ethics Seminar, Aetna Institute, May, 1993.
- "Death Penalty Appeals: The End of Fairness," ABA Spring Council/Committee Chairs Meeting, Santa Fe, NM, June, 1993.
- "ABA Working Group Report on Lawyers' Representation Of Regulated Clients: 18 Months After OTS v. Kaye, Scholer," ABA Annual Meeting, New York, New York, August, 1993.
- "Blowing The Whistle: Should Regulatory Lawyers Be Required To Sound The Alarm: The Kaye, Scholer Story," Business Law Forum, Temple University School of Law, Fall 1993 Lecture Series.

210

- "Ethics of Negotiations," Berks County Bench-Bar Conference, Hershey, PA, October, 1993.
- "Ethics, Responsibility and ADR," Dispute Resolution Alternatives Supercourse, Practicing Law Institute, New York, October 1993
- "Don't Throw the Baby Out with the Bath Water - How Much Management Is Too Much Management... How Inside and Outside Counsel Must Communicate to Achieve the Proper Balance, A Litigator's TQM Survival Kit," The District of Columbia Bar/George Washington University, National Law Center CLE Program, Washington, D.C., October 1993.
- "Representing Economic Competitors - Maritrans Revisited," Pennsylvania Bar Institute, Baltimore, Maryland, November, 1993.
- National ADR Institute for Federal Judges, Harvard Law School, Cambridge, Massachusetts, November, 1993.
- Conference on Ethical Problems in Representing the Elderly, Fordham University, New York, December, 1993.
- "Legal Ethics for the Corporate Counselor," ABA Committee on Corporate Counsel, February, 1994.
- "Revolutionary Changes in Practice under the New Federal Rules of Civil Procedure," ABA/Prentice Hall Law and Business, New York City, February 1994.
- "Lawyers at Risk: Lessons from the Savings and Loan Crisis," University of Pennsylvania Center on Professionalism, February, 1994.
- "Ethical Issues in Corporate Representation: 'The Seaside Resort' Case Study," University of Pennsylvania Center on Professionalism, March 1994.
- "Should the Legal Profession Adopt Stricter Controls on Lawyer Advertising?," The State University of New Jersey at Rutgers, March 1994.
- "Legal Ethics and the Rule of Law," The Federalist Society, Philadelphia, Pa., March, 1994.
- "Rule 26: A Trap for the Wary," Eighteenth Annual United States Judicial Conference for the District of New Jersey, April 1994.
- The Woman Advocate Conference, ABA and Prentice Hall, New York, April 1994.
- "Are the Model Rules Out of Date in the Modern Regulatory State?," Keck Foundation Fellow, Duke University, April 20, 1994.
- "Emerging Issues in Professional Responsibility and Malpractice", ABA Satellite Seminar, June, 1994.
- "Strange Bedfellows: Law Firm and Corporate Counsel: Can This Partnership Be Saved?," Business Law Section and CLE Committee of The Florida Bar, June, 1994.
- "Pre-Trial Practice in the 90s and Coping with New Rules of Civil Procedure and the Civil Justice Reform Act," ABA Annual Meeting, New Orleans, August 1994.
- "The Receipt of Inadvertent Transmissions," Philadelphia Bar Education Center, December, 1994.
- Professional Responsibility Issues, Twenty-Second Annual Securities Regulation Institute, Hotel del Coronado, Coronado, California, January, 1995.
- "Different Strokes for Different Folks: Methods for Handling Corporate Litigation," 13th Annual Mid-Winter Meeting, American Bar Association, Boca Raton, FL, February 1995.

- "Redefining Client Service: The Legal Tech Evolution," Philadelphia Bar Association, April 6, 1995.
- "Prospects and Likely Impact of Dodd-Domenici Legislation," ABA Annual Spring Meeting, San Antonio, Texas, March, 1995.
- The Woman Advocate Conference, ABA and Aspen Law and Business, San Francisco, April 1995.
- Hot Topics for Corporate Counsel, "Ethics and the Corporate Counselor: Recurring Ethical Tough Calls," The Corporate Counsel Committee of the ABA Section of Litigation and the ABA Center of Continuing Education, May 11-12, 1995, Atlanta, GA.
- Media Law Roundtable, "Access Leads to Understanding - Understanding Leads to Access," ABA Section of Litigation and the National Conference of Lawyers and Representatives of the Media, May 19, 1995, Washington, D.C.
- "Revolutionary New Changes in Civil Practice in the Federal Trial Courts," New York, May 22, 1995.
- "Contingency Fees: Is One Third of a Loaf Better Than None?," 21st National Conference on Professional Responsibility, San Diego, California, June 1-3, 1995.
- The Woman Advocate Conference, ABA and Aspen Law and Business, New York, June, 1995.
- "Securities Litigation Reform," Philadelphia Bar Education Center, October 11, 1995.
- "Discovery Abuse," Cornell Law School, October 25, 1995.
- "Practical Issues in the Practice of Environmental Law," Philadelphia Bar Association, November 1995.
- "The Six Most Frequently Asked Questions," Philadelphia Bar Education Center, December 15, 1995.
- Securities Regulation and Business Law Problems, Dallas, Texas, February 1996.
- "Legal Ethics: The Core Issues," Hofstra University School of Law, March, 10-12, 1996.
- Chief Justice's Ethics Seminar, Deer Valley, Park City, Utah, March 15, 1996.
- "Ethical Considerations of Representing Corporate Clients and Their Affiliates," Western Pennsylvania Chapter of the American Corporate Counsel Association, April 1, 1996.
- "Business Lawyers Under Fire, Liability and Ethical Risk Facing In-House and Outside Counsel," ALI/ABA Satellite Program, April 2, 1996.
- "Taking Care of Each Other," The Dickinson School of Law Senior Speaker Series Dinner, April 23, 1996.
- Third Annual Conference on Women in the Profession: "Unraveling the Mystery of Ethics," Pennsylvania Bar Institute, May, 1996.
- "Restatement of the Law Governing Lawyers: Its Effect on Lawyer Discipline," 22nd National Conference on Professional Responsibility, American Bar Association, June 1, 1996.
- "Improving the Profession," American Corporate Counsel Leadership Summit, June, 1996.
- "Lawyer as Director of A For-Profit Corporation, Philadelphia Bar Education Center, July 1996.
- "Lawyers Serving on Boards of Directors of Their Clients," ABA Annual Meeting, Orlando, Florida, August, 1996.



- "Ethics for Transactional Lawyers," Philadelphia Bar Education Center, September 9, 1996.
- "Ethical Issues for Corporate Counsel," The Price Waterhouse General Counsel Forum, September 19, 1996.
- "Testing the Ethical Limits: Should We Resurrect the Appearance of Impropriety," Yale Law School, October 8, 1996 and ABA Committee on Corporate Counsel, 1996 Northeast Regional Workshop, November 7, 1996.
- "Advertising, Solicitation and Professionalism—Do's and Don'ts," December Bench-Bar, Philadelphia Bar Association, December 3, 1996.
- "Recent Developments in Legal Ethics," 15th Annual Corporate Counsel Institute, December, 1996.
- "Conflicts of Interest in Corporate Transactions: The Leveraged Buyout of the Harris Chemical Company," Rhodes College Institute on the Profession of Law, January, 1997.
- 1997 Lawyers' Conference, PNC, February 12, 1997.
- "Litigators Under Fire," ALI-ABA Satellite Program, April 3, 1996.
- Third Annual Chief Justice's Ethics Symposium, "Lawyer/Client Conflicts You Never Knew You Had," April, 1997.
- Regulation of "Pay to Play": By Whom? For What? How Far?, Business Law Section, American Bar Association, Spring Meeting April 1997.
- National Association of Bond Lawyers' Washington Seminar, May 1997.
- "Seeking Common Ground II:" A Continuing Dialogue Between General Counsel and the American Bar Association Second Annual Conference on Corporate Counsel Issues, Ethics for In-house Counsel Washington, D.C., May, 1997.
- "The Model Rules of Professional Conduct: Have We Lost our Professional Values?," 23rd National Conference on Professional Responsibility, Naples, FL, May, 1997.
- "Building Strategies for Better Corporate Client Services, 1997 Legal Leadership Summit, Dallas, TX, June, 1997.
- Keynote Address: "An Informal Conference on Relationships Between Judges and Lawyers," Maine Bench Bar Conference, June, 1997.
- "The Global Economy - Implications for Law and Legal Practice, Presidential Showcase Joint Program, ABA Annual Meeting, August 1997.
- "The Lawyer as Director of a Client," ABA Annual Meeting, August 1997.
- "Lawyers Serving on their Clients' Board: How to Avoid an Accident Waiting to Happen," ABA Annual Meeting, August 1997.
- "Pathways to Leadership: A Primer for Women and Men," ABA Annual Meeting, August 1997.
- "Ethics Issues for Transactional Lawyers," Philadelphia Bar Association Transact Conference, September 19, 1997.
- "A Debate: The Role of the American Bar Association, The Federalist Society for Law & Public Policy Studies," September 22, 1997.
- "Professional Issues in Complex Litigation," Seventh Circuit Judicial Conference and Seventh Circuit Bar Association Annual Meeting, September, 1997.
- "Resolving Litigation's Civil Wars: Negotiating a Ceasefire Among Plaintiff Lawyers, Defense Lawyers, and Judges," Institute of Continuing Legal Education in Georgia, October 10, 1997.

2107

- "Mastering Time, Costs, Information & Technology, American Corporate Counsel Association's 1997 Annual Meeting, San Francisco, CA, October 22-24, 1997.
- "Dialogue on Professional Dilemmas," American Bar Association, Section of Litigation, October 25, 1997.
- "Ethics," Environmental Law Institute 1997 "Boot Camp" Course on Environmental Law, November 1997.
- "Corporate Compliance, Ethics and Preventive Law," Price Waterhouse General Counsel Forum, November 20, 1997.
- "Professionalism in Practice," University South Carolina Law School, South Carolina Bar CLE Division, November 21, 1997.
- "Tangled Loyalties: Conflicts of Interest in the Real World," Fellows of the American Bar Foundation Annual Meeting, January 31, 1998.
- "Litigation Management Toolbox for the 21st Century," ACCA Legal Leadership Summit, February, 1998.
- "The Future of Legal Services," The First Annual Arthur Liman Colloquium, March 5, 1998.
- "Professionalism in Class Action and Mass Tort Litigation," Sixth Annual Alvin B. Rubin Federal Symposium, New Orleans, April 2, 1998.
- "Conflicts of Interest in a Deregulated World," Edison Electric Institute, Spring Legal Conference, St. Pete Beach, FL, April, 1998.
- Legal Ethics: Access to Justice "Another Look at Corporate Family Conflicts," Hofstra 1998 Legal Ethics Conference, April 5-7, 1998.
- "Litigators Under Fire," ALI-ABA Satellite Program, April 9, 1998.
- "Legal Ethics in an Online World," Managing the Legal Risks of E-Commerce: Practical Legal Strategies, The Computer Law Association, April 16, 1998.
- "The Brave New World of Lawyers' Ethics," Twenty Fifth Annual Disciplinary Conference of the District of Columbia, April 21, 1998.
- "Multidisciplinary Partnerships: Accounting Firms and the Practice of Law," ABA 24th National Conference on Professional Responsibility, May, 1998.
- "Dual Professions," 1998 Masters Seminar on Ethics, Florida Bar
- CLE Committee and the Professional Ethics Committee, June 1998.
- Who Shall Live and Who Shall Die, Death Penalty Focus, June 3, 1998.
- Keynote Address, Virginia State Bar Disciplinary Conference, July 21, 1998.
- "The Eroding Borders Between Law and Accounting: Look Who's Eating Your Lunch," ABA 1998 Annual Meeting in Toronto, Ontario, August 3, 1998.
- "The ALI and Its New Projects," ABA 1998 Annual Meeting in Toronto, Ontario, August of 1998.
- "Ethics in the 21st Century," ABA Product Liability Seminar in Phoenix, Arizona, October 3, 1998.
- The Atlanta Bar Association, The "Presidential Showcase" CLE Program: The Millennial Lawyer in the 21st Century, "The Practice in the 21st Century", October 15, 1998.
- Association of American Law Schools, Workshop on Professional Responsibility, "The Ethics Professors: Enablers or High Priests," October 16, 1998.
- "Ethics in Environmental Law" Environmental Law Institute 1998 Boot Camp, November 13, 1998.

2108

- "Political Contributions; Freedom of Speech or Pay to Play" 4th Annual New York Public Finance Conference, November 16-17, 1998.
- "Pay to Play: How We Got Here and Where We Might Be Going". Pennsylvania Bar Institute, Current Issues in Municipal Finance, November 19, 1998.
- "Can We Revive Professionalism?," ACCA Annual Meeting, November 12, 1998.
- "Death Penalty Representation," University of Pennsylvania Law School Public Service Form, November 17, 1998.
- "Ethical Problems for In-House Counsel," Western Pennsylvania Chapter American Corporate Counsel Association December 2, 1998.
- "Roundtable on Ethics," Western Pennsylvania Chapter of the American Corporate Counsel Association, December 7, 1998.
- "Professional Responsibility for Intellectual Property Practitioners," Patent & Trademark Office Day, December 9, 1998.
- "Cross-Examination," an ABA Section of Litigation Teleconference, December 15, 1998.
- "Ethics: Negotiating in Cyberspace," Practicing Law Institute 19th Annual Institute on Computer Law, March, 1999.
- "Preserving Professional Independence," ABA Winter Council Meeting, Aspen, CO, January, 1999.
- "What Firms Want and Need to Know About Representing a Death Row Prisoner," ABA Winter Council Meeting, Aspen, CO, January, 1999.
- "The Accountants are Coming! The Accountants are Coming! Ethical Dilemmas Facing Lawyers Practicing at CPA Firms," Los Angeles County Bar Taxation Section, Los Angeles County Bar Association, February 1999.
- "Florida Should Oppose Lawyers Working for Non-Lawyers," Florida All Bar Conference, February, 1999.
- "Ethical and Practical Challenges in Compliance Programs," Edison Electric Institute 1999 Spring Legal Conference, Charleston, S.C. April 1999.
- "Traversing the Ethical Minefield," ABA Section of Litigation Annual Meeting, April, 1999.
- "Is a Whole Generation Getting the Wrong Message on Ethics," ABA Section of Litigation Annual Meeting, April 1999.
- "Ethics for the In-House Lawyer," ACCA, April 22, 1999.
- "Ethical Dilemmas in the Triangular Relationship," Insurance Practice Institute, April 1999.
- "Intrusion Into the Profession," Pennsylvania Bar Association Annual Meeting, May 5, 1999.
- "The Challenge of Multidisciplinary Practice," New Jersey State Bar Association Annual Meeting, May 14, 1999.
- "Should the ABA Abolish Rule 5.4?," debate with John Aldock, ABA Section of Litigation, Cancun, Mexico, June 19, 1999.
- "Race in Your Case," National Conference for Minority Lawyers, ABA Section of Litigation, June 23, 1999.
- "Ethics 2000: Professional Responsibility in the New Millennium," 1999 Annual State Bar of Arizona Convention, June 25, 1999.





- "Intrusion Into the Profession or the Future of Law Practice? Multi-Disciplinary Practice," PBI-PBEC Education Center, Philadelphia, September 24, 1999.
- "MDP: Should In-House Counsel Care?," Corporate Counsel Committee of Business Law Section of the ABA, San Diego, October 25, 1999.
- "Multi-Disciplinary Practices, Ethics, and the Future of the Legal Profession," Cornell Law School, October 27, 1999.
- "Pro & Con: Should the PA Bar Embrace MDP?," PA House of Delegates, October 29, 1999.
- "New Roles, No Rules? Redefining Lawyers' Work," The Phyllis W. Beck Chair In Law Symposium, Temple University Beasley School of Law, November 12, 1999.
- "Current Issues In Professional Responsibility," First Year Professional Responsibility Lecture Series, Yale, December 1, 1999.
- "Multidisciplinary Practice, What it is and What it Means to the Vermont Practitioner," Vermont Bar Association, Young Lawyers Section, January 14, 2000.
- "Symposium on Multidisciplinary Practice," University of Minnesota Law School, Minnesota Law Review, February 24-25, 2000.
- "Modifications to the ABA Model Rules of Professional Responsibility and Application to Environmental Practice," American Bar Association Section of Environment, Energy, and Resources' Conference on Environmental Law, Keystone, Colorado, March 12, 2000.
- "The Fifth Nearly Annual Ethics CLE & Ski," Park City Bar Association, Silver Lake Lodge, Deer Valley, Utah, March 31, 2000.
- The Question of Multi-Disciplinary Practice: Point – Counterpoint," National Academy of Elder Law Attorneys, Inc., Philadelphia, Pennsylvania, May 4, 2000.
- "Multidisciplinary Practice: Curse, Cure or Tempest In a Teapot," American Intellectual Properly Law Association, Pittsburgh, Pennsylvania, May 19, 2000.
- "Multi-Disciplinary Practices and Ethics 2000," American College of Trial Lawyers Regional Meeting, Short Hills, New Jersey, May 20, 2000.
- "Excessive Legal Fees: Protecting Unsophisticated Consumers, Class Action Members, and Taxpayers/Citizens," U.S. Chamber Institute For Legal Reform, et al., Washington, D.C., May 25, 2000.
- "Ethics 2000," Delaware Bench & Bar Conference, June 7, 2000.
- "Legal Ethics in Cross-Border Practice," The International Law Briefing, New York, New York, June 8, 2000.
- "The Changing Practice of Law," D.C. Circuit Judicial Conference, Williamsburg, Virginia, June 15, 2000.
- "MultiDisciplinary Practices (MDPs): A New Paradigm For the Delivery of Legal Services?," 62nd Annual Meeting Virginia State Bar, Virginia Beach, Virginia, June 17, 2000.
- "May It Please The Court, I am from Arthur Price & Deloitte: MDP's, Should Trial Lawyers Care?," ABA Section of Litigation, New York, New York, July 8, 2000.
- "Successful Partnering Between Inside and Outside Counsel: Advice from the Experts," ABA Section of Business Law, New York, New York, July 9, 2000.
- "The Imposition Of The Death Penalty Is 'Fraught With Error': Where Do We Go From Here?," ABA Section of Litigation, New York, New York, July 10, 2000.

2110



- "If Free Enterprise Has Its Way, Will We Still Need Rules of Professional Responsibility," Centennial Lecture, William Mitchell College of Law, St. Paul, Minnesota, October 4, 2000.
- "ABA Call to Action: A Moratorium On Executions," Atlanta, Georgia, October 11-12, 2000.
- "Negotiating the Ethical Minefield," Professional Education Group, Miami, Florida, October 13, 2000.
- "All's OK Between Consenting Adults: Enlightened Rule on Privacy; Obscene Rule on Ethics," Howard Lichtenstein Legal Ethics Lecture, Hofstra University School of Law, October 18, 2000.
- "Ethics in the Workplace," University of Pennsylvania, Philadelphia, Pennsylvania, October 25, 2000.
- "Ethical Issues in Corporate Practice Today; Compensation and Acquisitions," Corporate Governance Institute, Washington, D.C., November 9, 2000.
- "Ethics in Environmental Law," Environmental Law Institute's Ninth Annual Boot Camp Course, Georgetown University, Washington, D.C., November 13, 2000.
- "Proposed Revisions to the American Bar Association Model Rules," The Federal Council & Foundation, Princeton, New Jersey, November 18, 2000.
- "ABA Ethics 2000: What's New in the Proposed Model Rules," Louisiana State Bar Association, New Orleans, Louisiana, December 1, 2000.
- "Teleconference on Ethics," National Association of Bond Lawyers, Washington, D.C., December 6, 2000.
- "Multi-Disciplinary Practice and the Fiduciary Lawyer," Pennsylvania Bar Institute, Philadelphia, Pennsylvania, December 12, 2000.
- "Multidisciplinary Practice: What it is and What it Means for Vermont Practitioners," Young Lawyers Section of the Vermont Bar Association, Montreal, Quebec, January 14, 2001.
- "Conference on Attorney Conduct Rules," Administrative Office of the United States Courts, Washington, D.C., January 16, 2001.
- "Multidisciplinary Practices & Healthcare," American Bar Association, Health Law Section, Orlando, Florida, February 9, 2001.
- "The Death Penalty: A Bar Leadership Issue," National Conference of Bar Presidents, ABA Midyear Meeting, San Diego, California, February 17, 2001.
- Ethics 2000 Presentation: "What Every Lawyer Should Know About Ethics 2000 – Highlights of the Proposed Changes to the ABA Model Rules of Professional Conduct," Center for Professional Responsibility, ABA Midyear Meeting, February 18, 2001.
- "Ethics 2000: The Proposed Rules and Your Practice," American College of Trial Lawyers Spring Meeting, Boca Raton, Florida, March 30, 2001.
- "The American Bar Association's Ethics 2000 Commission: A Review of Proposed Changes in the ABA's Model Rules of Professional Conduct," The Board on Professional Responsibility, District Columbia Court of Appeals, Washington, D.C., April 18, 2001.
- "The Role of Honesty in the ABA Ethics 2000 Report," The Fellows of the Wisconsin Law Foundation Symposium, Lake Geneva, Wisconsin, May 1, 2001.
- "Summer Associates' Day's Ethics Discussion," Philadelphia Volunteers for the Indigent Program, Philadelphia, Pennsylvania, June 4, 2001.

2111

- "Legal Tender: Negotiating the Ethical Minefield," Kentucky Bar Association 2001 Annual Convention, Lexington, Kentucky, June 13, 2001.
- "Ethical Issues in Public Interest Law," 9th Annual Public Interest Law Day, Pennsylvania Bar Institute, Philadelphia, Pennsylvania, June 21, 2001.
- "Costs & Funding Forum," Personal Injuries Bar Association, Annual Conference 2001, St. Catherine's College, Oxford, June 30, 2001.
- "Ethics 2001: Are you ready for the challenge?," American Law Institute-American Bar Association Committee on Continuing Professional Education, Washington, D.C., July 24, 2001.
- "Death Penalty Program," American Bar Association Annual Meeting, Chicago, Illinois, August 5, 2001.
- "Ethics 2000: Should Litigators Care? Should Clients Care?," American Bar Association Annual Meeting, Chicago, Illinois, August 5, 2001.
- "Ethical Dilemmas for Capital Post-Conviction Counsel," National Federal Habeas Corpus Seminar, Nashville, Tennessee, August 10, 2001.
- "Forget About Conflicts – If Citibar Has Its Way, We Can Have Just One Big Law Firm," Hofstra University School of Law, The 2001 Legal Ethics Conference, Legal Ethics: What Needs Fixing?, Hempstead, NY, September 10, 2001.
- "Trial Evidence in the Federal Courts: Problems and Solutions," American Law Institute-American Bar Association Committee On Continuing Professional Education, Philadelphia, PA, October 5, 2001.
- "Ethics and Professionalism", Pennsylvania Bar Institute, Philadelphia, PA, October 11, 2001.
- Vermont Bar Association Seminar, Burlington, Vermont, November 8, 2001.
- "Ethics in Capital Defense," Ninth Annual Capital Defense Workshop, The Virginia Bar Association, Richmond, VA, November 15-16, 2001.
- "Litigation Ethics," Section of Litigation and Young Lawyers Division, ABA Mid-year Meeting, Philadelphia, PA, February 2, 2002.
- Ethics Round Table, 2002 Winter Federal Bench Bar Council Conference, Puerto Rico, February 16, 2002.
- "The Future Structure and Regulation of the Law Practice," University of Arizona, James E. Rogers College of Law, Tucson, Arizona, February 22-23, 2002.
- "Litigation in a Free Society," Institute for Law & Economic Policy, Hollywood, Florida, March 15-16, 2002.
- "The Ethics 2000 Commission: The Adversary System and the Lawyer-Client Relationship," University of Tennessee College of Law's Center for Advocacy Dispute Resolution, Knoxville, Tennessee, April 4, 2002.
- "Ethics 2000 and Beyond: Reform or Professional Responsibility as Usual," Law Review Symposium sponsored by University of Illinois at Urbana-Champaign, Champaign, Illinois, April 5, 2002.
- "The Intersection of Lawyer Ethics and the Death Penalty," Yale Law School, April 8, 2002.
- "Ethics and Enron," 22nd Annual Ray Garrett, Jr., Corporate and Securities Law Institute, Northwestern University School of Law, Chicago, Illinois, April 12, 2002.
- "Planning for Disaster," PBI-CLE, Philadelphia, PA, April 22, 2002.

2112

- "Ethical Issues in Corporate Practice Today," ALI-ABA Ninth Annual Corporate Governance Institute, Boston, MA, May 10, 2002.
- "Ethics Issues for the IP Practitioner," Philadelphia Intellectual Property Law Association, Philadelphia, PA, May 16, 2002.
- "Legal Tender," New Jersey Bar Association, Mt. Laurel, NJ, May 18, 2002.
- "Legal Tender," New Jersey Bar Association, Atlantic City, NJ, May 22, 2002.
- "Ethical Issues In Public Interest Practice," 10th Annual Public Interest Law Day, Philadelphia, PA, June 7, 2002.
- "Ethics for In-house Counsel," IBM, Armonk, NY, June 11, 2002.
- "Legal Tender," Louisville Bar Association, Louisville, KY, June 25, 2002.
- "The Fallout from Enron," ABA Section of Litigation, Banff, Alberta, Canada, June 22, 2002.
- "How to Improve the System of Justice through CLE," Association for Continuing Legal Education, Montreal, Canada, July 28, 2002.
- "Enron and its Aftermath," St. John's University School of Law, Jamaica, NY, September 20, 2002.
- "The Attorney-Client Privilege," PBI Workshop, Philadelphia, PA, October 16, 2002.
- "The Ethics of Litigation," South Texas Law Review Annual Ethics Symposium, Houston, TX, October 18, 2002.
- "Handling Professional Dilemmas," Maine Bar Association, Portland, ME, November 7, 2002.
- "Problems in Discovery and Professionalism," University of Georgia School of Law, Athens, Georgia, November 15, 2002.
- "The Role of the Corporate Attorney after Enron and the Sarbanes-Oxley Act," Fordham Center for Corporate, Securities and Financial Law, Fordham University School of Law, New York, NY, November 22, 2002.
- "Lawyer Regulation After Enron," Association of American Law Schools, Washington, DC, January 5, 2003.
- "A Matter of Corporate Responsibility: Where Are We Going From Here?," New York State Bar Association, New York, NY, January 22, 2003.
- "Ethics and Professionalism on the Big Screen," New York State Bar Association, New York, NY, January 23, 2003.
- "Trial Evidence in the Federal Courts," ALI-ABA, Coral Gables, FL, January 30, 2003.
- "Did Enron Create a Need for New Regulation of Lawyers?," Univ. of Houston, Houston, TX, February 3, 2003.
- "Bar Summit On Corporate Responsibility," (Sarbanes-Oxley panel) Association of the Federal Bar of the State of New Jersey 27th Annual United States District Court Judicial Conference, West Orange, NJ, March 6, 2003.
- "Legal Tender," The State Bar of New Mexico, Albuquerque, NM, March 13, 2003; Santa Fe, NM, March 14, 2003.
- "Insight for Inspired Practice: Dispute Resolution Ethics," ABA Section of Dispute Resolution, San Antonio, TX, March 21, 2003.
- "Ethics Issues in Dispute Resolution," 2003 Petroleum Marketing Attorneys' Meeting, Washington, DC, April 1, 2003.
- "The Brave New World of Lawyers' Ethics: Revised Rules and Bold Challenges," ALI-ABA Video Law Review, Washington, DC, April 4, 2003.

2113

- "Ethics in the Media: The Ever-Growing Thirst for Information," ABA Litigation Section, New York, NY, June 5, 2003.
- "The Death Penalty: Race, Representation and Reform," ABA National Conference for the Minority Lawyer, Philadelphia, PA, June 5, 2003.
- "Corporate Governance After Sarbanes-Oxley," ALI-ABA Tenth Annual Corporate Governance Institute, Philadelphia, PA, June 6, 2003.
- "Legal Issues in a New World," Eighth Circuit Judicial Conference, Minneapolis, MN, July 17, 2003.
- "Judging Judges' Ethics," Hofstra University School of Law, Hempstead, NY, September 15, 2003.
- "You've Finished the Internal Investigation – Now What?," Association of General Counsel Fall Meeting, Washington, DC, October 10, 2003.
- "Settlement Strategies and Ethics," ABA-CLE TeleConference and Audio Webcast, October 14, 2003.
- "Strengthening the Guiding Hand of Counsel: Reforming Capital Defense Systems," Hofstra University School of Law, Hempstead, Long Island, NY, October 24, 2003.
- "Ethics and Professional Liability," American Board of Professional Liability Attorneys Convention, Philadelphia, PA, October 25, 2003.
- "Federalism & The Regulation of Attorneys," The Federalist Society, Washington, DC, November 15, 2003.
- "Ethics in Environmental Law," Environmental Law Institute's Twelfth Annual Boot Camp Course, Georgetown University, Washington, D.C., November 11, 2003.
- "Advocacy & Ethics," ALI-ABA, Scottsdale, AZ, December 4-5, 2003.
- "Can Client Confidentiality Survive Enron, Arthur Andersen and the ABA?," Stetson University College of Law, Tampa, FL, January 28-30, 2004.
- Liars and the Lying Lawyers and Clients Who Tell Them," ABA Section of Litigation Annual Meeting, Scottsdale, AZ. May 6, 2004.


## Prior Employment

- 1971-1972    Staff Attorney, Community Action for Legal Services, New York, NY
- 1969-1971    Reginald Heber Smith Community Lawyer Fellow, New York, NY
- 1968-1969    Clerk, Justice Samuel Roberts, Pennsylvania Supreme Court, Erie, PA


## Teaching

- Adjunct Professor, University of Pennsylvania Law School, Fall 2000.
- Visiting Professor, Cornell Law School, Fall 1999.
- Instructor, 1986 - 1992, University of Pennsylvania Law School, The Legal Profession and Professional Responsibility.
- Lectures at the law schools at the University of Virginia, Duke, Dickinson, Temple, Rutgers, Wayne State, Case Western Reserve, Villanova, Harvard, Cornell and William & Mary.

2-114

## Honors and Awards

- Fellow, American College of Trial Lawyers.
- Fellow, American Bar Foundation.
- U.S. Speaker and Specialist, "Professional Ethics and Responsibility, and the Role of Standing Committees on Lawyers' Professional Conduct," Federal Capital Bar Association and the Professional Council of Economics, Buenos Aires, Argentina, August, 1997.
- CPR/ADR Guest Lecturer: Development Lawyers Course, Institute for Law and Development, Rome, Italy, March 1997.
- Keynote Address, Pennsylvania Legal Services 1996 Striving Towards Excellence Awards Banquet, Harrisburg, PA, March 12, 1997.
- Keynote Address, The Georgetown Journal of Legal Ethics ,Tenth Anniversary, February 7, 1997.
- Baccalaureate Speaker, Dickinson Law School, April 1996.
- Robert Anderson Fellow of the Yale Law School for 1996-97.
- Community Legal Services "Champion" Award, April 1996.
- Philadelphia Bar Education Center Excellence in Legal Education Award, July 14, 1998.
- Service Above Self Award, Lamokin Village Council, December 8, 1998.
- Alumni Award of Merit, University of Pennsylvania Law School, May 14, 1999.
- "The Rights and Responsibilities of Legal Professionals in the United States," U.S. State Department, The People's Republic of China, January 11-29, 2002.
- Levy Award, New York State Bar Association, Committee on Professional Ethics, New York, NY, April 23, 2003.
- Thomas A. O'Boyle Lecturer for Academic Year 2003-2004.
- William Reece Smith, Jr. Distinguished Lecturer.

## Directorships

- Credit Suisse Asset Management Income Fund – 1988-present.
- Credit Suisse Asset Management Strategic Global Income Fund – 1988-present.
- Indonesia Fund – 2000-present.
- Winthrop Trust Company – 2001-present.

## Appearances

- "Inside the Law, Lawyers at a Crossroads," American Bar Association and Reliance National Production, New York, November 5, 1993.
- "Inside the Law, Whatever Happened to Atticus Finch?" American Bar Association, March 12, 1996.
- CNN Crossfire: "The Death Penalty," February 9, 1997.
- CNN Crossfire: "Should Federal Judges Be Impeached," March 13, 1997.
- "Inside the Law: Examining the Lawyer/Client Relationship," Public Television Series, April 9, 1997.
- Nightline "Ethics regarding tobacco industry lawsuits," May 29, 1997.
- Testify before Congress regarding Contingent Fees, April 30, 1997.
- Today Show: "Attorney-Client Privilege," December 1, 1997.

- *Nightline* "Attorney Client in the Tobacco Litigation," April 22, 1998.
- *Today Show:* "Attorney-Client Privilege after Death," June 8, 1998.
- *Nightline*: "Should this Privilege Survive Death?" June 8, 1998.
- *MSNBC*: "Contingent Fees for Tobacco Lawyers," June 9, 1998.
- *CNN*: "Impeachment of the President" September 14, 1998.
- *CNN; Talk Back Live*: "Disbarring the President," March 15, 2000.
- *MSNBC*: "Moratorium on the Death Penalty," July 10, 2000.
- *CNN*: "The Death Penalty and the Presidential Election," July 30, 2000.

## Community Activities

- Member of the Board of Overseers of University of Pennsylvania School of Law and Associate Trustee of the University of Pennsylvania, 1992-1999.
- Member, Board of Trustees, Friends Select School, 1982-1992.
- Member, Board of Trustees, Beth Zion - Beth Israel Synagogue, 1988-present.
- Former National Chairman, Annual Giving, University of Pennsylvania Law School 1987-89.
- Member, Board of Advisors, United Way.
- Lecturer, sailing, U.S. Coast Guard Auxiliary.

## Education

- University of Pennsylvania, The College, B.A. 1965
- University of Pennsylvania Law School, LL.B. cum laude 1968
- Managing Editor, University of Pennsylvania Law Review

**Date of Birth:** July 17, 1943

## Home Address

1 Silver Star Trail
Medford, NJ  08055

PHADMIN\314636\1                                      - 18 -

2116