FILED

SEP 2 0 2004

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
                    DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. W-99-CR-70(1)** |
| | § | |
| | § | |
| **CHRISTOPHER ANDRE VIALVA.** | § | |

**MOTION TO CONDUCT DISCOVERY**

**TO THE HONORABLE COURT:**

Christopher Andre Vialva, by and through the undersigned counsel, invokes the processes of discovery to develop additional evidence in support of his *Motion to Vacate, Set Aside, or Correct Sentence By A Person in Federal Custody Pursuant Title 28, United States Code, Section 2255 And Brief in Support* [hereinafter *§ 2255 Motion*], filed June 14, 2004. This Motion and a proposed Order granting the relief requested are submitted in conformity with Local Rule CV-7 (c) (10) and (f), respectively. Facts supporting this request that are not already part of the record are submitted in the Appendix to this Motion, in accordance with Local Rule CV-7 (b) and (c).

> *A.*      *Grounds for Request - Local Rule CV-7 (c)*

The Court may authorize discovery in this federal post conviction proceeding "for good cause shown." Rule 6, RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS. The Supreme Court determined that:

> . . . where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.

*Harris v. Nelson*, 394 U.S. 286, 300 (1969). Rule 6 "includes the processes of discovery available

under the Federal Rules of Criminal Procedure as well as the civil." 28 U.S.C., *following* § 2255, Rule 6, Adv. Comm. Notes.

The post conviction movant must establish good cause for discovery by presenting specific allegations of error that, if proven, would entitle him to relief. A motion for post conviction review that "establishes a *prima facie* case for relief" presents the district court with an appropriate basis to authorize discovery. *Harris*, 394 U.S. at 290. When the movant presents a claim that may warrant relief and identifies a likely source of supporting facts, it is an abuse of discretion to deny discovery. *See East v. Scott*, 55 F.3d 996, 1002 (5th Cir. 1995) (death-sentenced petitioner identified Constitutional claims for relief and requested access to specific files and witnesses; "Because access to these witnesses and their files is necessary to fully develop the facts needed to consider East's claim, we conclude that the district court abused its discretion in denying East's discovery requests."); *and East v. Scott*, 123 F.3d 235, 239-240 (5th Cir. 1997) (facts developed in discovery supported *Brady* violation; sentencing relief granted).

**B.      *Conference of Parties  Local Rule CV-7 (h)***

Mr. Vialva is requesting the production of documents in the possession of the United States, access to the prosecution's trial files, and leave to depose his former trial counsel. The information Mr. Vialva is requesting bears directly on grounds for relief presented in his *§ 2255 Motion*. The undersigned counsel's belief the requested information is available is based, in part, on evidence appended as exhibits to Mr. Vialva's *§ 2255 Motion*. Mr. Vialva's counsel have attempted to obtain the requested information from independent sources. The undersigned counsel verified with current counsel for the United States that no discovery will be produced by agreement. The requested information does not duplicate information in counsel's possession.

2118

*§ 2255 Motion.* Without enumerating the matters contained in the sealed documents, counsel reurge the substantive arguments presented in Grounds III and IV.

Mr. Brown's testimony was a key element of the government's first and second stage presentations. Mr. Brown was the only witness who identified Mr. Vialva as the person who shot the Bagleys. Mr. Brown's credibility was critical to the jury's determination of guilt and punishment. Mr. Brown's account of his past conduct, propensity for violence, and use of illegal substances varied widely during his contact with law enforcement. This pattern continued through Mr. Brown's guilty plea and testimony at Mr. Vialva's trial. Documents released by the Bell County Sheriff's Office reflect Mr. Brown was prescribed psychotropic medication while confined at an unspecified juvenile facility. It appears Mr. Brown continued to receive the medication while he was confined in Bell County. *Appendix to Motion,* Exhibit 1. This information was not presented to the jury. The juvenile detention facilities in Killeen and Waco will release information only in response to a court order or a subpoena.

With respect to the documents requested in paragraph (4), it appears the Federal Bureau of Investigation implements a practice that narrows the field of information released during discovery. All of the information generated in an investigation is placed initially into a central repository referred to variously as the "I-file," "I-drive," or "I:\drive" [hereinafter, "I-drive"]. The Bureau selects some of this information for inclusion in the case file. The case file is the source of information released in discovery. *See* John Solomon, *FBI Documents*, (Associated Press, New York: March 2, 2004), *Appendix to Motion,* Exhibit 2. Some of the information generated in this case was not reduced to the routine format of an FD-302 Report of Interview. An interview of Brandon Bernard is an example. *See § 2255 Motion, Volume I Appendix of Exhibits,* Exhibit III-I

4

2120

### C.   *Information Requested and Facts Supporting Requests*

#### 1)   *Juvenile Record, Jail Record, and Custodial Medication Record of Terry Terrell Brown*

Counsel requests production of and access to the following records:

1) Records relating to Terry Terrell Brown generated while he was confined at the juvenile detention center in Killeen, Texas, and/or the juvenile detention center in Waco, Texas, including, but not limited to: mental health evaluations; medication records; incident reports; disciplinary sanctions; and evaluations by mental health experts, social workers, detention staff, and court personnel;

2) Records generated during Mr. Brown's appearances before any juvenile court prior to his transfer to adult status including, but not limited to: all written, recorded, or transcribed court appearances; interviews with court personnel; status evaluations conducted at the juvenile facility; and findings by a magistrate or other judicial officer;

3) Records documenting all visits to Mr. Brown while he was in the custody of the Criminal Investigation Division of the United States Army, the Federal Bureau of Investigation, and the United States Marshals Service, from Mr. Brown's arrest until his remand to the United States Bureau of Prisons to begin the service of his sentence of confinement;

4) All remaining records including, but not limited to: files; recordings by videotape, audiotape, or other durable recording media; memoranda, notes, letters, log sheets, field notes, and any other memorial documenting contacts by law enforcement with Mr. Brown and/or his attorney incident to these proceedings or any other proceeding in which Mr. Brown was a target of interrogation or prosecution.

Mr. Brown provided a release of information authorizing counsel's access to his trial attorney's file and to a portion of the records from the Bell County Sheriff's Office. These records disclosed several areas of potential impeachment evidence. Additional sources of impeachment, some of which appear only in sealed documents, were detailed in Grounds III and IV of Mr. Vialva's

3

2119

[*hereinafter, § 2255 Motion,* Exhibit __]. The activity logs of the Criminal Investigation Division of the United States Army reflect multiple contacts by various investigators following Mr. Brown's arrest. *§ 2255 Motion,* Exhibits III-F, III-H, III-K, and III-L. It is highly likely the United States has additional exculpatory information in files or records that were excluded from discovery.

Counsel's present request for information is directed to the United States Attorney, the Federal Bureau of Investigation, the Department of the United States Army, and any other law enforcement agency involved in the investigation of this case. If the records no longer exist, counsel requests a statement from the United States identifying when the records were destroyed, deleted, purged, or made unavailable, and under what protocol such destruction was effected.

### 2) *Juvenile Record, Jail Record, and Custodial Medication Record of Christopher Lewis*

Counsel requests production of and access to the following information:

1) All records relating to Christopher Lewis generated during his confinement in juvenile and adult detention facilities prior to his commitment to custody of the United States Bureau of Prisons incident to his sentence of confinement, including, but not limited to: mental health evaluations; medication records; incident reports; disciplinary sanctions; and evaluations by mental health experts, social workers, detention staff, and court personnel;

2) Records generated during Mr. Lewis's appearances before any juvenile court prior to his transfer to adult status including, but not limited to: all written, recorded, or transcribed court appearances; interviews with court personnel; status evaluations; sentencing evaluations; and findings by a magistrate or other judicial officer;

3) All records relating to Mr. Lewis's court appearances incident to his transfer from juvenile to adult prosecution in the instant case including, but not limited to: evaluations of Mr. Lewis's mental and/or emotional health, cognitive capacity and/or emotional age, and drug and alcohol use; his history of prior criminal behavior and violence; and his participation in other juvenile treatment programs;

212

4)      The presentence investigation report prepared following Mr. Lewis's plea of guilty in the instant case, any amendments and/or addenda to the report, and the motion requesting downward departure from the sentencing guideline range of punishment, filed by the United States of America;

5)      Records documenting visits to Mr. Lewis while in the physical custody of the Criminal Investigation Division of the United States Army, the Federal Bureau of Investigation, and the United States Marshal Service, and/or while confined in any juvenile or adult detention facility prior to his remand to the United States Bureau of Prisons;

6)      All remaining records including, but not limited to: files; recordings by videotape, audiotape, or other durable recording media; memoranda, notes, letters, log sheets, field notes, and any other memorial documenting contacts by law enforcement with Christopher Michael Lewis and/or his attorney incident to these proceedings or any other proceeding in which Mr. Lewis was a target of interrogation or prosecution.

Mr. Lewis consented to be prosecuted and sentenced as an adult as part of a plea agreement with the United States. As a condition precedent to accepting Mr. Lewis's plea of guilty, the Court received evidence concerning, *inter alia*, Mr. Lewis's "present intellectual development and psychological maturity." 18 U.S.C. § 5032. Counsel believe this evidence was presented to the Court through an evaluation by a mental health professional, based on records, personal interviews, and testing with Mr. Lewis. Mr. Lewis's cognitive capacity, mental age, and emotional development would have been addressed in the evaluation. Evidence of Mr. Lewis's propensity for dishonesty and his history of juvenile delinquency, violence, drug use, and similar developmental problems would have been relevant impeachment evidence for the jury's consideration. The records developed during the course of the certification for adult prosecution are a primary source of impeachment information. Disclosure of these documents is appropriate in light of the record.

2122

Mr. Lewis's testimony was a critical component of the government's case. While presenting a motion for downward departure, the United States acknowledged without the testimony of Mr. Lewis "the appropriate penalty for the main perpetrators in this crime could not have been gotten." *§ 2255 Motion*, Exhibit III-B at p. 5. Mr. Lewis was interviewed by various law enforcement personnel repeatedly, both before and after counsel was appointed to represent him. He gave a series of inconsistent statements over the course of the investigation, continuing through his trial testimony. The records available to counsel do not establish how many times Mr. Lewis was questioned, interviewed, or "debriefed" by the United States. The timing of these contacts is as relevant as the number since it appears Mr. Lewis and Mr. Brown were interviewed in sequence on more than one occasion. These facts bear directly on the issues raised in Grounds III and IV of the *§ 2255 Motion*.

With regard to the records generated by the Federal Bureau of Investigation, counsel request production of the information maintained by the Bureau in the "I-drive" or similar record retention system. Any records relating to the Bureau's assessment of Mr. Lewis's credibility, cognitive capacity, mental or emotional health or maturity, are subject to disclosure pursuant *Brady v. Maryland*, 373 U.S. 83 (1963). If the records no longer exist, counsel request a statement from the United States identifying when the records were deleted, destroyed, purged, or rendered unavailable, and under what protocol such destruction was effected.

### 3)    *Trial Files of the United States Attorney*

Counsel request production of the United States Attorney's trial file. Counsel request an opportunity to review the file for purposes of verifying and reconciling the items released to Mr. Vialva's trial counsel pursuant Rule 16, Fed. R. Crim. P.. All of this information is material to Mr. Vialva's related claims in Grounds III and IV of his *§ 2255 Motion* for it will establish a time line

2123

and sequence of events, either directly or by inference, proving either a *Brady* violation by the United States or ineffective trial preparation by defense counsel.

Counsel have the files maintained by Mr. Stanley Schwieger. Mr. Dwight Goains, the attorney appointed by the Court as "learned counsel," told counsel his files are no longer available. Mr. Mark Frazier, Assistant United States Attorney, reaffirmed his office's "open file" discovery policy. Mr. Frazier said he voluntarily provided copies of all documents to defense counsel. Mr. Schwieger's file did not contain a receipt for the documents and the documents were not sequentially numbered. This substantiates Mr. Frazier's recollection he did not number the pages or otherwise document the release of discovery to defense counsel. Mr. Frazier declined counsel's request for access to his trial file.

The United States Attorney's trial file is the only source to establish when documents were released to defense counsel as part of the discovery process and the sequence in which those documents were released. Contemporaneous records documenting formal or informal discovery meetings between the United States Attorney's office and defense counsel are a possible source of verification. Further, the United States Attorney's file may document receipt of information from the law enforcement agencies that produced the records for release in discovery.

### 4)      *Deposition of Dwight Goains*

The information sought in this request relates directly to the issues presented in Grounds II, III, and IV of Mr. Vialva's *§ 2255 Motion*. Mr. Goains declined counsel's request to execute an affidavit or declaration concerning specific aspects of his representation of Mr. Vialva. *See § 2255 Motion,* Exhibit II-E. Subsequently, Mr. Goains provided a written statement to the United States Attorney. The statement was attached to the government's response to Mr. Vialva's *Request for the*

2124

*United States to Show That It Has Screened Conflicted Counsel and, In the Absence of Screening, to Disqualify the Office of the United States Attorney, Western District of Texas.  See* Doc. 398, Exhibit A.  Mr. Goains's statement did not address all of the matters presented in the *§ 2255 Motion*.

Mr. Goains declined counsel's request to provide information in a format admissible under the Federal Rules of Evidence and the rules applicable to § 2255 motions.  The unavailability of accurate, contemporaneous business records makes Mr. Goains the sole source of information about specific matters related to his representation of Mr. Vialva.  A deposition of Mr. Goains is the only reliable method of collecting relevant evidence in a legally cognizable format for this Court's consideration.  Depositions are an approved means of conducting discovery pursuant Rule 6.  *See* Rule 15, Fed. R. Crim. P. (authorizing depositions in criminal matters); Local Rule CR-15A;  Rule 30, Fed. R. Civ. P. (governing depositions in civil cases).

### C.     *Conclusion*

Mr. Vialva requests the production of documents, records, and tangible items of evidence as enumerated in this Motion and requests an order granting him leave to depose Mr. Dwight Goains.

Respectfully submitted,

SUSAN M. OTTO   Oklahoma Bar # 6818
Federal Public Defender Western District of Oklahoma
LISA S. McCALMONT Texas Bar # 24007629 OBA #17096
Assistant Federal Public Defender
Death Penalty Federal Habeas Corpus Division
215 Dean A. McGee   Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930 Telefacsimile: 405 609-5932
COUNSEL FOR DEFENDANT/PETITIONER
CHRISTOPHER ANDRE VIALVA

2125

## CERTIFICATE OF SERVICE

I certify that on this 17th day of September, 2004, a true and correct copy of this Motion and the proposed Order was mailed, postage prepaid to Mr. Mark Stelmach, Assistant United States Attorney, 816 Congress Avenue, Suite 1000, Austin, Texas 78701, counsel for the United States of America..

SUSAN M. OTTO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

UNITED STATES OF AMERICA,　　§
　　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　　§　　CRIMINAL NO. W-99-CR-70(1)
　　　　　　　　　　　　　　　　§
CHRISTOPHER ANDRE VIALVA.　　§

## APPENDIX TO MOTION TO CONDUCT DISCOVERY

*EXHIBIT 1 -*　　　　　*RECORDS OF BELL COUNTY SHERIFF*

*EXHIBIT 2 -*　　　　　*JOHN SOLOMON, "FBI DOCUMENTS"*
　　　　　　　　　　　*(ASSOCIATED PRESS, NEW YORK, MARCH 2, 2004)*

2127

FROM : BELL CO INFIRMARY                    FAX NO. : 254 9335132              Mar. 14 2000 02:02PM  P2

*Fax 254-750-1575*                                                        *U S Marshall*

## REQUEST FOR MEDICAL / DENTAL TREATMENT

FACILITY: _Bell Co Jail_                         DATE: _3-14-2000_

Contact Person: _Eleeueslen_                     Phone #: _254, 9335455_

INMATE NAME: _Brown Terry_                       Reg. No.: _9190 7080_

                                                 PID: _____

MEDICAL SERVICE(S) REQUESTED: _Tm Transferred from Juvenile Detention Center_
_with continuing order for : ① Wellbutin SR 150mg one twice_
_daily and ② Depakote 250mg one bedtime. ③ Depakote 500mg one_
_at bedtime. — ① Wellbutin $94.65/month ② Depk 250mg $26.60 /M_
_③ Depk 500mg $44.05/mo_

Estimated Cost(s): _$167.30 /MONTH_       Circle Category: (1)  (2)  (3)  (4)

                                          CAT 1=MED MANDATORY
Request for: ___Dr. Exam  ___Dental  ___X-ray  ___Lab  _✓_ Other
                                          CAT 2=MED NECESSARY
                                          CAT 3=NON-MED MANDATORY
                                          CAT 4=J/H CONVENIENCE

### DO NOT WRITE BELOW THIS LINE

### RESPONSE TO REQUESTS FOR REIMBURSEMENT OF
### EMERGENCY MEDICAL TREATMENT

REIMBURSEMENT:        _✓_ APPROVED              ___ DENIED

COMMENTS: _____

_____

_____

Reviewed by ████    _3-14-00_              _Linda K Cusk_
                        Date

EXHIBIT 1
2128

APR. -17' 00(MON) 13:14   US MARSHAL SERV WACO          TEL:254 750 1575          P. 003

FROM : BELL CO INFIRMARY          FAX NO. : 254 9335132          Apr. 17 2000 12:48PM P2

## REQUEST FOR MEDICAL / DENTAL TREATMENT

FACILITY: _Bell Co. Jail_          DATE: _4-15-00_

Contact Person: _O'Kelly WN_          Phone #: _(254) 933-5455_

INMATE NAME: _Brown, Terry_          Reg. No.: _91907_

PRI: _____

MEDICAL SERVICE(S) REQUESTED:

_Needs refill of monthly medication_
_Depakote 250mg 7 @ HS_

Estimated Cost(s): _$23.14_          Circle Category: (1)  (2)  (3)  (4)

Request for: ___ Drs Exam ___ Dental ___ X-ray ___ Lab _✓_ Other

CAT 1=MED MANDATORY
CAT 2=MED NECESSARY
CAT 3=NON-MED MANDATORY
CAT 4=M/N CONVENIENCE

### DO NOT WRITE BELOW THIS LINE

## RESPONSE TO REQUESTS FOR REIMBURSEMENT OF EMERGENCY MEDICAL TREATMENT

REIMBURSEMENT:     _✓_ APPROVED          ___ DENIED

COMMENTS: _____

_____

_____

Reviewed by CCM _____          DAN SIMPSON
          Date

Contact Deborah Crockett at (210) 472-6225, if you have any questions.

FAX TO: (210) 472-6224

2129

INMATE: Brown Terry    CELL: D#2    MONTH: March '00

NURSE: J. Kelly LVN    J. Swicz LVN    E. [illegible]

OFFICER: _____         K. Fawer LVN

Case 6:99-cr-00070-ADA   Document 404   Filed 09/20/04   Page 14 of 19

| MEDICINE | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wellbutrin SR | AM | | | | | | | | | | | | → | → | MO | GK | EM | GM | EM | EM | EM | EM | GM | GM | EM | EM | EM | EM | EM | EM | MO | |
| 150mg | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ƚ BID | PM | | | | | | | | | | | | → | → | GM | | GM | GM | GM | GM | | GM | GM | GM | GM | | GM | GM | GM | GM | GM | |
| DEPAKOTE | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 250mg ƚ @HS | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 500mg ƚ @HS | PM | | | | | | | | | | | | → | → | GM | | GM | GM | GM | GM | | GM | GM | GM | GM | | GM | GM | GM | GM | GM | |
| | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Case 6:99-cr-00070-ADA    Document 404    Filed 09/20/04    Page 15 of 19

IMATE: Brown, Terry  CELL: D-2  MONTH: April 2000

URSE: J. Kelly LVN  Elvira Robinson  K. Fauer LVN

FFICER: _____

| MEDICINE | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wellbutrin SR 150mg Bid | AM | JK | el | el | el | el | el | JK | JK | el | el | JK | JK | JK | JK | el | el | JK | JK | JK | JK | JK | el | el | JK | JK | JK | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Depakote 750mg @HS | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

Case 6:99-cr-00070-ADA Document 404 Filed 09/20/04 Page 16 of 19

ATE: ___ Brown, Teny    CELL: O7 L    MONTH: May, 2000

SE: J. Kelly LVN    Elvira Reeves LVN    K. Fauer LVN

ICER: ___

| MEDICINE | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Wellbutrin | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| SR 150mg | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| BID | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| DEPAKOTE | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 750mg | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| @ HS | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | N | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

# FBI Documents

*JOHN SOLOMON, Associated Press Writer.* **Associated Press**. New York: Mar 2, 2004. pg. 1

**Abstract** (Article Summary)

The FBI is uncertain about the nature or breadth of the documents on the computer space and has asked its internal investigation unit, its inspection division, to determine how many documents on I- drives in FBI offices across the country did not make it into official case files, officials said Monday.

"The only official records system the FBI has is our paper records. At no time did we ever ask anyone to look at the I- drives," said Robert J. Garrity Jr., the FBI deputy assistant director in charge of records management.

The retired chief of the FBI's Oklahoma City investigation, Dan Defenbaugh, said he learned of the I-drive during the 2001 controversy and was surprised the FBI wasn't searching it for materials required to be turned over to defense lawyers.

**Full Text** (986 words)

*Copyright Associated Press Mar 2, 2004*

WASHINGTON (AP) _ In an oversight that could affect cases nationwide, the FBI hasn't routinely searched a special computer space where agents store investigative documents to see whether the materials should be sent to defense lawyers, Congress or special investigative bodies.

The existence of the unsearched "I-drive" computer files, brought to the attention of The Associated Press by concerned FBI agents, could give lawyers an avenue to reopen numerous cases to determine whether documents that could have aided the defense of criminal defendants were withheld.

The FBI is uncertain about the nature or breadth of the documents on the computer space and has asked its internal investigation unit, its inspection division, to determine how many documents on I- drives in FBI offices across the country did not make it into official case files, officials said Monday.

If many documents are found, a review would begin to determine whether they should have been turned over to defense lawyers, bodies like the Sept. 11 commission or Congress, officials said. FBI supervisors said they were unaware of the problem until AP brought it to their attention.

"The only official records system the FBI has is our paper records. At no time did we ever ask anyone to look at the I- drives," said Robert J. Garrity Jr., the FBI deputy assistant director in charge of records management.

"We'll correct whatever we need to, learn from it and make sure it doesn't happen again," he added.

Senate Finance Committee chairman Charles Grassley, R-Iowa, said Tuesday that the FBI's admission, along with recent revelations in AP stories about possible missed evidence in the Oklahoma City bombing investigation, show the bureau must "adopt both procedures and technology that enable it to operate effectively and meet the highest standards."

"Public confidence in law enforcement is damaged when long- hidden information comes to light and history is re-written," Grassley said. "The best thing the FBI can do to try and recover some of the confidence lost by the way it handled the investigation in Oklahoma City is to give the public the unvarnished truth."

Sen. Patrick Leahy, the top Democrat on the Senate Judiciary Committee, said concerns about FBI document production were raised during Director Robert Mueller's confirmation hearings before senators in 2001 and "there has been too little progress in fixing this problem."

"This is the information age. With the computer technology that is available, the FBI should be getting better and more efficient at this, and it is not," said Leahy, of Vermont. "This is a core investigational, prosecutorial and

EXHIBIT 2

2-133

legal responsibility, and getting this problem fixed needs to be a top priority."

Garrity said the I-drive was created in 1996 and agents use it to upload investigative documents like interview reports, investigative inserts and teletypes so their supervisors can approve putting them into the FBI's official case files, which still are in paper format.

He acknowledged those records that do not get into the FBI's official case files or its automated computer case system would not be searched for materials which should be turned over to defense lawyers or Congress.

Under a landmark Supreme Court case, Brady v. Maryland, prosecutors and police are required to disclose all materials they possess that might help defense lawyers prove the innocence of clients.

Prosecutors operate under an honor system, and numerous times in recent years there have been prominent cases in which relevant or exculpatory documents haven't been produced, touching off legal battles.

Lawrence Barcella, a prominent Washington defense attorney and former federal prosecutor, said the discovery of the FBI's unsearched computer storage space could affect current cases in which guilt or innocence is still at issue and past cases where questions of the fairness of sentences or witnesses' credibility might be affected.

"Under criminal case law, the failure to disclose may well result in a defendant being denied a fair trial. So it doesn't matter if it was negligence or willful, if potentially exculpatory information was not produced," Barcella said.

Barcella said FBI agents have complained for years that they have inadequate computer systems, and that remains a problem despite recent improvements under Mueller.

The FBI acknowledged last week that some documents unearthed by AP for a story Wednesday about the Oklahoma City bombing were inexplicably never turned over to its own investigators or to lawyers for Timothy McVeigh, who was executed for the April 1995 attack.

The documents included at least one teletype that clearly mentioned McVeigh's name, yet were never produced to defense lawyers. And in 2001, FBI officials belatedly found about 4,000 pages of relevant documents that also never were turned over, prompting a one-month delay in McVeigh's execution.

The retired chief of the FBI's Oklahoma City investigation, Dan Defenbaugh, said he learned of the I-drive during the 2001 controversy and was surprised the FBI wasn't searching it for materials required to be turned over to defense lawyers.

"I did not know prior to 2001 that agents were storing documents on this I-drive and that it was not routinely being searched," Defenbaugh said. "There are a number of executives who I have talked to since then that were as dumbfounded as myself."

Defenbaugh said the failure to ascertain, search and recover documents from computer hard drives should be the responsibility of the FBI computer specialists, not the investigating agents.

"That's not our job. That is why we have computer specialists," he said.

Meanwhile, FBI officials are pushing implementation of their next- generation case management system which will give the bureau its first fully computerized document system as early as this summer.

The FBI is working with the National Archives and Records Administration to ensure the rollout is smooth and fulfills government record-keeping requirements.

When the system is fully implemented, FBI agents will be able to search all investigative records by computer to ensure none are missed for production to lawyers and Congress, officials said.

2134

On the Net:

FBI: http://www.fbi.gov

Reproduced with permission of the copyright owner. Further reproduction or distribution is prohibited without permission.
Companies:        Federal Bureau of Investigation (NAICS: 922120, Sic:9200 )
Dateline:         *WASHINGTON*
Text Word Count  986

2135