FILED

FEB 0 8 2005

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | **CRIMINAL NO. W-99-CR-70(1)** |
| | § | |
| CHRISTOPHER ANDRE VIALVA. | § | |

### COMBINED MOTION TO GRANT MOTION,
### SECOND MOTION FOR DISCOVERY
### <u>AND BRIEF IN SUPPORT</u>

**TO THE HONORABLE COURT:**

Christopher Andre Vialva, by and through the undersigned counsel, invokes the processes of discovery in aid of conducting discovery to develop additional evidence in support of his *Motion to Vacate, Set Aside, or Correct Sentence By A Person in Federal Custody Pursuant Title 28, United States Code, Section 2255 And Brief in Support* [hereinafter *§ 2255 Motion*], filed June 14, 2004. Doc. 372. This is Mr. Vialva's second motion requesting discovery. His initial motion was filed September 20, 2004. Doc. 404. Mr. Vialva filed a supplement to the first motion November 12, 2004, in which he provided the Court additional facts supporting his initial request. Doc. 410. Respondent did not file a response to the initial motion and did not address the additional facts presented in the supplement. The initial *Motion for Discovery* should be granted as unopposed. Local Rule CV-7(d).

Further, the instant *Second Motion* concerns the discovery of information relating to Ground X of the *§ 2255 Motion.* The information sought by Mr. Vialva is separate and distinct from the information identified in Mr. Vialva's first *Motion for Discovery.* This *Motion* and a proposed *Order* granting the relief requested are submitted in conformity with Local Rule CV-7.

425

### A.    *Jurisdiction of this Court*

This Court may permit the use of discovery processes in this federal post conviction proceeding "for good cause shown." Rule 6, RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS.  Rule 6 was promulgated as a result of the Supreme Court's determination that:

> . . . where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry.

*Harris v. Nelson*, 394 U.S. 286, 300 (1969).  The Rule 6 applicable to Section 2255 motions is a companion to the Rule 6 applicable to Section 2254 petitions.   The Advisory Committee incorporated the extended discussion of the Section 2254 Rule 6 in the notes following the Section 2255 Rule 6.  The Advisory Committee noted:

> This rule differs from the corresponding discovery rules under the § 2254 rules in that it includes the processes of discovery available under the Federal Rules of Criminal Procedure as well as the civil.  This is because of the nature of a § 2255 motion as a continuing part of the criminal proceeding (see advisory committee note to Rule 1) as well as a remedy analogous to habeas corpus by state prisoners.

28 U.S.C., *following* § 2255, Rule 6, Adv. Comm. Notes.  Providing the full array of discovery procedures ensures a Section 2255 movant will be able to develop a complete factual record supporting his or her claim for relief.

Consonant with *Harris*, the movant must establish good cause for discovery by presenting specific allegations of error that, if proven, would entitle him to relief.  A motion that "establishes a *prima facie* case for relief" presents the district court with an appropriate basis to authorize discovery. *Harris v. Nelson*, 394 U.S. at 290.  Whether a motion establishes a *"prima facie* case for

2

relief" turns on the nature of the legal issue presented as a basis for relief and the information the movant is able to present initially indicating the likely existence of additional supporting evidence,

Ground X involves the Constitutionality of the death penalty as applied in this case. If Mr. Vialva prevails on this issue, he will be entitled, at a minimum, to relief from his sentences of death. In support of Ground X, Mr. Vialva submitted the declaration of Kevin McNally, one of the Federal Death Penalty Resource counsel retained by the Administrative Office of the United States Courts. Mr. McNally's declaration was appended to Mr. Vialva's *§ 2255 Motion* as Exhibit X-A. Mr. McNally's declaration includes an analysis of statistics compiled from two United States Department of Justice reports, published in September 2000 and June 2001. Respondent did not rebut Mr. McNally's analysis nor explain the evident racial disparity in its *Response* to Mr. Vialva's *§ 2255 Motion. See Response to Motion to Vacate, Set Aside or Correct Sentence* at 197-203 (Doc. 418). Instead, Respondent asserted this issue was foreclosed from consideration by prior decisions of the Fifth Circuit. *Id.* at 200-202. As Mr. Vialva explained in his *Reply*, in each of the cases cited by Respondent, the United States was not required to disclose any information other than the statistics recited in the two Department of Justice studies.

The assistance of Rule 6 is necessary to secure additional information in Respondent's possession. This request for discovery is directed to additional information in the sole possession of the United States Department of Justice. The requested information does not duplicate information in counsel's possession.

### B.    *Information Requested, Facts and Law Supporting Request*

The statistical evidence presented by Mr. Vialva through the declaration of Kevin McNally establishes a *prima facie* case of discriminatory impact in the imposition of the federal death penalty.

Respondent did not dispute the facts on which Mr. McNally based his declaration, or the conclusions Mr. McNally drew from those facts. The undisputed facts are that, out of a "pool" of 318 authorized cases, seventy-five per cent. of the defendants against whom the federal death penalty was sought were non-Caucasian. The largest racial group of minority defendants was composed of 164 African-Americans. The African-American defendants represented 52% of the total pool of authorized cases. According to the United States census for the year 2000, "black or African American" residents comprised 12.3% of the total population. *See United States Census Bureau,* American FactFinder, DP-1, PROFILE OF GENERAL DEMOGRAPHIC CHARACTERISTICS: 2000, Summary File (SF1), available at http://factfinder.census.gov/servlet/QTTable?_bm=y&geo_id=010. The regional statistics for Texas are consistent with the national average: 12.3% of the population residing in Texas reported their race as "black or African American." *Id.* Texas Fact Sheet, available at http://factfinder.census.gov/servlet/SAFFacts?_event=Search&geo. Respondent offered no documents, memoranda, policies, procedures, or supporting data that would explain how this patently disparate racial impact was the result of race-neutral, nondiscriminatory practices by the United States Department of Justice.

As stated in Mr. Vialva's *Reply,* other courts have denied relief on this issue on the grounds the defendant/movant was unable to establish racial animus motivating the decision making process. *E.g. United States v. Jones,* 287 F.3d 325 (5th Cir.), *cert. denied* 537 U.S. 1018 (2002) (appeal from denial of post conviction relief); *United States v. Webster,* 392 F.3d 787 (5th Cir. 2004) (appeal from denial of post conviction relief); *Hall v. United States, supra,* (district court decision denying post conviction relief); *United States v. Williams,* No. S100CR.1008(NRB), 2004 WL 2980027 (S.D. N.Y. Dec. 22, 2004) (order ruling on pretrial motions); *United States v. Bass,* 266 F.3d 532 (6th Cir.

2001), *rev'd United States v. Bass*, 536 U.S. 862 (2002) (*per curiam)* (pretrial ruling dismissing death penalty based on racial discrimination affirmed by Circuit, reversed and remanded by Supreme Court); *United States v. Edelin*, 134 F. Supp.2d 59 (D.D.C. 2001) (pretrial motion to preclude imposition of death penalty). Other courts have recognized disparate racial impact, in the absence of a race-neutral explanation, warrants discovery of the criteria, policies, and procedures from which the disparate impact results. *See United States v. Jones*, 159 F.3d 969, 978 (6th Cir. 1998) (selective prosecution based on race; abuse of discretion by trial court in refusing to grant discovery; case remanded); *United States v. Tuitt*, 68 F. Supp.2d 4 (D. Mass. 1999) (defendant in crack cocaine prosecution entitled to discovery); *United States v. Glover*, 43 F. Supp. 2d 1217, 1233 (D. Kan. 1999) (pretrial motion in capital prosecution; African-American defendant entitled to discovery of additional statistical information); *United States v. Llera Plaza*, 181 F. Supp.2d 414, 420 (E.D. Pa. 2002) (discovery granted; government compelled to submit portions of death penalty prosecution memoranda for specific cases for *in camera* inspection by the trial court).

The racial disparity evident in the death penalty prosecutions is disproportionate when compared with narrower populations than the general public. For example, in Fiscal Year 2000, when Mr. Vialva proceeded to trial, a total number of 59,846 defendants were sentenced in federal court. The race and ethnicity of the sentenced defendants were reported as follows:

|            | *White*  | *Black*  | *Hispanic* | *Other*[1] |
|------------|----------|----------|------------|------------|
| Total      | 17,755   | 14,747   | 24,222     | 2,303      |
| Per cent.  | 30.1%    | 25.0%    | 41.0%      | 3.9%       |

---

[1] Categories of sentenced defendants as described by United States Sentencing Commission. Out of a total of 59,846 cases reviewed by the Commission, 819 were excluded based on incomplete reporting of data, resulting in the 59,027 cases encompassed in Table 4.

U.S. SENT. COMM'N, *2000 Sourcebook of Federal Sentencing Statistics,* Table 4, page 14. The census of death-sentenced inmates is strikingly dissimilar to the general population in the Bureau of Prisons. Thirty-six men are presently confined under one or more sentences of death:

| *White* | *Black*[2] | *American Indian* | *Latino* | *Asian* | *Other* |
|---|---|---|---|---|---|
| 13 | 22 | 1 | 0 | 0 | 0 |

DEATH PENALTY INFORMATION CENTER, Capital Punishment Project, *Fall 2004 Quarterly Report by the Criminal Justice Project of the NAACP Legal Defense and Educational Fund, Inc.* (Oct. 4, 2004), available at http://naacpldf.org/conten/pdf/pubs/drusa/DRUSA_Fall_2004.pdf.

These facts establish the United States Department of Justice's policies that identified a disproportionate number of minority race defendants for death penalty prosecution resulted in a disproportionate number of minority race death sentenced inmates. The statistics for federal death penalty prosecutions in Texas are equally compelling. Ten men have been convicted and sentenced to death in the federal district courts of Texas. Two of the ten convicted men have been executed: Louis Jones, who was African-American; and Juan Garza, who was Latino. Of the eight remaining defendants, seven are African-Americans and one is Caucasian.[3] There can be no legitimate dispute about these facts. The remaining component of Mr. Vialva's claim rests within the exclusive purview of the United States. This is not an instance in which discovery will pose an untoward burden on the responding government entity. The United States Department of Justice has collected

---

[2]Two defendants, Arboleda Ortiz and German Sinisterra, classified by the Bureau of Prisons as "black," are Colombian nationals.

[3]Shannon Agofsky was serving a life sentence for a homicide during a bank robbery in Missouri. Mr. Agofsky was sentenced to death for killing a fellow inmate while confined in the United States Penitentiary in Beaumont, Texas. Mr. Agofsky's case is thus legally and factually distinct from the seven other federal capital prosecutions in Texas.

this information and published portions of its results for public scrutiny. This request for discovery seeks nothing more than full disclosure of information already in Respondent's possession. *Cf. United States v. Armstrong*, 517 U.S. 456, 468 (1996); *and see Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997) (petitioner entitled to discovery; request supported by established facts of presiding trial judges' corruption and facts "lending support" to allegation judge was actually biased in petitioner's case).

Counsel believe several items material to the consideration of this issue remain in the possession of the United States Attorney for the Western District of Texas and the United States Department of Justice. These items include, but are not limited to:

1) The prosecution memorandum prepared by the United States Attorney for submission to the United States Department of Justice's death penalty authorization committee;

2) Initial statistical information provided to the Department describing the offense and the defendant by age, gender, race, and ethnicity;

3) Statistical information relating to the overall group of potential death penalty defendants, totaling 1,848 as of June 5, 2004, by age, gender, race, and ethnicity;

4) Directives from the Attorney General of the United States relating to the standards for federal death penalty prosecutions;

5) Internal correspondence relating to the prosecution of this case and, specifically, the reasons for pursuing the death penalty against Mr. Vialva; and,

6) Information relating to other, similar cases in which the death penalty was not pursued against non-minority defendants.

Discovery of this material, and any other material bearing on the decision to seek the death penalty in this case and not others, is essential for this Court's determination of Ground X. Mr. Vialva

2511

requests permission to conduct discovery on these matters. Specifically, Mr. Vialva requests this Court order the Respondent to produce all documents, information, data, and other material bearing on the United States's decision to seek the death penalty in this case including, without limitation, the items referenced, *supra*, in subparagraphs one through six.

### C.    Conclusion

Based on the foregoing, Mr. Vialva requests this Court enter an order authorizing further discovery on him to conduct discovery in this case. Mr. Vialva is not required to prove he is entitled to relief as a condition precedent to obtaining discovery. Rather, he is required to show "some evidence" tending to establish the existence of facts in support of his claim, for which further discovery would be appropriate. Clearly, the United States Department of Justice has collected statistics on the age, gender, race, and ethnicity of the defendant against whom the death penalty has been authorized. The Department of Justice has established a formal process through which cases are evaluated prior to a local United States Attorney's being authorized to seek the death penalty. There is no basis to believe the Department does not possess similar information for those cases in which the death penalty was not authorized.

Respondent has elected not to provide this Court with sufficient facts on which it may judge the neutrality of the decision making process. The effects of this process are plainly disproportionate when measured against the general population in the United States, the group of defendants selected for noncapital prosecution during the same fiscal year, the general population of inmates confined in the Bureau of Prisons, and the census of inmates confined under federal sentences of death. As a member of a racial minority selected for prosecution and sentenced to death, Mr. Vialva has established a direct link between his case and the policies of the United States. Mr. Vialva requests

2512

the production of documents, records, and tangible items of evidence as enumerated in this *Second Motion to Conduct Discovery* and requests permission to utilize the processes of discovery permitted by Rule 6.

Respectfully submitted,

SUSAN M. OTTO   Oklahoma Bar # 6818
Federal Public Defender Western District of Oklahoma
LISA S. McCALMONT  Texas Bar # 24007629 OBA #17096
Assistant Federal Public Defender
Death Penalty Federal Habeas Corpus Division
215 Dean A. McGee   Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930 Telefacsimile: 405 609-5932
COUNSEL FOR DEFENDANT/PETITIONER
CHRISTOPHER ANDRE VIALVA

## CERTIFICATE OF SERVICE

I certify that on this 7th day of February, 2005, a true and correct copy of this Second Motion for Discovery and the proposed Order was mailed, postage prepaid to Mr. Mark Stelmach, Assistant United States Attorney, 816 Congress Avenue, Suite 1000, Austin, Texas  78701.

SUSAN M. OTTO

9

2513