FILED

FEB 1 7 2005

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

UNITED STATES OF AMERICA            )
                                    )
v.                                  )    CRIMINAL NO. W-99-CR-70(1)
                                    )
CHRISTOPHER ANDRE VIALVA            )

### GOVERNMENT'S RESPONSE TO MOVANT VIALVA'S "COMBINED MOTION TO GRANT MOTION, SECOND MOTION FOR DISCOVERY AND BRIEF IN SUPPORT"

TO THE HONORABLE COURT:

Comes now the United States of America, by and through the United States Attorney for the Western District of Texas, and responds to § 2255 Movant CHRISTOPHER ANDRE VIALVA'S "Combined Motion To Grant Motion, Second Motion For Discovery And Brief In Support." (Previously, Vialva filed a "Motion To Conduct Discovery" on September 20, 2004, Document Number 404. The government filed the "Government's Response To Movant's Motion To Conduct Discovery" on September 30, 2004, Document 407).

### Vialva's Motion

In Vialva's most recent discovery motion, he seeks this Court to order the production of: "(1) The prosecution memorandum prepared by the United States Attorney for submission to the United States Department of Justice's death penalty authorization committee;

(2) Initial statistical information provided to the Department describing the offense and the defendant by age gender, race, and ethnicity;

(3)  Statistical information relating to the overall group of potential death penalty defendants, totaling 1,848 as of June 5, 2004, by age, gender, race, and ethnicity;

(4) Directives from the Attorney General of the United States relating to the standards for death penalty prosecutions;

(5) Internal correspondence relating to the prosecution of this case and, specifically, the reasons for pursuing the death penalty against Mr. Vialva; and

(6) Information relating to other, similar cases in which the death penalty was not pursued against non-minority defendants."

### Discovery In Section 2255 Cases

Rule 6(a), titled "Discovery" "Leave of court required," of the Rules Governing Section 2255 Proceedings For The United States District Courts provides that:

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure or elsewhere in the usages and principles of law if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

28 U.S.C.A. § 2255 Rule 6(a).[1]  In order to meet this standard, Vialva must:  (1) make a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation; and (2) show good cause for the discovery.  *Harris v. Nelson*, 394 U.S. 286, 298-300 (1969).  Good cause exists "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that

---

[1]  Additionally, Rule 6(b) requires "a list of the documents . . . sought to be produced."

2515

he is ... entitled to relief.'" *Bracy v. Gramley*, 520 U.S. 899, 908-9 (1997) (quoting *Harris*).

On the other hand, "'Habeas corpus is not a general form of relief for those who seek to explore their case in search of its existence.'" *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994) (quoting *Aubet v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)). The petitioner must set forth specific allegations of fact; conclusory allegations are not enough to warrant discovery under Rule 6. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996) (citing *Ward*). Simply put, Rule 6 does not allow fishing expeditions. *Id.*; *see also, e.g., United States v. Short*, 2001 WL 736761 (E.D.La. 2001) (application to a § 2255 case).

**Vialva Has Not Shown Good Cause Or Entitlement To Relief As To His Issue X**

Vialva asserts that the material he requests "is essential to this Court's determination of Ground X" (Motion at 7). In Ground X of his section 2255 motion, Vialva contended that the federal death penalty was unconstitutional as applied "since it has been pursued and imposed disproportionately against people of color" (Motion at 159) (Bernard also raised this issue in his motion at 147-51). In support of this contention, Vialva alleges that, according to the Death Penalty Resource Counsel, out of a pool of 1,845 potential capital defendants, a total of 318 (or 17%) have been authorized for capital prosecution, and that "[w]ithin the group of 318 defendants, the death penalty has been sought disproportionately against African-Americans at a rate of 52%" (Motion at 159, 160).

25|6

As discussed in more detail in the government's response to this issue (Response at 197-203), Vialva's selective prosecution claim is entirely without merit. (Additionally, it was procedurally defaulted). In *United States v. Armstrong*, 517 U.S. 456 (1996), the Supreme Court addressed the appropriate standard for establishing a constitutional selective-prosecution claim. The *Armstrong* Court noted that, absent clear evidence to the contrary, there is a presumption that prosecutors have properly discharged their duties. *Id*. at 464-65.

In *McCleskey v. Kemp*, 481 U.S. 279, 294-97 (1987), the petitioner made a claim of selective prosecution based on  the "Baldus Study," which reported that the Georgia prosecutors sought the death penalty in 70% of the cases involving black defendants and white victims, 32% of the cases involving white defendants and white victims, 15% of the cases involving black defendants and black victims, and 19% of the cases involving white defendants and black victims. *Id*. at 287.  The Court in *McCleskey* determined that a court may be allowed to make a finding of a constitutional violation (or *prima facie* finding thereof) in very limited circumstances if the data presents a "stark" enough picture, but that the Baldus study did not so qualify.  The *McClesky* Court held that "exceptionally clear proof" would be required to infer that prosecutorial discretion was abused. *Id*. at 297. In the instant case, Vialva's statistics are certainly no more stark than those in *McCleskey.*

In *United States v. Jones*, 287 F.3d 325, 333-35 (5th Cir.), *cert. denied*, 537 U.S. 1018 (2002), the Fifth Circuit was presented with a report by an appellant titled "Department of Justice, The Federal Death Penalty System: A Statistical Survey (1988-2000)," prepared by the Department of Justice, in support of a selective prosecution claim.  The report provided

2517

that, between 1995 and 2000, the Attorney General of the United States authorized 159 death-penalty prosecutions from 682 potential death-penalty cases, and that of those 159 cases, there were 44 white defendants, 71 black defendants, 32 Hispanic defendants, and 12 "other" defendants. *Id.* The Fifth Circuit held that this evidence was insufficient to establish a *prima facie* case for selective prosecution. *Id.*

In *United States v. Webster*, 162 F.3d 308, 333-35 (5th Cir. 1999), the appellant presented statistical evidence in support of a claim of selective prosecution that 66% of federal death penalty cases involved African-American defendants. The Fifth Circuit denied this claim and a part of its holding was that the 66% African-American-defendants statistics did not rebut the presumption of good faith on the part of the prosecution. *Id.*

Finally, in *Hall v. United States*, 2004 WL 1908242 (N.D.Tex. Aug 24, 2004), Hall made a selective-prosecution claim for relief under § 2255 that the government violated his constitutional rights because it used ethnicity as a basis for seeking the death penalty against African-Americans such as himself. In support of his claim, Hall cited statistics maintained by the Federal Death Penalty Resource Center that purportedly indicate that the Department of Justice has authorized the death penalty in 199 cases, 76% of which had non-white defendants and 52% of which involved an African-American defendant (*see* page 27-28 of the Westlaw opinion). Further, of these defendants, 47.5% of white defendants obtained a plea deal for a lesser sentence, while 27.2% of African-Americans obtained such plea deals. *Id.*  The district court held, however, that this statistical evidence was insufficient to establish a *prima-facie* selective-prosecution case. *Id.* (citing *Jones*, 287 F.3d at 333-35).

2518

Significantly, for purposes of the instant motion, in *Hall* the district court held that his statistical evidence was not sufficient to establish the "some evidence" standard necessary to establish good cause for discovery. *Id.* at n. 11.

Thus, the first response to Vialva's six requests for discovery is that they relate to an issue in which he has failed to establish the "some evidence" standard necessary to establish good cause for discovery. *Id.* at n. 11.

### In General, The Death Penalty Protocol Creates No Right To Discovery

A number of cases have held or recognized that the Department of Justice's Death Penalty Protocol, United States Attorney's Manual sections 9-10.010 et seq, creates no right to discovery by a defendant. *See* 190 A.L.R. Fed. 133. In *United States v. Shakir*, 113 F.Supp.2d 1182 (M.D.Tenn. 2000), for example, the defense sought mitigating evidence prior to trial it believed was contained within death penalty certification documents. The court held, however, that the Death Penalty Protocol did not create any enforceable substantive or procedural rights in the defendants.

In *United States v. Haynes*, 242 F.Supp.2d 540 (W.D.Tenn. 2003), the court rejected the defendant's contention that disclosure of the United States Attorney's initial recommendation and supporting documentation was necessary to ensure that the death penalty was not imposed in an arbitrary and capricious manner. The court held that the Department of Justice's Death Penalty Protocol does not create any enforceable substantive or procedural rights for the defendant and that the governments refusal to disclose the initial recommendation and supporting documentation to the defendant was a matter of

2519

prosecutorial discretion unreviewable by the court. *Id.*

Thus, although death penalty protocol information is available in the United States Attorney Manual, these guidelines do not create any enforceable substantive or procedural rights for defendants, and, in general, discovery has not been permitted in this area or in the area of case-specific memoranda.

### Vialva Is Not Entitled To Attorney Work Product And Internal Correspondence; The Deliberative Process And Work Product Privileges Apply

Part of Vialva's requests for discovery include: "[t]he prosecution memorandum prepared by the United States Attorney for submission to the United States Department of Justice's death penalty authorization committee" in the instant case; "[i]nitial statistical information provided to the Department describing the offense and the defendant"; [i]nternal correspondence relating to the prosecution of this case and, specifically, the reasons for pursuing the death penalty against Mr. Vialva"; and information concerning other capital cases. These requests are without merit. Vialva has not established a basis for discovery of attorney work product and internal correspondence.

Generally, as first recognized by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947), the work product doctrine was designed to allow an attorney to assemble information, sift through the facts, and prepare legal theories and strategies without undue or needless interference; it was meant to promote justice and protect a client's interests by restricting access to an attorney's correspondence, briefs, mental impressions, and other documents. *See also United States v. Nobles*, 422 U.S. 225, 237 (1975) (applying work product rule to criminal cases). The doctrine protects material prepared by

2510

investigators and other agents as well as those prepared by the attorney himself. *Id.* at 238-39. Absent a waiver, "opinion" work product, such as mental impressions, opinions, conclusions, judgments, or legal theories are not discoverable. *See, e.g., In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002) (citations omitted).

Specifically, there is no basis for Vialva to obtain the documents underlying the decision to seek the death penalty in this case. In *United States v. Frank*, 8 Fed.Supp.2d 253, 283-84 (S.D.N.Y. 1998), in pre-trial motions, the defendant challenged the propriety of the government's decision to seek the death penalty and sought "documents underlying the decision to seek the death penalty in this case." Defendant Frank pointed "to 'other, more serious cases in the [Southern District of New York] in which the government has foregone seeking the death penalty,' as well as the fact that 'the only three defendants against whom the death penalty has been sought in the Southern District [of New York] are African-American," and suggested that 'arbitrary factors are at work in the selection of capital cases by prosecutors.'" *Id.* The government responded that the decision to seek the death penalty against Frank "was based entirely on proper considerations, including most importantly, the aggravated nature of the crime."*Id.*[2]

---

[2] In the instant case as well, the decision to seek the death penalty against Vialva and Bernard was based most importantly on the extremely aggravated nature of the brutal murders of Mr. and Mrs. Bagley.

254

The court held that Frank's "request must be denied in all its forms." *Id.* The court explained that "Frank has adduced absolutely no evidence suggesting that the Government abused its discretion in seeking the death penalty in this case." *Id.* Frank's conclusory allegations of racial discrimination were insufficient. *Id.* The court further explained that in the absence of any evidence to the contrary, the court must presume that the prosecution was undertaken in good faith. *Id.* (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). In the capital context, according to *McClesky*, "exceptionally clear proof" would be required to infer that prosecutorial discretion was abused. *Id.* The court in *Frank* determined that:

> Here, Frank's arguments in support of an abuse of discretion by the United States Attorney's Office in the Southern District of New York do not come close to meeting the "exceptionally clear proof" standard that might necessitate an *in camera* review of the documents requested by the defendant regarding the Government's selection process, let alone an order that they be turned over to the defendant. [making a compare cite to *McClesky* holding that the Baldus study was clearly insufficient to support an inference of a discriminatory purpose].

*Id.* The court denied discovery and the request for a hearing. *Id.*; *see also United States v. Bass*, 536 U.S. 862 (2002) (district court erred in allowing discovery on race-disparity capital punishment issues when defendant "failed to submit relevant evidence that similarly situated individuals were treated differently").

The court in the *Frank* case also ruled that "Frank's request to review the materials that the Government prepared and considered in making its decision to seek the death penalty must be denied." *Id.* at 284. In *Frank*, the government resisted production of documents on the basis of the deliberative process privilege. *Id.* The court agreed. *Id.*

The *Frank* court explained that there are strong policy reasons in favor of keeping confidential the internal deliberative process through which the government decides to seek the death penalty. *Id.* The unrestrained and multi-level review provides an opportunity for defense-counsel participation at both the local level and in Washington D.C. *Id.* "[P]rosecutors are encouraged and required to evaluate carefully the strengths as well as the weaknesses of their cases, along with the factors in favor of and opposed to the imposition of the death penalty." *Id.* Defense counsel have the opportunity to present any evidence they believe shows racial bias in administration of the federal death penalty. *Id.* Government officials are instructed to consider any mitigating factor reasonably raised by the evidence and "to satisfy themselves that there is sufficient admissible evidence of aggravating factors to both obtain a death sentence and to sustain it on appeal." *Id.*

Thus, the court in *Frank* held that:

> Discovery of the deliberative materials would have a chilling effect on the thorough evaluation of these issues and hinder the just, frank, and fair review of the decision for every individual defendant who faces the prospect of receiving a Notice of Intent to Seek the Death Penalty.

*Id.*

In the instant case as well, in addition to failing to show anything close to the proof of selective prosecution required by *McClesky* and *Hall*, Vialva's request for discovery of the deliberative materials should also be denied on the basis of the chilling effect on the thorough evaluation of the issues surrounding the decision to seek the death penalty, and the hindrance to the just, frank, and fair review of the decision for every individual defendant

who faces the possibility of capital charges.

Also, in *United States v. Furrow*, 100 F.Supp.2d 1170 (C.D.Cal. 2000), the court denied a motion to produce the prosecution's death penalty evaluation form and prosecution memorandum. The court recognized that the deliberative process privilege protects from discovery all "'documents reflecting advisory opinions, opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formed.'" *Id*. at 1174 (quoting *N.L.R.B. v. Sears Robuck & Co.*, 421 U.S. 132, 150 (1975). The *Furrow* court also recognized that the "documents fall within the aegis of the more general work product privilege" (citing *Hickman* and *Nobles*). In the instant case as well, the documents and memoranda sought by Vialva are within the deliberative process privilege and work product privilege.

### Vialva Already Has Access To A Wealth Of General Statistics

Finally, as to the requests for general statistics, as acknowledged by both Vialva and Bernard, the Death Penalty Resource Counsel or Death Penalty Resource Counsel Project have amassed a wealth of statistics regarding capital litigation. Statistics are also available in publications by the Department of Justice. Vialva has not shown that the statistics he seeks are not largely already available to him.

2524

# <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing Government's Response has been sent by regular

mail on this the <u>17th</u> day of <u>February</u>, 2005, to:

Attorneys for Defendant/Movant Christopher Andre Vialva
Susan M. Otto
Federal Public Defender
Lisa S. McCalmont
Assistant Public Defender
215 Dean A. McGee Avenue, Suite 109
Oklahoma City, Oklahoma 73102

Attorneys for Defendant/Movant Brandon Bernard
Robert C. Owen
Owen & Roundtree, L.L.P.
P.O. Box 40428 Austin, Texas 78704

Robert H. Gombiner
Federal Public Defender
1601 Fifth Avenue, Ste. 700
Seattle, Washington 98101

Mark R. Stelmach
Assistant U.S. Attorney

2525

## Conclusion

Vialva has not made a sufficient showing of a constitutional violation and good cause for discovery of the death-penalty information and internal memoranda that he seeks. Movant's requests are merely for exploratory searches, in the hope of producing relevant evidence, and should be denied. Habeas corpus is not a general form of relief for those who seek to explore their case in search of its existence. He has not made a sufficient initial showing of selective prosecution on the basis of race that would warrant further development. Furthermore, some of the documents and memoranda sought by Vialva are within the deliberative process privilege and work product privilege.

Wherefore, all premises considered, the United States prays that Movant's "Combined Motion To Grant Motion, Second Motion For Discovery" be denied.

Respectfully submitted,

JOHNNY SUTTON
UNITED STATES ATTORNEY

By:

Mark R. Stelmach
Assistant U.S. Attorney
Appellate Section
816 Congress Avenue, Suite 1000
Austin, Texas 78701
A/C 512 916-5858
FAX 512 916-5854
Pennsylvania State Bar No. 28964

2526