FILED

MAY 0 9 2005

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

UNITED STATES OF AMERICA,　　　§
　　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　　§　　CRIMINAL NO. W-99-CR-70(1)
　　　　　　　　　　　　　　　　§　　CIVIL NO. 04-CV-163
CHRISTOPHER ANDRE VIALVA.　　§

## MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY
## AND BRIEF IN SUPPORT

**TO THE HONORABLE COURT:**

　　Christopher Andre Vialva, by and through the undersigned counsel, submits the following motion requesting leave to file supplemental authority in support of Grounds IV and VII of his *Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant Title 28, United States Code, Section 2255*, filed June 14, 2004. Doc. 372. The United States responded to Mr. Vialva's *§ 2255 Motion* (Doc. 417) and Mr. Vialva submitted his *Reply* to the United States's response (Doc. 423 ). Counsel are requesting leave to submit additional case authority that was not available when the last responsive pleading was submitted on Mr. Vialva's behalf.

　　The supplemental authority was decided by the United States Supreme Court March 1, 2005. The decision is relevant to this Court's consideration of the issues presented in the referenced Grounds. The proposed submission is appended to this Motion as Attachment A. A proposed Order granting the relief requested is submitted in accordance with Rule CV-7(f), Local Court Rules of the United States District Court for the Western District of Texas.

428

Respectfully submitted,

SUSAN M. OTTO   Oklahoma Bar # 6818
Federal Public Defender Western District of Oklahoma
LISA S. McCALMONT  Texas Bar # 24007629 OBA #17096
Assistant Federal Public Defender
Death Penalty Federal Habeas Corpus Division
215 Dean A. McGee   Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930 Telefacsimile: 405 609-5932
COUNSEL FOR DEFENDANT/PETITIONER
CHRISTOPHER ANDRE VIALVA


CERTIFICATE OF SERVICE

I certify on this 6th day of May 2005, a true and correct copy of this *Motion for Leave to File Supplemental Authority and Brief in Support* and of the proposed *Order* were mailed, postage prepaid to Mr. Mark Stelmach, Assistant United States Attorney, 816 Congress Avenue, Suite 1000, Austin, Texas 78701, counsel for Plaintiff/Respondent United States of America; and to Rob Owen, P.O. Box 40428, Austin, Texas 78704, and Robert Gombiner, Assistant Federal Public Defender, 1111 Third Avenue, Suite 1100, Seattle, Washington 98101, counsel for Brandon Bernard.


SUSAN M. OTTO

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CRIMINAL NO. W-99-CR-70(1) |
| | § | CIVIL NO. 04-CV-163 |
| CHRISTOPHER ANDRE VIALVA. | § | |

## SUPPLEMENTAL AUTHORITY
## AND BRIEF IN SUPPORT

**TO THE HONORABLE COURT:**

Christopher Andre Vialva, by and through the undersigned counsel, submits the following supplemental authority in support of Grounds IV and VII of his *Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant Title 28, United States Code, Section 2255* [hereinafter, *§ 2255 Motion*] filed June 14, 2004. Doc. 372.

On March 1, 2005, the Supreme Court decided *Roper v. Simmons*, 125 S. Ct. 1183. Affirming the decision of the Supreme Court of Missouri, the majority ruled the Eighth and Fourteenth Amendments prohibit the execution of defendants who were under eighteen years old when they committed an offense eligible for the death penalty. *Id.* at 1200. In reaching this conclusion, the Court abrogated its decision in *Stanford v. Kentucky*, 492 U.S. 361 (1989). *Simmons*, 125 S. Ct. at 1198. Mr. Vialva turned nineteen years old forty-one days before the deaths of Todd and Stacie Bagley. Counsel acknowledge *Simmons* is not directly dispositive of the issues presented in Mr. Vialva's *§ 2255 Motion*. However, the reasoning of the Court and the Constitutional construction of *Simmons* provide persuasive guidance relevant to the issues presented in Grounds IV and VII of Mr. Vialva's *§ 2255 Motion*.

*ATTACHMENT A*

2534

***Ground IV***

Trial counsel's failure to develop evidence relating to Mr. Vialva's mental age was presented as a component of a Constitutional challenge to the adequacy of representation during the guilt stage of Mr. Vialva's trial.  Doc. 372, pp. 82-85.  Trial counsel's failure to investigate, develop, and present readily available evidence deprived the jury of evidence critical to its determination of whether Mr. Vialva, with his cognitive, emotional, and developmental deficits, possessed the capacity to form the intent necessary to be found guilty of first degree murder.  The record establishes this evidence was, in fact, available to trial counsel.

Dr. Mark Cunningham testified at the penalty phase, ostensibly in support of Mr. Vialva, concerning one of the charged  aggravating factors.  During the course of Dr. Cunningham's direct examination, he was asked to give his opinion on the effect of youthfulness of the offender in the assessment of "future dangerousness." Dr. Cunningham's report included the fact brain development continues until age twenty-five.  Dr. Cunningham explained this was important:

> Well, because when someone is eighteen or nineteen years old, their nervous system is not yet fully online.  Their brain is not fully developed.  Specifically, the part of the brain that is still developing are the frontal lobes.  It's the part of the brain that's at the front here and that's kind of the command and control center that's involved in judgment and impulse control and putting the brakes on, delay of gratification, and appreciating long-term consequences. . . .

XV Tr. 3033.  This testimony was not presented to the jury during the first stage because Dr. Cunningham was conducting his review of the records and preparing his testimony while the first stage of trial was proceeding.  Moreover, the jury never heard testimony in either stage of the trial about Mr. Vialva from an expert who had conducted an interview and forensic testing of him.  Such testing would have revealed precisely the sort of cognitive, emotional, and developmental deficits

that impacted directly his ability to form the requisite intent. *See* Doc. 374, Declaration of Daneen Milam, Exhibit VII, ¶ 25. *Simmons* underscores the Constitutional magnitude of trial counsel's error.

*Simmons* established a bright line, categorical prohibition against the imposition of the death penalty against any person who commits the offense prior to the age of eighteen. The predicate for the Court's decision was its determination that juveniles, because of their cognitive and behavioral limitations, are not culpable in the same manner and degree as adults. The Eighth Amendment requires proportionality because of the fundamental principle that punishment is meant to deter conduct through fear of its imposition and to redress violations in a degree appropriate to the wrong inflicted through the violation of the prohibition. When the person against whom the punishment is to be inflicted is incapable of being deterred or is insensible to the justness of the punishment, imposition of the punishment implicates the Constitution.

The Court recognized and enforced these components of the Eighth Amendment in *Atkins v. Virginia*, 536 U.S. 304 (2002). The Court found a mentally retarded offender may be competent to stand trial and may understand "right from wrong," but he is unable to comprehend the components of deterrence and redress inherent in a punishment. For this reason, the mentally retarded "do not act with the level of moral culpability that characterizes the most serious adult criminal conduct." *Id.* at 306. Applying similar reasoning, the majority in *Simmons* noted three general areas of distinctions distinguishing adults and juveniles. Juveniles are recognized as more immature and irresponsible. For that reason, legislatures impose limits restricting by age alone when a person may legally enter into contract, drive automobiles, purchase alcohol, vote, and marry. *Simmons*, 125 S. Ct. at 1195. Second, juveniles are "more vulnerable or more susceptible to

3

negative influences and outside pressures, including peer pressure." *Id.* (citing *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982)). Third, the personality traits of a juvenile are not as well formed as those of an adult. *Id.* These recognized differences ". . . render suspect any conclusion that a juvenile falls among the worst offenders." *Id.* The Court noted:

> It is difficult even for expert psychologists to differentiate between the youthful offender whose crime reflect unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.

*Id.* at 1197. The difficulty is so profound, the Court noted, that medical peer groups prohibit diagnoses of antisocial personality disorder for persons less than eighteen years old. *Id.*

*Simmons* recognizes that youth is a relevant factor in the analysis of the death penalty. At nineteen, Christopher Vialva's brain had not developed fully. The other factors bearing on Mr. Vialva's cognitive capacity identified by Dr. Milam, would have exacerbated the impulsiveness, suggestibility, and emotionality that were recognized by the *Simmons* Court as hallmarks distinguishing juveniles from adults. Mr. Vialva's mental age was thus a necessary factor the jury should have considered in determining his ability to form the specific intent required by the capital charges. Given the facts of the case and the government's contentions about Mr. Vialva's role, it was incumbent on trial counsel to investigate, develop, and present this evidence during the guilt stage of the trial. The jury reached its decision about Mr. Vialva's guilt in the absence of critical, relevant evidence. *Simmons* stands as persuasive authority for the conclusion counsel's omissions compromised Mr. Vialva's Sixth Amendment right to the effective assistance of counsel and his Fifth Amendment right to Due Process.

2537

**Ground VII**

Trial counsel presented four mitigating factors during the penalty phase. Ten of the twelve jurors found the first factor, "Christopher Vialva was subjected to emotional and physical abuse as a child, and was deprived of parental guidance and protection," was mitigating. The third mitigating factor was the only one in which Mr. Vialva's youth was presented to the jury. Counsel framed the third mitigating factor as: "Christopher Vialva was nineteen at the time of the offense." None of the jurors voted in favor of this factor. Since Mr. Vialva's chronological age was an undisputed fact, it is reasonable to conclude the jurors' unanimous rejection of the factor expressed their collective belief that Mr. Vialva's youth did not militate against the imposition of the death penalty. *Simmons* provides support for the ineffective assistance of counsel argument presented in Ground VII of Mr. Vialva's *§ 2255 Motion*.

> In adopting a categorical approach, the *Simmons* Court recognized:
>
> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. The plurality opinion in *Thompson* drew the line at 16. In the intervening years the *Thompson* plurality's conclusion that offenders under 16 may not be executed has not been challenged. The logic of *Thompson* extends to those who are under 18. The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

125 S. Ct. at 1197-1198. *Simmons* does not preclude the imposition of the death penalty in this case as a matter of law. But, *Simmons* clearly recognizes distinctions between juveniles and adults that would support the conclusion that a particular youthful offender did not deserve the death penalty. This conclusion would be reached by a jury only if it were presented with sufficient facts regarding

5

the individual defendant's personal characteristics. *Simmons* reinforces the need for individualized sentencing by a jury presented with all relevant evidence.

The parameters of "relevant evidence" in this context can be determined through *Simmons* and its analytical predecessor, *Atkins*. The *Atkins* Court did not adopt a minimum intelligence quotient that would qualify a person for imposition of the death penalty. Mental retardation, unlike chronological age, is evaluated based on a number of factors, not all of which are amenable to quantification by objective testing. Mental retardation is thus a question of fact for proof to the jury. Similarly, the mental age of a person less than twenty-five years old is subject to proof through an expert's testing, review of historical information, interviews, and other appropriate inquiry. This critical inquiry was not conducted in Mr. Vialva's case. Dr. Milam's Declaration establishes that such an inquiry would have yielded precisely the sort of information the *Simmons* Court examined in its decision making process.

It merits noting that Mr. Vialva's youth was used against him in this case in much the same way Mr. Simmons's youth was turned from a mitigating into an aggravating factor. As defense counsel struggled to elicit favorable information from Dr. Cunningham on the issue of future dangerousness, the United States objected to a line of questions concerning "youthful offenders." Counsel for the United States asserted, "Mr. Vialva is not a juvenile, he's an adult, Your Honor." XV Tr. 3036. The Court sustained the objection. *Id.* In closing argument, defense counsel drew the jury's attention to that portion of Dr. Cunningham's testimony in which he discussed brain development continuing until the age of twenty-five. Defense counsel argued, "They're (people under the age of twenty-five) less capable of controlling their conduct and thinking in terms of long-range conduct." XVI Tr. 3221. The United States countered by noting the offenses both Mr. Vialva

6

and his codefendant committed when they were "eleven -- fifteen years of age." The United States argued:

> In criminal history years, they're way passed [sic] eighteen or nineteen, because their crimes started young, and they kept doing them, and they got worse, and they escalated until the point that the appetite for violence became an issue. And that's what you have in this case, an insatiable appetite for violence.

XVI Tr. 3252. Further, the United States analogized Mr. Vialva's conduct as "[j]ust like a little boy who tortures a frog, who is very pleased with the pain he caused the frog . . . ." XVI Tr. 3255. The successful objection and arguments of the United States had the dual impact of denigrating the weak mitigation presentation and of reinforcing for the jury the need to impose death to redress Mr. Vialva's conduct. A similar argument was presented by counsel for the State of Missouri in Mr. Simmons's trial. *Simmons*, 125 S. Ct. at 1189 ("Age, he says. Think about age. Seventeen years old. Isn't that scary? Doesn't that scare you? Mitigating? Quite the contrary I submit. Quite the contrary.") The Supreme Court noted the specific risk presented by when the prosecution uses the defendant's youth against him:

> An unacceptable likelihood exists that the brutality or cold-blooded nature of any particular crime would overpower mitigating arguments based on youth as a matter of course, even where the juvenile offender's objective immaturity, vulnerability, and lack of true depravity should require a sentence less than death.

*Id.* at 1197. The Court's concerns in *Simmons* were fully realized in Mr. Vialva's case. *Simmons* supports the conclusion trial counsel's failure to adequately investigate, develop, and present readily available mitigation evidence on the mental age of Christopher Vialva was ineffective assistance of counsel and deprived Mr. Vialva of a Constitutionally adequate defense.

7

2540

### *Conclusion*

The legal, scientific, and societal factors deemed dispositive by the *Simmons* majority for purposes of Eighth Amendment proportionality analysis are fully apposite in this case. Mr. Vialva is within a group of young offenders who, while not excluded from death penalty eligibility, may be found not to deserve the death penalty by a fully informed jury. Trial counsel's failure to subject the government's case to requisite adversarial testing in the first stage resulted in the jury's determining Mr. Vialva's intent without being informed fully about his capacity to form that intent. The error compounded in the second stage with trial counsel's failure to present evidence relating directly to Mr. Vialva's mental age as a mitigating factor. In light of these errors, as well as the errors examined in detail in Mr. Vialva's *§ 2255 Motion*, there can be no confidence in the outcome of the jury proceedings. A new trial of both stages is required to cure these errors.

Respectfully submitted,

_____

SUSAN M. OTTO   Oklahoma Bar # 6818
Federal Public Defender Western District of Oklahoma
LISA S. McCALMONT  Texas Bar # 24007629 OBA #17096
Assistant Federal Public Defender
Death Penalty Federal Habeas Corpus Division
215 Dean A. McGee   Suite 109
Oklahoma City, Oklahoma 73102
Telephone:  405  609-5930  Telefacsimile:  405  609-5932
COUNSEL FOR DEFENDANT/PETITIONER
CHRISTOPHER ANDRE VIALVA

8

## CERTIFICATE OF SERVICE

I certify on this    day of    2005, a true and correct copy of this *Supplemental Authority and Brief in Support* was mailed, postage prepaid to Mr. Mark Stelmach, Assistant United States Attorney, 816 Congress Avenue, Suite 1000, Austin, Texas 78701, counsel for Plaintiff/Respondent United States of America; and to Rob Owen, P.O. Box 40428, Austin, Texas 78704, and Robert Gombiner, Assistant Federal Public Defender, 1111 Third Avenue, Suite 1100, Seattle, Washington 98101, counsel for Brandon Bernard.

_____

SUSAN M. OTTO

9

2542