IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CHRISTOPHER ANDRE VIALVA | § | |
| Movant | § | Civil No. W-04-CV-163 |
| | § | |
| v. | § | Criminal No. W-99-CR-070 (1) |
| | § | |
| UNITED STATES OF AMERICA | § | |
| Plaintiff-Respondent | § | |

## **RESPONSE TO MOTION TO ALTER OR AMEND JUDGMENT**

Plaintiff-Respondent, the United States of America, opposes inmate Christopher

Vialva's ("Vialva") Rule 59(e) motion for the following reasons.

### **Vialva's Motion Under Rule 59(e) Is Not An Appropriate Vehicle
For The Relief He Is Requesting**

Vialva's Motions

Vialva has filed a "Motion To Alter Or Amend Judgment And Brief In Support"

which asserts Federal Rule of Civil Procedure 59(e) as the basis for the motion. Vilava has

also filed a "Motion To Reconsider Denial Of Motion For Discovery And Of Motion For

Evidentiary Hearing And Brief In Support" which is addressed in a separate response. Vialva

requests in his Motion To Alter Or Amend Judgment that this Court rescind its Order

denying his claims for section 2255 relief and vacate the Judgment entered on the Order.

Specifically, as grounds for his motion, Vialva re-urges from his section 2255 motion: his

Eight-Amendment claim that the death penalty was too severe based on his age or mental age

at the time he committed the offenses; his conflict-of-interest-as-ineffective-assistance claim,

based on one of his trial attorneys, B. Dwight Goains seeking employment with the United States Attorney's Office; and two of his ineffective-assistance-of-counsel grounds, counsel's purported failure "to subject the government's case to appropriate adversarial testing," and counsel's purported "failure to develop readily available evidence in mitigation of punishment."

Rule 59(e) Motions

As the Fifth Circuit has explained in *Templet v. Hydrochem, Inc.*, 67 F.3d 473 (5th Cir. 2004), "[a] A Rule 59(e) motion "calls into question the correctness of a judgment." *Id.* at 478 (citation omitted). The Fifth Circuit "has held that such a motion is **not the proper vehicle for rehashing evidence**, **legal theories**, **or arguments** that could have been offered or raised before the entry of judgment." *Id.* at 478-79 (emphasis added) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Instead, "Rule 59(e) serves the **narrow purpose** of allowing a party to correct **manifest errors of law or fact** or to present newly discovered evidence." *Id.* at 479 (emphasis added) (citation, internal quotation marks and brackets omitted).[1] Further, "[r]econsideration of a judgment after its entry is an **extraordinary remedy** that should be used **sparingly**." *Id.* (emphasis added) (citing, *inter*

---

1. Similarly, the Court in *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003), stated: "A motion to alter or amend the judgment under Rule 59(e) must clearly establish either a manifest error of law or fact or must present newly discovered evidence and cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Id.* at 576 (citations and internal quotations omitted). Additionally, relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law. *Id.* (citation omitted). Decisions of courts made before the district court's decision "cannot constitute an intervening change in the law." *Id.* at 568 n.3.

**Response in Opposition to Rule 59(e) Motion - Page 2**

*alia*, 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2810.1, at 124 (2d ed.1995)).

Other courts have "held that the scope of a motion for reconsideration is extremely limited." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). "Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (citing *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)). A motion for reconsideration "must be based 'upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.' " *Prati v. United States*, 82 Fed.Cl. 373, 376 (2008) (citation and internal quotation omitted).

A "manifest error is an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Matosky v. Manning*, 428 Fed.Appx. 293 (5th Cir. 2011) (unpublished) (brackets and internal quotation marks omitted) (citing *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004); Black's Law Dictionary 563 (7th Cir. ed. 1999)).[2]

---

2.  Other courts have defined "manifest error" as: "a wholesale disregard, misapplication, or failure to recognize controlling precedent." *Hickory Farms, Inc. v. Snackmaster, Inc.*, 509 F.Supp.2d 716, 719 (N.D.Ill. 2007) (citing *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)); and "manifest" as "clearly apparent or obvious." *Ammex, Inc. v. United States*, 52 Fed.Cl. 555, 557 (2002).

**Response in Opposition to Rule 59(e) Motion - Page 3**

<u>Rule 59(e) Is Not An Appropriate Vehicle</u>
<u>For Vialva's Assertions Which Rehash</u>
<u>His Prior Section 2255 Arguments</u>

As noted above, Vialva's Rule 59(e) motion largely reasserts grounds that were raised in his section 2255 motion and rejected by this Court. Because Vialva's Rule 59(e) motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment, Vialva does not raise newly discovered evidence or new controlling authority, and Vialva has not raised a manifest error of law or fact or extraordinary circumstances which justify relief, his Rule 59(e) motion should be denied. Considering all of his grounds individually and collectively, they are without merit.

**Vialva's Previously Asserted Eighth Amendment Claim**

In amended pleadings to his 2004 section 2255 motion, Vialva claimed that his sentence of death should be vacated in light of *Roper v. Simmons*, 543 U.S. 551 (2005), in which the Supreme Court held that the death penalty may not be imposed for crimes committed by someone under 18 years of age (Order at 12, 27). In *Roper*, the Court explained that "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest." *Id*. at 574.

In his 2004 amended motion, Vialva argued that although he was 19 at the time he murdered the Bagleys, he was within the spirit of *Roper* because his mental age was younger. This Court rejected that argument (Order at 27-28). As this Court observed, a number of

courts have rejected the proposition that the *Roper* bright-line test applied to mental age (*id*.). In *In re Garner*, for example, the Sixth Circuit explained that "The *Roper* Court did not hold that the Eighth Amendment prohibits a death sentence for an offender with a 'mental age' of less than 18." *In re Garner*, 612 F.3d 533, 535-36 (6th Cir. 2010).

In his Rule 59(e) motion, Vialva argues that the Supreme Court's decision in *Miller v. Alabama*, __ U.S. __, 132 S.Ct. 2455, 2463 (2012), holding that mandatory life imprisonment without the possibility of parole for those under 18 at the time of their crimes violates the Eighth Amendment, is applicable to the instant case through its evolving standards of decency and consideration of scientific research (Motion at 3-5). *Miller*, however, acknowledged *Roper's* invalidation of the death penalty for all juvenile offenders under the age of 18, and did not create a new mental-age line of demarcation. Vialva has not cited any case expanding *Roper's* specific bright-line test.[3] Vialva has shown no manifest error.

---

3. Other courts have rejected the invitation to re-draw the line. *See*, *e.g.*, *Barwick v. State of Florida*, 88 So.3d 85, 106 (Fla. 2011) (*Roper*, which bars the execution of defendants who were under the age of 18 when they committed capital crimes, applies to those defendants whose chronological age is below eighteen, and does not apply to someone who was over 18, but whose mental age was under 18) (citations omitted).

**Response in Opposition to Rule 59(e) Motion - Page 5**

**Vialva's Previously Asserted Ineffective-Assistance
Conflict-Of-Interest Claim**

In his 2004 section 2255 motion, Vialva asserted that one of his attorneys, B. Dwight

Goains "was ineffective in that he applied for employment with the U.S. Attorney's Office

while the trial was still pending without first securing Defendant's consent or without

securing an effective waiver after the conflict had arisen" (Order at 32).[4] As this Court

explained (Order at 33):

> The record reflects that Goains applied for a position with the
> U.S. Attorney's Office in early February, 2000, but his
> application was rejected in early March, 2000. He sent a letter
> expressing his continued interest on March 6, 2000. Goains
> obtained a waiver of conflict from Vialva on May 3, 2000 and
> requested a hearing, which was held on May 12, 2000, three
> days before the start of trial. At the hearing Goains explained
> that there were two additional open positions with the U.S.
> Attorney's Office, and he thought he had an excellent chance of
> receiving an offer. After being advised by the Court of his
> options, Vialva confirmed his waiver of conflict and opted to
> continue with Goains as his attorney. Vialva stated that he was
> waiving his right to subsequently complain about any conflict.
> After the trial was over and Goains withdrew from the case, he
> was offered and accepted one of the open positions.

Thus, this is not a case where the record is restricted to issues of guilt or innocence

and there was no development of attorney-client facts. Here, the facts within the record at the

*in camera* hearing show that Goains fully disclosed the potential conflict and the basis for

the potential conflict. Vialva's understanding of the potential conflict and his waiver are also

---

4. To the extent Vialva is raising his conflict-of-interest claim outside of ineffective-assistance
*Strickland* analysis, that issue was procedurally defaulted by the failure to raise the claim,
documented in the record, in his direct appeal.

**Response in Opposition to Rule 59(e) Motion - Page 6**

contained within record facts and transcripts.[5] The effectiveness of the waiver is apparent

from the record (although this would seem to be within an issue procedurally defaulted).

Moreover, as this Court determined, there was no actual conflict of interest "because

Goains was not offered and did not accept a job from the U.S. Attorney's Office during his

representation of Vialva" (Order at 34). There was no active representation of conflicting

interests. Additionally, if a conflict arose, Vialva effectively waived the right to pursue such

a claim (*id*).

As this Court noted, in *Garcia v. Brunnell*, 33 F.3d 1193, 1199 (9th Cir. 1994), "[t]he

mere fact of a [defense counsel's] future employment plans did not create an actual conflict."

In *United States v. Jenkins*, 943 F.2d 167, 174-76 (2d Cir. 1991), the court rejected Jenkins'

argument that reversal of his conviction was warranted because at the time of his trial his

counsel had an application pending with the U.S. Attorney's Office, determining that a

pretrial hearing established that Jenkins knowingly waived any conflict.

Finally, Vialva cannot point to any instance of inadequacy in Goains' representation

of Vialva that could have been the result of a conflict. As this Court found, Vialva has not

shown any deficient performance of counsel or any cumulative errors approaching

---

5. After all of the information as to Goains' longstanding desire to join the U.S. Attorney's office and Goains' various employment applications were discussed, Vialva was asked if he wished for Goains to withdraw and have the Court substitute counsel or wish for Goains to continue representing him along with co-counsel, Vialva said he wished for Goains to continue to represent him (Tr. at 4-5). The Court then explained that if Vialva was convicted he could not come back and say "I didn't get a fair trial, because Mr. Goains had applied for a job with the U.S. Attorney's Office" (Tr. at 6). Vialva said he understood (*id*.).

constitutional dimension (Order at 62).

### Other Previously Asserted Ineffective-Assistance Claims

In his last issue, Vialva recounts that in his section 2255 motion, he made challenges to counsel's "failure to subject the government's case to appropriate adversarial testing and failure to develop readily available evidence in mitigation of punishment" (Motion at 7).  As to the allegations of ineffectiveness based on the defense not cross-examining experts, not obtaining defense experts, and not doing sufficient investigation, this Court did not find any instance of deficient performance by defense counsel (Order at 40-45).  This Court recounted that there was little scientific evidence linking the Defendants to the scene of the murder,[6] thus, further scientific investigation would not have been of assistance to the defense, and deciding not to cross-examine scientific witnesses, who offered little evidence prejudicial to the Defendants, was a reasonable strategy.[7]  As this Court found, the lack of physical evidence was emphasized by the defense in argument before the jury.  Essentially, the defense team balanced limited resources in accord with effective tactics and strategy.

As to the claim of failure to develop readily available evidence in mitigation of punishment, this Court explained:

6. As this Court observed there was no fingerprint or trace evidence from the Bagleys' incinerated vehicle (Order at 41). "The only DNA evidence obtained was from the ski mask Vialva wore when he shot the Bagleys" (Order at 42).

7. This Court also recounted that Vialva's counsel did seek funds for eight categories of experts (Order at 42).

**Response in Opposition to Rule 59(e) Motion - Page 8**

> Vialva's defense team secured the services of Ms. Francis as a mitigation expert who was paid $5760 and was authorized an additional $3,000. Vialva also had the assistance of Dr. Cunningham, who testified longer than any witness during the penalty phase. . . .

This Court further found that although Vialva complained that he received inadequate funding for a complete social history, much of what Vialva claimed was lacking was actually presented to the jury (Order at 55-59).

At the punishment phase, Dr. Cunningham referred to Vialva's educational records, psychological records, medical records, juvenile and adult offense records, and other records (Tr. 2968). He discussed Vialva's violent home life, his ADHA, characterized as a mild brain disorder, and his treatment problems (Order at 57). He presented statistical models to counter the government's testimony regarding future dangerousness. He presented a violence risk assessment as well as a summary of adverse developmental experiences and factors that interfered and damaged Vialva's development (TR. 2969). As this Court found, Dr. Cunningham "presented strong evidence of Vialva's physical problems and chaotic and abusive home life" (Order at 58).

Additionally, Vialva's counsel presented evidence which included: next-door neighbor Cedrick Young, Vialva's step-father, and Vialva's mother, who "gave a detailed description of their chaotic home life and her history of being abused by Vialva's father," and the abuse they both suffered from at the hands of her first husband (Order at 56).

On the other side of the ledger, Vialva "was the one who mercilessly shot the Bagleys," and additionally, as found by this Court: Vialva was affiliated with a violent street gang; Vialva committed dozens of burglaries accomplished by kicking in front doors; Vialva was in a car with other gang members when one of them murdered a man in a "road rage incident" (Order at 59). Vialva "had a history of violence, from which the jury was entitled to find he would constitute a continuing danger' (*id.*). Thus, Vialva had "failed to establish **either** ineffective assistance of counsel **or** any resulting prejudice" (*id.*) (emphasis added).

In his Rule 59(e) motion, Vialva cites to cases in which overwhelming evidence of guilt, as well as heinous facts, did not preclude the finding of *Strickland* prejudice (Motion at 7-11). "Vialva submits that these cases demonstrate this Court erred in denying ineffective assistance claims simply based on the trial record's 'overwhelming' evidence of guilt" (Motion at 11).

As discussed above, Vialva's premise is incorrect. This Court denied the *Strickland* claims after painstakingly reviewing the actions of Vialva's counsel and finding that the first *Strickland* prong had not been met: that counsel's performance was not deficient and their performance did not fall below an objective standard of reasonableness in light of prevailing professional norms. Additionally, after considering all of the claims and circumstances, this Court found that the *Strickland* prejudice prong also had not been met.

Vialva has not shown any manifest error of law or fact as to rulings under either *Strickland* prong.

**Response in Opposition to Rule 59(e) Motion - Page 10**

## CONCLUSION

The government respectfully asks the Court deny Vialva's motion for Rule 59(e) relief.

Respectfully submitted,

ROBERT PITMAN
UNITED STATES ATTORNEY

*/s/ Mark L. Frazier*

MARK L. FRAZIER
Assistant United States Attorney
800 Franklin, Suite 280
Waco, TX 76701
(254) 750-1580
Texas State Bar No. 07395100

*/s/ Mark R. Stelmach*

MARK R. STELMACH
Assistant United States Attorney
816 Congress Avenue, Suite 1000
Austin, Texas 78701
(512) 916-5858
Pennsylvania State Bar No. 28964

**Response in Opposition to Rule 59(e) Motion - Page 11**

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of December, 2012, a true and correct copy

of the foregoing instrument was electronically filed with the Clerk of the Court using

the CM/ECF System, which will transmit notification of such filing to the following

CM/ECF participant:

Susan M. Otto
Attorney at Law
Oklahoma City, Oklahoma

/s/ *Mark L. Frazier*
_____
MARK L. FRAZIER
Assistant United States Attorney

**Response in Opposition to Rule 59(e) Motion - Page 12**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| CHRISTOPHER ANDRE VIALVA | § | |
|     Movant | § | Civil No. W-04-CV-163 |
| | § | |
| v. | § | Criminal No. W-99-CR-070 (1) |
| | § | |
| UNITED STATES OF AMERICA | § | |
|     Plaintiff-Respondent | § | |

**O R D E R**

This matter having come before the Court on the Movant's Motion, and the

Court being otherwise fully advised,

IT IS ORDERED that, because the Movant has shown no manifest error of law

or fact, the Movant's Motion is DENIED.

SIGNED this the _____ day of December, 2012.

_____
WALTER S. SMITH, JR.
UNITED STATES DISTRICT JUDGE

**Response in Opposition to Rule 59(e) Motion - Page 13**