# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | **CAPITAL CASE** |
| **v.** | § | **CRIMINAL NO. W-99-CR-70(1)** |
| | § | **CIVIL NO. 04-CV-163** |
| **CHRISTOPHER ANDRE VIALVA.** | § | |

## MOTION FOR RELIEF FROM JUDGMENT PURSUANT RULE 60(b)(6), FEDERAL RULES OF CIVIL PROCEDURE

**TO THE HONORABLE COURT:**

Post conviction review of capital prosecutions serves a "vital role in protecting constitutional rights."[1] To fulfill this vital role, the review must be full, fair, and meaningful. This motion requires resolution of two critical questions:  Should the sentences of death imposed in this case be enforced without Constitutionally adequate examination and review? Should this Court invoke its authority to vacate the Order[2] and Judgment[3] and reinstate the post conviction review process as "appropriate to accomplish justice?"[4]

---

[1]*Slack v. McDaniel*, 529 U.S. 473, 483 (2000).

[2]*Order*, filed 09/28/2012, Doc. 449.

[3]*Judgment*, filed 09/28/2012, Doc. 450.

[4]*Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 864 (1988), quoting *Klaprott v. United States,* 335 U.S. 601, 614-15 (1949).

The Federal Rules of Civil Procedure vest this Court with the authority to grant relief "from a final judgment, order, or proceeding" under certain enumerated circumstances[5] or "for any other reason that justifies relief."[6]  To qualify for relief under the subsection (6) "catchall" provision, the movant must demonstrate his case presents "extraordinary circumstances" meriting exercise of this authority to reopen a final judgment.[7]  Christopher Vialva submits his post conviction motion, filed pursuant Title 28, United States Code, Section 2255, was denied without receiving the plenary examination and disposition on the merits required by Due Process.  The failures of the District Court remained unredressed as a result of the patently flawed procedure employed by the Court of Appeals for the Fifth Circuit.  The procedural and substantive errors corrupted the review process.  These errors and the resulting denial of Due Process present extraordinary circumstances warranting this Court's exercise of authority.

The record reflects a summary denial by the same District Judge whose actions were the subject of multiple claims of error.  The District Judge's impairments during the trial and his continuing reluctance to acknowledge those impairments during post conviction are now a matter of public record.  Judge Smith's apparent refusal or inability to acknowledge the severity of those impairments undermine all confidence in his review of this case.  The Federal Rules of Criminal Procedure dictated the filing of the post conviction motion before

---

[5]Rule 60(b)(1)-(5), Fed. R. Civ. P.

[6]Rule 60(b)(6), Fed. R. Civ. P..

[7]See *Ackermann v. United States*, 340 U.S. 193, 199 (1950).

the same judicial officer who presided over the trial.  It was incumbent on Judge Smith to recuse when the legality of his actions required review.  Judge Smith's failure to recuse meant he was the sole arbiter of his own errors.  No objective judicial officer conducted a substantive review of Mr. Vialva's claims.  The Court of Appeals for the Fifth Circuit repeated its erroneous construction of the certificate of appealablity standard to avoid appropriate review.  There can be no confidence in the outcome of the trial or the post conviction proceedings in this case.

The combined errors at the District Court and the Fifth Circuit denied Christopher Vialva the "one fair shot at habeas review that Congress intended that [the movant] have."[8] The Supreme Court reaffirmed the error of the Fifth Circuit's approach and rejected the application of procedural rules in a manner that served only to deny meaningful review of potentially meritorious claims presented in capital post conviction.[9]  The Supreme Court's reaffirmation of the necessity of substantive review in capital cases makes imperative this Court's exercise of the jurisdiction conferred by Rule 60(b)(6).

**THE DENIAL OF CONSTITUTIONALLY ADEQUATE REVIEW DOCUMENTED IN THE PROCEDURAL HISTORY.**

On June 14, 2004, Christopher Vialva invoked the jurisdiction of the District Court pursuant Title 28, United States Code, Section 2255.  Mr. Vialva's initial motion enumerated

---

[8]*Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005) (Stevens, J., dissenting in part).

[9]See *Buck v. Davis*, ___ U.S. ___, 137 S.Ct. 759, 767 (2017).

eleven grounds for relief, accompanied by the evidence he was able to marshal.[10]  After the

2255 Motion was filed, but shortly after the Supreme Court's decision in *Roper v. Simmons,*[11]

Mr. Vialva sought leave to include a twelfth ground for relief based on his mental age at the

time of the offense.[12]  Relying principally on procedural arguments, the United States did not

submit evidence either refuting Mr. Vialva's factual assertions or assailing the declarations

submitted in support of his claims.[13]

The District Court allowed Mr. Vialva to include his twelfth ground, but denied relief

without a hearing on all grounds.[14]  All other motions, including Mr. Vialva's requests to

conduct discovery, were  denied.[15]  Further, the Court found, "*sua sponte,* that a certificate

of appealability should not issue, as Movant has failed to make a substantial showing of the

---

[10]*Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant Title 28, United States Code, Section 2255 and Brief in Support* [hereinafter, 2255 Motion], filed 06/14/2004, Doc. 372; *Volume I, Appendix of Exhibits*, filed 06/14/2004, Doc. 373; *Volume II, Appendix of Exhibits*, filed 06/14/2004, Doc. 374.  *N.B.:* The post conviction pleadings were filed  prior to the initiation of ECF in this District.  Relevant portions of the pleadings will be filed in an Appendix and referenced by sequential number [Appx.].

[11]543 U.S. 551, 125 S. Ct. 1183 (2005).

[12]*Motion for Leave to Amend Motion to Vacate and Brief in Support*, filed 05/09/2005, Doc. 429.

[13]*Response by United States to Motion to Vacate*, filed 12/08/2004, Doc. 417.

[14]*Order*, Doc. 449 at 62-63.

[15]*Order*, Doc. 449 at 63.

denial of a constitutional right."[16] The Order did not cite countervailing evidence nor did it refute Mr. Vialva's factual assertions regarding the decisional errors of the District Court. These omissions are not surprising in light of the record. Mr. Vialva's motions requesting reconsideration of the judgment[17] and reconsideration of the denial of his requests seeking additional development of the facts[18] were similarly denied without a hearing and without substantive analysis.[19]

The Fifth Circuit ignored, once again, the correct standard elucidated by the Supreme Court and narrowed the scope of briefing solely to the question of whether a certificate of appealability should be granted on any issue. Despite the truncated briefing, the Fifth Circuit issued a published opinion denying Mr. Vialva a certificate of appeal based on its assessment his claims were meritless.[20] These conclusions defy justification.

The post conviction record before the District Court was replete with unrefuted evidence substantiating Christopher Vialva's claims for relief. Even if a dispute of fact could have been gleaned from the pleadings, an evidentiary hearing would have afforded the parties an opportunity to present evidence to assist resolution of such dispute. Instead, the District

---

[16]*Order*, Doc. 449 at 63.

[17]*Motion to Alter or Amend Judgment and Brief in Support*, filed 10/26/2012, Doc. 454.

[18]*Motion to Reconsider Denial of Motion for Discovery and of Motion for Evidentiary Hearing and Brief in Support*, filed 10/26/2012, Doc. 455.

[19]*Order*, filed 02/08/2013, Doc. 473.

[20]*United States v. Bernard*, 762 F.3d 467 (5th Cir. 2014).

Court's Order consisted of a review of the trial record, a recapitulation of the issues, and bald conclusions that claims were either without merit or, disingenuously, insufficiently supported by facts. The Fifth Circuit's perpetuation of its defective process meant the District Court's errors eluded appellate review. The necessity of substantively meaningful review of capital sentences is beyond legitimate argument. When that process demonstrably fails, as it did in this case, it is incumbent on the Court to exercise the authority conferred by Rule 60(b)(6). Any doubt on this point is resolved by the Supreme Court's recent reaffirmation of post conviction review as a fundamental safeguard of the Constitution.

### THE SUPREME COURT'S CONSTRUCTION AND ENFORCEMENT OF SUBSTANTIVE POST CONVICTION REVIEW.

The Fifth Circuit's disposition of Mr. Vialva's capital post conviction application pursuant Title 28, United States Code, Section 2255 is procedurally indistinguishable from its resolution of Duane Buck's appeal from the denial of his capital post conviction petition filed pursuant Title 28, United States Code, Section 2254.[21] In both instances, the Fifth Circuit conflated the standard for obtaining a certificate of appealability with the standard for prevailing on the merits. In both instances, a petitioner in a death penalty case was denied a full hearing on potentially meritorious claims concerning the Constitutionality of his conviction. The Supreme Court's analysis and disposition of the error in Mr. Buck's case

---

[21]See *Buck v. Stephens*, No. 14–70030, 630 Fed.Appx. 251, 253-4 (5th Cir., Nov. 6, 2015) (Dennis, J., dissenting) (citations omitted) (unpublished).

illuminate the essential requirement of meaningful post conviction review in capital cases and why its absence in this case merits relief through Rule 60(b).

The Texas jury that found Duane Buck guilty of capital murder was allowed to sentence him to death only if it found he was likely to commit acts of violence in the future. Trial counsel called the court-appointed psychologist, Dr. Walter Quijano, who testified Mr. Buck "probably would not engage in violent conduct" but also identified:

> . . . one of the factors pertinent in assessing a person's propensity for violence was his race, and that Buck was statistically more likely to act violently because he is black. [22]

The jury returned a verdict of death after concluding Mr. Buck presented a risk of future violence.

Mr. Buck's post conviction counsel failed to raise a claim of ineffective assistance based on trial counsel's presentation of Dr. Quijano's testimony. The Texas Court of Criminal Appeals dismissed Mr. Buck's second post conviction application, in which he attempted to raise his ineffective assistance of counsel claim, as an abuse of the writ.[23] Mr. Buck pursued relief through *habeas corpus* filed pursuant Title 28, United States Code, Section 2254, and argued enforcing the procedural default on his ineffective assistance of counsel claim would result in a miscarriage of justice. The District Court concluded the

---

[22]*Buck v. Davis*, 137 S.Ct. at 767.

[23]*Ex parte Buck*, Nos. 57,004–01, 57,004–02 (Tex.Crim.App., Oct. 15, 2003) (*per curiam*).

ineffective assistance of counsel claim was unreviewable.[24] Consistent with controlling authority,[25] the Fifth Circuit affirmed denial of Mr. Buck's petition.[26]  Subsequently, the Supreme Court narrowed the absolute rule expressed in *Coleman* and recognized specific circumstances that might provide "cause for procedural default" when a State limits the adjudication of ineffective assistance of counsel claims to collateral review.[27]

While Mr. Buck's third state *habeas* was pending, the Supreme Court held the post conviction system in Texas denied defendants a "meaningful opportunity" to pursue ineffective assistance of counsel claims on direct appeal and extended the rule in *Martinez.*[28] The State court again denied relief.[29]  Mr. Buck returned to federal court and filed a motion pursuant Rule 60(b) seeking reconsideration of the ineffective assistance of counsel claim presented in his Section 2254 petition.  Relying on *Martinez* and *Trevino*, Mr. Buck argued

---

[24]*Buck v. Dretke*, S.D. Texas, Houston Division, H–04–3965, 2006 WL 8411481 at *8 (July 24, 2006) (unpublished).

[25]*Coleman v. Thompson*, 501 U.S. 722, 752–753 (1991) (attorney's failure to raise an ineffective assistance claim during state postconviction review does not constitute cause to excuse procedural bar).

[26]*Buck v. Thaler*, No. 06-70035, 345 Fed.Appx. 923, 929 (5th Cir., Sept. 25, 2009) (unpublished) (". . . we conclude that Buck is procedurally barred from seeking a COA on the issue of the prosecution's exploring of Dr. Quijano's testimony on race as a factor in the future-dangerousness calculus.").

[27]*Martinez v. Ryan*, 566 U.S. 1, 9 (2012).

[28]*Trevino v. Thaler*, 569 U.S. ___, 133 S.Ct. 1911, 1921 (2013).

[29]*Ex parte Buck*, 418 S.W.3d 98 (Tex.Crim.App. 2013) (per curiam) (Alcala, J., dissenting)*, cert. denied sub nom. Buck v. Texas,* ___ U.S.___, 134 S.Ct. 2663 (2014).

the same procedural default would not bar his claim if it were brought in federal court for the first time in 2013 and this fact constituted "extraordinary circumstances" warranting reconsideration of his petition.

A three Judge panel of the Fifth Circuit denied Mr. Buck's application for a certificate of appealability and concluded he had "not made out even a minimal showing that his case is exceptional."[30]  Dissenting from the Circuit's denial of rehearing *en banc*, two Judges noted the decision to deny a certificate of appealablity:

> … perhaps unintentionally, followed that prohibited side-stepping process by justifying its denial of a COA based on its adjudication of the actual merits. This is not the first time that a panel of this court has flouted *Miller–El*'s[31] clear command when denying a COA: our court's "troubling" habit of evaluating the merits of petitioners' claims has been noted by three Supreme Court justices.[32]

The analytical error noted by the dissent, coupled with the misconstruction of Mr. Buck's substantive issue, were the bases for the Supreme Court's grant of *certiorari* and its reversal of the Fifth Circuit.[33]

It is evident the extraordinary evolution of Duane Buck's case through multiple stages of State and Federal review factored into the Supreme Court's analysis of his potentially

---

[30]*Buck v. Stephens*, No. 14–70030, 623 Fed.Appx. 668, 672 (5th Cir., Aug. 20, 2015) (unpublished).

[31]*Miller–El v. Cockrell*, 537 U.S. 322 (2003).

[32]*Buck v. Stephens*, No. 14–70030, 630 Fed.Appx. 251, 252 (5th Cir., Nov. 6, 2015) (Dennis, J., dissenting) (citations omitted).

[33]*Buck v. Davis*, 137 S.Ct. at 774.

meritorious claim.[34]  It is equally clear the Supreme Court reaffirmed both the appropriate standard governing an application for certificate of appealability and the Fifth Circuit's persistent misapplication of that standard.[35]  The Supreme Court also noted the scope of the "catchall category," subparagraph (b)(6) of Rule 60, which authorizes a court to "reopen a judgment for 'any other reason that justifies relief."[36]  While relief may be granted pursuant Rule 60(b)(6) only in "extraordinary circumstances,"[37] the Court held:

> [i]n determining whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." [38]

*Buck* provides a benchmark for determining "extraordinary circumstances" in the context of a death sentence imposed at the conclusion of a flawed process that, through dubious application of procedural rules, eluded subsequent judicial review.  Further, *Buck* reaffirms the necessity of judicial review of potentially meritorious issues as an integral part of Due Process and reaffirms the correct standard for measuring "potentially meritorious" claims. Applying the correct standard supports granting Mr. Vialva relief pursuant Rule 60(b)(6).

---

[34]*Buck v. Davis*, 137 S.Ct. at 778.

[35]*Id.* at 774.

[36]*Buck v. Davis*, 137 S.Ct. at 777.

[37]*Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

[38]*Buck v. Davis*, 137 S.Ct. at 778, citing *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. at 863–864.

**THE *BUCK* ANALYSIS APPLIES IN THIS CASE AND COMPELS REINSTATEMENT OF THE POST CONVICTION PROCESS.**

Mr. Vialva presented argument, authority, and factual support substantiating his claims for relief. Mr. Vialva challenged actions of the District Judge that prejudiced the Constitutional rights secured to him by the Fifth, Sixth, and Eighth Amendments.[39] The provisions of Section 2255 required Mr. Vialva to submit his motion to the court in which the trial was conducted. Even though the Motion cited specific actions of the District Judge as grounds for relief, Judge Smith did not recuse. Rather, the same District Judge who presided over the trial, and whose decisions required critical scrutiny, denied relief on a record that merited either granting relief on the unrebutted facts or a full evidentiary hearing after allowing discovery. In the same order, Judge Smith denied Mr. Vialva a certificate of appealablity on every issue, forcing him to request permission from the Fifth Circuit to pursue an appeal on the merits.

Mr. Vialva sought a certificate of appealability on seven Constitutional issues:

1.      The district court's disposition of Christopher Vialva's 2255 Motion, without permitting him to conduct discovery and without conducting an evidentiary hearing, denied him due process.

2.      The attorney appointed as "learned counsel" had a conflict of interest that resulted in the denial of Christopher Vialva's Sixth Amendment right to effective assistance of counsel. Mr. Vialva did not knowingly and voluntarily waive the conflict;

---

[39]*E.g., 2255 Motion*, Doc. 372, Ground I (failure to comply with Criminal Justice Act) (Appx. 1); Ground II (conflicted "lead counsel") (Appx. 2); Ground IV (inadequate funding at first stage, IAC) (Appx. 3); Ground VI (IAC, requesting severance of penalty phase) (Appx. 4); and Ground VII (inadequate funding at second stage, IAC) (Appx. 5).

3.      Mr. Vialva was deprived of his Fifth Amendment right to due process and a fair trial by the United States's failure to disclose material exculpatory evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963);

4.      Mr. Vialva was denied his Sixth Amendment right to effective assistance of counsel during the guilt phase of his capital trial;

5.      Mr. Vialva was denied his Sixth Amendment right to effective assistance of counsel during the penalty phase of his capital trial;

6.      Cumulative errors deprived Mr. Vialva of his Constitutional rights to due process and a fair trial; and

7.      The execution of Christopher Vialva will violate the Eighth Amendment because his mental age and moral culpability at the time of the offense were indistinguishable from those of a juvenile.[40]

The Fifth Circuit applied the same flawed process to deny Mr. Vialva a certificate of appealability. The Supreme Court's unequivocal rejection of the Fifth Circuit's continued misapplication of an established legal standard is one "extraordinary circumstance" warranting relief pursuant Rule 60(b)(6). Mr. Vialva's application for a certificate of appealability focused on seven of the most significant errors that both undermined the integrity of the judicial proceedings and corrupted confidence in the outcome of those proceedings. The merits of these issues remain unaddressed through no failure or fault of Christopher Vialva.

---

[40]*United States v. Vialva*, Fifth Circuit No. 13-70016, *Movant, Christopher Vialva's Brief in Support of Certificate of Appealability,* filed 08/28/2013, Doc. 00512356811 at 14-15.

**MERITORIOUS CLAIMS WARRANTING SUBSTANTIVE REVIEW AND RELIEF.**

The violation of Christopher Vialva's Due Process rights began with Judge Smith's failure to follow the procedures for appointment of counsel mandated by statute[41] and by Judicial Conference rule.[42]  Mr. Vialva submitted unrebutted evidence that neither lawyer would have been recommended as qualified counsel if Judge Smith would have complied with the rules governing appointment of counsel in capital cases.[43]

The deprivation of Mr. Vialva's Sixth Amendment rights was compounded by the fact Dwight Goains, the attorney appointed as "learned counsel," accepted the case while pursuing employment with the same office that was prosecuting Mr. Vialva.  At a hearing conducted the last business day before trial began, Mr. Goains stated:

> . . . as this Court is well aware, Your Honor, for about the last eight or ten years I've been trying to apply to be an Assistant United States Attorney. Your Honor, several months ago I applied and it appears, at this time, that there's two positions open in Del Rio and one in Pecos.  It also appear [sic], your Honor, that there's more than an excellent chance I may receive a [sic] offer for one of those positions as Assistant U.S. Attorney.[44]

Without appointing independent counsel to confer with Christopher Vialva, Judge Smith permitted both the conflicted defense counsel and the prosecutor to question him.  Judge

---

[41]18 U.S.C. §3005 (Pub.L. 103-322, Title VI, §60026, 108 Stat. 1982, eff.  Sept. 13, 1994).

[42]Volume VII, Appendix I, *Guide to Judiciary Policies and Procedures* (1999).

[43] *Appendix I*, Doc. 373 at Exhibit I-A (Lucien Campbell Affidavit) (Appx. 6); and Exhibit I-B (Richard Burr Affidavit) (Appx. 7).

[44]*Appendix I*, Doc. 373 at Exhibit II-B at 3, *ll*. 8-15 (Tr. 05/12/2000) (Appx. 8).

13

Smith told Mr. Vialva if he wanted a new lawyer, "I would certainly consider that," and cautioned he "couldn't come back and say, 'Well, I didn't get a fair trial, because Mr. Goains applied for a job with the U.S. Attorney's Office."[45]   Judge Smith's comments were unaccompanied by any assurance substitute counsel would be given adequate time to prepare for the scheduled trial.  This error was demonstrably consequential.

Mr. Vialva submitted evidence through an affidavit of Laurence Fox, a respected legal ethicist.  Mr. Fox opined this conflict was profound[46] and unwaivable.[47]  Mr. Fox concluded any purported waiver by Mr. Vialva was unknowing and involuntary.[48]  Neither Mr. Fox's qualifications nor his opinions were rebutted by the United States.

Mr. Vialva presented substantive argument, supported by the available evidence, documenting multiple instances of ineffective assistance of counsel that prejudiced his right to a fair trial at both stages of the capital prosecution.[49]  Mr. Vialva sought leave to develop additional facts through discovery and an evidentiary hearing.[50]  Among the facts Mr. Vialva

---

[45]*Appendix I*, Doc. 373 at Exhibit II-B at 6, *ll*. 2-3; 7-9 (Tr. 05/12/2000) (Appx. 8).

[46]*Appendix I*, Doc. 373 at Exhibit II-A at 4-6 (Appx. 9).

[47]*Appendix I*, Doc. 373 at Exhibit II-A at 7-13 (Appx. 9).

[48]*Appendix I*, Doc. 373 at Exhibit II-A at 13-17 (Appx. 9).

[49]*2255 Motion*, Doc. 372, Ground IV (Appx. 3), *Appendix I*, Doc. 373, Exhibits IV-B through IV-M (Appx. 10-21); *2255 Motion*, Doc. 372, Ground VI (Appx. 4), *Appendix II*, Doc. 374 at Exhibits VI-A (Appx. 22) and VI-B (Appx. 23); *2255 Motion*, Doc. 372, Ground VII (Appx. 5), *Appendix II*, Doc. 374 at Exhibits VII-A through VII-Q (Appx. 24-40).

[50]*Motion to Conduct Discovery*, filed 09/20/2004, Doc. 404; *Combined Motion for Discovery*, filed 02/08/2005, Doc. 425.

sought to develop were the details regarding the government's failure to disclose exculpatory evidence in compliance with *Brady v, Maryland*, 373 U.S. 83 (1963), and its progeny. The government vigorously resisted all efforts at discovery,[51] but offered no evidence to rebut Mr. Vialva's factual assertions or to refute the apparent *Brady* violation.

Counsel's individual failures compounded on each other. Judge Smith afforded counsel less than one year to prepare both a first and second stage defense. Learned counsel failed to secure funding for necessary experts. Critical second stage work halted when the statutory limit of $7,500.00 was exhausted, forcing the least experienced attorney to pursue a mandamus action. Judge Smith granted a portion of the funding literally minutes before jury selection began. Despite the fact critical second stage work was unfinished, counsel proceeded to trial.

The United States told the jury its thorough investigation proved Mr. Vialva was both the leader of a street gang and the person who shot the Bagleys. In fact, no forensic evidence established who shot the victims.[52] Evidence that might have been collected was lost. The government's proof hinged on the testimony of two accomplices whose conflicting stories were intentionally not memorialized by law enforcement.[53] Despite these patent

---

[51]*Supplement to Motion for Discovery and Brief in Support,* filed 11/12/2004, Doc. 410 (initially successful FOIA request reversed on the decision of the prosecutor and the case agent who directed the Army CID's interviews of the juveniles whose testimony was critical to the government's case) (Appx. 41).

[52]See *Appendix I*, Doc. 373 at Exhibits IV-F and IV-K (Appx. 14 and 19).

[53]*Appendix I*, Doc. 373 at Exhibit III-H (Appx. 42)

vulnerabilities, counsel failed either to marshal a coherent defense or to subject the United States's first stage case to adversarial testing.

Learned counsel Dwight Goains abdicated all responsibility for the second stage, so the case for Mr. Vialva's life was presented by an attorney who admitted he had never tried a death penalty case. From an initial records collection, a mitigation specialist was able to alert defense counsel to the necessity of a neuropsychological examination of Mr. Vialva. As a direct result of the lapse in funding, critical work, including the mitigation specialist's complete interview of Mr. Vialva, was never finished. The complete absence of a coherent mitigation strategy is apparent from the record.

The case that could have been presented to support a life sentence is contained in Mr. Vialva's 2255 Motion and supporting evidence.[54] The mitigation specialist was correct. At the time of the offense, Mr. Vialva was suffering cognitive impairments that negatively affected his behavior. The impairments are capable of amelioration, a fact demonstrated by Mr. Vialva during his present incarceration.[55] Through counsel's global failures, critical evidence supporting a life sentence was never considered by the jury. Instead, the jury was presented with the specter of Christopher Vialva's "future dangerousness" as a factor

[54]*2255 Motion*, Doc. 372, Ground VII (Appx. 5), *Appendix II*, Doc. 374 at Exhibits VII-A through VII-D (Appx. 24-27).

[55]*2255 Motion*, Doc. 372, Ground VII (Appx. 5), *Appendix II*, Doc. 374 at Exhibits VII-C and VII-N (Appx. 26 and 37).

supporting a sentence of death.  The testimony on this issue was introduced through an ill-prepared defense expert[56] followed by the United States's expert, Dr. Richard Coons.[57]

The evidence presented through the post conviction process supports the conclusion Mr. Vialva, who was barely nineteen years old, was functioning on the intellectual and emotional level of a juvenile at the time of the offense.  The Eighth Amendment issue presented by the imposition and enforcement of the death penalty in this case[58] never received substantive consideration through an evidentiary hearing or other proceeding.  Subsequent decisions have reinforced the scope of the Eighth Amendment's protection against the imposition of disproportionate punishment on those who, as a result of youth, lack cognitive and emotional maturity.[59]  Concomitantly, neuroscience has documented the link between biological development and cognition that continues well past the legal threshold of "adulthood" at age eighteen.  The Eighth Amendment implications of imposing the death penalty for conduct committed before the age of twenty-one has been cited as the basis for

---

[56]*2255 Motion*, Doc. 372, Ground V (Appx. 43);  and Ground VII (Appx. 5), §D, at pp. 125-138.

[57]Ground VII (Appx. 5), §D at pp. 138-141.

[58]*Motion for Leave to Amend and Brief in Support*, filed 05/09/2005, Doc. 429.

[59]See *Graham v. Florida*, 560 U.S. 48, 82 (2010) (holding the Eighth Amendment "prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide;" and requiring the State to provide the offender "with some realistic opportunity to obtain release before the end of that term."); and *Miller v. Alabama*, 567 U.S. 460, 465 (2012) ("We therefore hold that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'").

declaring a State statute unconstitutional.[60]  In light of the United States's enforcement of the death penalty on defendants under the age of twenty-one,[61] Mr. Vialva's twelfth claim for relief presented a potentially dispositive issue that warranted a hearing and disposition on the merits.

Judge Smith effected the summary disposition of this case without permitting Mr. Vialva a viable means of obtaining appellate review.  Subsequent events have shed light on the context in which Judge Smith was presiding over this trial and in which he was being asked to critically review his own decision making processes during that time.[62]  It is evident Judge Smith's impairments, including his resistence to addressing the impact of his impairments, persisted until his retirement last year.

The nature of the issues presented by Mr. Vialva raised more than serious questions concerning Judge Smith's application of clear statutory mandates, Judicial Conference directives, ethical rules, and case law.  Faced with a record demonstrating these errors, Judge

---

[60]*Commonwealth of Kentucky v. Travis Bredhold*, Fayetteville Circuit Court, Seventh Division, Case No. 14-CR-161, *Order Declaring Kentucky's Death Penalty Statute as Unconstitutional,* filed 08/01/2017 (Appx. 44).

[61]Based on publicly available information, it appears the United States sought and obtained the death penalty for 16 men who were 21 years old or younger at the time of the offense and for 9 men who were more than 21 but less than 25 years old at the time of the offense.  Twenty-five years old is now recognized as the average chronological age at which full development of the brain and corresponding executive function occur.  See *Order Declaring Kentucky's Death Penalty Statute as Unconstitutional,* at 6-7 (Appx. 44).

[62]*Judicial Council of the Fifth Circuit*, Docket No. 05-14-90120, *Order of Reprimand and Summary of Reasons,* filed 12/04/2015;  *In Re Complaint of Ty Clevenger*, Complaint No. 05-16-9004, *Order*, filed 09/29/2016 (Appx. 45).

Smith's continued exercise of authority of the case presents a "probability of actual bias . . . too high to be constitutionally tolerable."[63]  *Buck* is a clear indication that the type of error demonstrated in Mr. Vialva's case warrants full consideration on the merits.  The Fifth Circuit has recognized as much following the Supreme Court's decision in *Buck*.[64]  There can be no confidence in a process that permits the result that occurred in this case.

**CONCLUSION AND RELIEF REQUESTED.**

This Section 2255 proceeding requires an impartial examination of the integrity of the judicial process, including the Judge's exercise of authority.  A judicial officer suffering from impaired judgment is in no position to evaluate his own actions.  Confronted with an obvious miscarriage of justice, the Fifth Circuit abrogated its role in a manner that blatantly contravened Supreme Court authority.  Counsel for Christopher Vialva respectfully request this Court, consistent with *Buck*, exercise the authority conferred by Rule 60(b)(6), Federal Rules of Civil Procedure, vacate the Order and Judgment entered in this case, and docket this matter for a hearing to determine the course of further proceedings.

---

[63]*Rippo v. Baker*, 580 U.S. __, 2017 WL 855913 (U.S., March 6, 2017) (*per curiam*) (quoting  *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

[64]See *Coble v. Davis*, No. 15-70037, ___ Fed.Appx. ___, 2017 WL 1040595 at *11 (5th Cir., March 16, 2017) (*per curiam*); and *Buck v. Davis*, No. 14-79939, Doc. 00513951562 (5th Cir. Apr. 13, 2017) (COA granted, judgment vacated, remanded with directions to grant the writ unless the State of Texas proceeds with a new sentencing trial or accedes to a life sentence).

Respectfully submitted,

*s/Susan M. Otto*

SUSAN M. OTTO   Oklahoma Bar # 6818
Federal Public Defender
MICHAEL LIEBERMAN Oklahoma Bar #
Assistant Federal Public Defender
Western District of Oklahoma
215 Dean A. McGee   Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930
Electronic mail: Susan_Otto@fd.org

JARED TYLER
Texas Bar Association #24042073
Tyler Law Firm, PLLC
P.O. Box 764
Houston, Texas 77001
Telephone: 713 861-4004
Electronic Mail: jptyler@tylerlawfirm.org.
COUNSEL FOR DEFENDANT/PETITIONER
CHRISTOPHER ANDRE VIALVA

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of October, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Mark Frazier
Assistant United States Attorney
800 Franklin, Suite 280
Waco, Texas 76701

Rob Owen
Bluhm Legal Clinic
Northwestern Univ School of Law
375 East Chicago Ave.
Chicago, IL 60611

David K. Sergi
Anthony Fusco
Sergi & Associates, P.C.
329 S. Guadalupe
San Marcos, TX 78666

John Carpenter
Assist. Federal Public Defender
1331 Broadway, Ste. 400
Tacoma, WA 98402

*s/Susan M. Otto*
SUSAN M. OTTO