# EXHIBIT 1

RECEIVED

MAY 0 9 2005

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | **CRIMINAL NO. W-99-CR-70(1)** |
| | § | *DEATH PENALTY CASE* |
| CHRISTOPHER ANDRE VIALVA. | § | |

### *AMENDED*

### MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
### BY A PERSON IN FEDERAL CUSTODY PURSUANT
### TITLE 28, UNITED STATES CODE, SECTION 2255
### AND BRIEF IN SUPPORT

**TO THE HONORABLE COURT:**

Christopher Vialva, by and through his counsel, reaffirms and reasserts all of the facts, arguments, and authorities presented in his initial *Motion to Vacate, Set Aside, or Correct Sentence By A Person In Federal Custody Pursuant Title 28, United States Code, Section 2255 and Brief in Support* [hereinafter, *§ 2255 Motion*] timely filed June 14, 2004, as if fully set forth herein. Doc. 372. Further, Mr. Vialva reaffirms and adopts all of the factual matters presented in the Appendices to the *§ 2255 Motion*, as if fully set forth in appendices to this *Amended Motion. See* Doc. 373, Appendix I; Doc. 374, Appendix II. Mr. Vialva's *§ 2255 Motion* is amended by adding, in addition to all of the facts, arguments, and authorities presented in the previously filed submission, the following additional Ground supporting relief.

*ATTACHMENT A*

## ADDITIONAL GROUND XII

**THE ENFORCEMENT OF THE DEATH PENALTY ON A PERSON WHO, BECAUSE OF HIS MENTAL AGE, LACKS ADULT MORAL CULPABILITY, VIOLATES THE EIGHTH AMENDMENT'S PROHIBITION AGAINST THE IMPOSITION OF CRUEL AND UNUSUAL PUNISHMENT.**

### A.    Procedural Posture of this Claim

Trial counsel challenged the Constitutionality of applying the death penalty to Christopher Vialva. Trial counsel raised a general objection to the imposition of the death penalty in a pretrial motion to strike the United States's notice of its intention to seek the death penalty. Trial counsel asserted: "The death penalty is, in all circumstances, cruel and unusual punishment, therefore the statute is unconstitutional." Doc. 167, p. 2, ¶5. Mr. Vialva's youth was presented as a mitigating factor during the penalty phase. Trial counsel requested a jury instruction that included Mr. Vialva's age as mitigating factor. Doc. 265, p. 21 ("(5) CHRISTOPHER VIALVA was only nineteen at the time of the offense."). The jury unanimously rejected the mitigating factor, "Christopher Vialva was nineteen years old at the time of the offense." Doc. 286.

On appeal, counsel argued the imposition of the death penalty violated the Eighth Amendment "because the jury arbitrarily found that he [Mr. Vialva] did not establish the existence of the mitigating factor that he was 19 years old when he committed capital murder." *United States v. Vialva*, Fifth Circuit Case No. 00-50523, *Appellant's Brief*, Issue 10. In rejecting the argument, the Fifth Circuit reiterated its prior expression of "doubt regarding its authority to review jury findings relating to mitigating factors." *United States v. Bernard*, 299 F.3d 467, 485 (5th Cir. 2002).

2

In Mr. Vialva's petition to the Supreme Court for *certiorari*, he argued the Eighth Amendment's prohibition against the arbitrary and capricious infliction of capital punishment was violated when the verdict form and jury instructions permitted the jurors to "refuse to recognize an undisputed historical fact about the defendant's character and background or crime that he preferred as a mitigating circumstance." *Vialva v. United States*, U.S. S. Ct. Cause No. 02-8448, *Petition for Writ of Certiorari to the United States Court of Appeals for the Fifth Circuit*. The Supreme Court denied Mr. Vialva's petition. *Vialva v. United States*, 539 U.S. 928 (2003).

As examined in detail in Ground IV, trial counsel failed to recognize Mr. Vialva's mental age was a factor that should have been presented to jury on the issue of his ability to form requisite intent, as well as to challenge the government's theory that Mr. Vialva was the "leader" of the group and thus responsible for the homicides. Further, as examined in Ground VII, trial counsel failed to present readily available evidence that would have explained why Mr. Vialva's mental age was a mitigating factor. The correlative to these instances of ineffective assistance is that trial counsel failed to raise a specific Eighth Amendment challenge to the imposition of the death penalty based on the mental age of the accused.

Full presentation of this claim required the extra-record fact development conducted during these post conviction proceedings. Moreover, the Supreme Court's recent decision in *Roper v. Simmons*, 125 S. Ct. 1183 (2005), provides direct support for the application of Eighth Amendment proportionality review. This issue is properly before this Court for consideration. *See, e.g., Moreno v. Dretke*, No. CIV.SA-00-CA-1058-XR, 2005 WL 745516 at *25 (W.D. Tex. Mar. 17, 2005).

3

## B.    Facts

Dr. Daneen Milam conducted a review of Mr. Vialva's childhood medical, educational, and mental health records. Doc. 374, Declaration of Daneen Milam, Exhibit VII-C ¶¶ 3, 4. Dr. Milam also conducted neuropsychological testing and an interview of Mr. Vialva incident to her evaluation. *Id.* at ¶ 17. Dr. Milam's inquiry included interviews with Mr. Vialva's mother, stepfather, maternal aunts, and several of his peers at the time of the offense. *Id.* at ¶ 4. Dr. Milam's inquiry included a review of the sequence of the events that led to the homicides. *Id.* at ¶ 25. Dr. Milam offered the following opinion, based on all of the information she reviewed and her evaluation of Mr. Vialva:

> There is a growing body of knowledge that indicates the average child does not become a fully functioning mature adult into the early twenties. See Exhibit 3 to this declaration. Christopher, with all of his neuropsychological deficits, would have a high probability of being two to three years younger in brain development than his age peers. Therefore, he had less control than other adolescents and less ability to foresee consequences of actions. The conclusions that his neuropsychological deficits would cause him to behave even younger than his chronological age is corroborated by the comments of his male peers who describe him as "silly" "a follower" and a "clown." This is also consistent with his association during the crime with boys who are closer to his mental age rather than his chronological age. A review of the sequence of events of the crime are consistent with a poorly planned and executed event where these four boys were responding as children to unfolding and unplanned occurrences. Clearly, the neuropsychological evaluation of Christopher Vialva reveals an individual who was incapable of and responding to a rapidly changing situation. In addition, his poor ability to think and plan (a frontal lobe function) makes him particularly unsuited to control the situation throughout the day. When combined with a Bi-Polar nature and the consequences of a much younger mental status, Chris did not have the cognitive skills to control the situation; it spiraled out of his control.

*Id..* Mr. Vialva's nineteenth birthday, May 10, was forty-one days before the offense.

## C.    Argument and Authority

The factors noted by Dr. Milam and the conclusions she reached about Mr. Vialva's mental age and its consequences give rise to the same concerns that prompted the Supreme Court's decision

4

in *Simmons*. *Simmons* begins with the Eighth Amendment, followed immediately by the Court's reaffirmation of the principle it enunciated in *Atkins v. Virginia*, 536 U.S. 304 (2002):

> As the Court explained in *Atkins*, the Eighth Amendment guarantees individuals the right not to be subjected to excessive sanctions. The right flows from the basic "'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'"

*Id.* at 311 (quoting *Weems v. United States*, 217 U.S. 349 (1910)). *Simmons* enforced the principle of proportionality through its examination of the factors that make imposing a death sentence against a defendant who committed a capital crime while a juvenile under the age of eighteen. These factors ranged from common sense to social science to prevailing legal standards to international law. While Mr. Vialva is not categorically excluded from the death penalty by *Simmons*, the Supreme Court's reasoning and conclusion support an independent basis for relief.

The majority noted three broad areas distinguishing adults and juveniles. First, "as any parent and as the scientific and sociological studies" tended to confirm, juveniles lack maturity and have an underdeveloped sense of responsibility. "These qualities often result in impetuous and ill-considered actions and decisions." *Simmons*, 125 S. Ct. at 1195 (quoting *Johnson v. Texas*, 509 U.S. 350, 367 (1972)). The Court noted for that reason, legislatures impose limits restricting by age alone when a person may legally enter into contract, drive automobiles, purchase alcohol, vote, and marry. *Id.* Second, juveniles are "more vulnerable or more susceptible to negative influences and outside pressures, including peer pressure." *Id.* (citing *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982)). Third, the personality traits of a juvenile are not as well formed as those of an adult and so are "more transitory, less fixed." *Id.* These recognized differences ". . . render suspect any conclusion that a juvenile falls among the worst offenders." *Id.*

5

> The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of an irretrievably depraved character. From a moral standpoint, it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed.

*Simmons*, 125 S. Ct. at 1195-1196. The Court recognized the flaw in adopting a categorical rule based solely on age: "The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach." *Id.* at 1197. The Court's conclusion that the "Eighth and Fourteenth Amendments forbid the imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed" unequivocally rendered that distinct class of offenders ineligible for the death penalty. *Id.* at 1200. The conclusion leaves unresolved whether an offender who is eighteen years old, but still lacks sufficient mental development to exercise mature judgment, is deserving of the death penalty.

*Simmons* is dispositive of the Eighth Amendment's outer limits when applied to a group of defendants identified by the single, objectively verifiable criterion of chronological age. The same Eighth Amendment concerns apply to the group of defendants whose mental age is less than that of a fully functioning adult. As in *Atkins*, the evaluation of a young person's mental age requires consideration of the variables that impact directly on the individual's moral culpability. Like mental retardation, mental age is subject to proof through testing, expert evaluation, historical records, and current observation. Both Dr. Cunningham and Dr. Milam noted current medical studies documenting the course of human brain development. These studies provide objective evidence that "adulthood" is less a function of chronology than the synergy of organic components, giving rise to a penumbral group of defendants between the ages of eighteen and twenty-five whose cognitive

6

capacity and concomitant moral culpability are in doubt. While this group of defendants may be legally accountable for their actions, the imposition of the death penalty presents a distinct Eighth Amendment violation.

Analogous inquiries are conducted in a number of instances in which the Supreme Court, enforcing the Constitution, has established a "bright line" or similar standard which, if met, yields a presumptively valid result. Even if compliance with the standard appears to be facially valid, the defendant may test the underlying facts to determine Constitutionality of the process. For example, a confession obtained by the police after advising the arrestee of his rights pursuant *Miranda v. Arizona*, 384 U.S. 436 (1966), facially comports with the Fifth Amendment's prohibition against compelled self-incrimination. A statement taken from the arrestee is subject to judicial scrutiny to determine whether it was obtained in conformity with *Miranda* and, if not, whether suppression of the statement is warranted. *E.g., Thompson v. Keohane*, 516 U.S. 99, 113 (1995) (adopting "totality of circumstances" test to custodial determinations); *United States v. Planche*, 525 F.2d 899, 900 (5th Cir. 1976) (number of officers, length of interrogation, coupled with detention at place of business triggered *Miranda*); *United States v. Salinas*, 439 F.2d 376, 380 (5th Cir. 1971) (interrogation in strip search room triggered *Miranda*); *Harryman v. Estelle*, 616 F.2d 870, 872-873 (5th Cir. 1990) (pre-*Miranda* warning response to officer's question about white powder found in condom subject to suppression). Further, the ultimate question whether the statement was voluntary is subject to the jury's determination. *Jackson v. Denno*, 378 U.S. 368, 377 (1964). These successive steps secure the protection against compelled self-incrimination secured by the Fifth Amendment. The Eighth Amendment's prohibition against cruel and unusual punishment requires similar enforcement in this case.

7

**D. Conclusion**

Mr. Vialva is within a distinct class of offenders on whom the death penalty may not be imposed Constitutionally. At nineteen years old, with specific developmental deficits, Mr. Vialva lacked the cognitive skills of an adult. There can be no confidence in the jury's determination of Mr. Vialva's moral culpability under the circumstances of this case. The death penalty must be vacated and a new trial of the sentencing stage ordered.

Respectfully submitted,

_____

SUSAN M. OTTO  Oklahoma Bar No. 6818
Federal Public Defender Western District of Oklahoma
LISA S. McCALMONT
Texas Bar No. 24007629   Oklahoma Bar No. 17096
Assistant Federal Public Defender
Death Penalty Federal Habeas Corpus Division
215 Dean A. McGee, Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930 Telefacsimile: 405 609-5932
COUNSEL FOR DEFENDANT/MOVANT
CHRISTOPHER ANDRE VIALVA

## CERTIFICATE OF SERVICE

I certify on the      day of       2005, a true and correct copy of the foregoing *Amended Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant Title 28, United States Code, Section 2255 and Brief in Support* was  mailed, postage prepaid to: Mr. Mark Stelmach, Assistant United States Attorney, 816 Congress Avenue, Suite 1000, Austin, Texas 78701, Counsel for Respondent; and to Mr. Rob Owen, Law Offices of Owen & Rountree, L.L.P., P.O. Box 40428, Austin, Texas 78704; and Mr. Robert Gombiner, Assistant Federal Public Defender, 1111 Third Avenue  Suite 1100, Seattle, Washington 98101, Counsel for Brandon Bernard.

_____

SUSAN M. OTTO