```
 1                  UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF TEXAS
 2                         WACO DIVISION

 3   UNITED STATES OF AMERICA ) Docket No. WA 99-CR-070(1) ADA
                              )
 4   vs.                      ) Waco, Texas
                              )
 5   CHRISTOPHER ANDRE VIALVA ) September 3, 2020

 6

 7          TRANSCRIPT OF VIDEOCONFERENCE MOTION HEARING
              BEFORE THE HONORABLE ALAN D. ALBRIGHT

 8

 9   APPEARANCES:

10   For the United States:   Mr. Mark Frazier
                              Assistant U.S. Attorney
11                            800 Franklin Avenue, Suite 280
                              Waco, Texas 76701
12

13

14   For the Defendant:       Ms. Susan M. Otto
                              Assistant Federal Public Defender
15                            215 Dean A. McGee Avenue,
                              Suite 109
16                            Oklahoma City, Oklahoma 73102

17

18   Court Reporter:          Ms. Lily Iva Reznik, CRR, RMR
                              501 West 5th Street, Suite 4153
19                            Austin, Texas 78701
                              (512)391-8792
20

21

22

23

24

25   Proceedings reported by computerized stenography,
     transcript produced by computer-aided transcription.
```

1          THE COURT:  Suzanne, if you would call the case,

09:32:05  2  please.

09:32:05  3          THE CLERK:  Sure.

09:32:06  4          Motion hearing in Criminal Action 6:99-CR-70,

09:32:11  5  styled, U.S.A. vs. Christopher Andre Vialva.

09:32:15  6          THE COURT:  If I could hear announcements from

09:32:17  7  counsel first from whoever is going to be representing the

09:32:20  8  government, as I see, Mr. Frazier, I think.

09:32:25  9          MR. FRAZIER:  Yes, your Honor.

09:32:26  10          THE COURT:  And then, if I could hear from

09:32:28  11  whoever's going to be representing the defendant in this

09:32:31  12  case.

09:32:34  13          MS. OTTO:  Yes, your Honor.

09:32:34  14          Good morning.  Susan Otto from the Office of the

09:32:37  15  Federal Public Defender.

09:32:38  16          THE COURT:  Ms. Otto, where are you?

09:32:41  17          MS. OTTO:  Where am I, sir?

09:32:43  18          THE COURT:  Yes, ma'am.

09:32:45  19          MS. OTTO:  Yes.  I'm in Oklahoma City.

09:32:47  20          THE COURT:  Oh, very good.  I just wasn't sure

09:32:49  21  where y'all were located.

09:32:51  22          MS. OTTO:  Yes, sir.

09:32:51  23          THE COURT:  Okay.  Good morning to you.

09:32:53  24          Thank you for taking the time for this hearing.

09:32:57  25  And what I would like to do, this is my -- this is my

09:33:03  1   first death penalty case since I've been on the bench.
09:33:07  2   That being said, I worked on one of these in the 1980s.
09:33:15  3   In fact, my client was named Bernard and so -- which is
09:33:21  4   very interesting.  But I'm going to do my best today to
09:33:24  5   understand everything that you all are bringing up and get
09:33:26  6   through everything.
09:33:28  7           And I'm happy to hear, Ms. Otto, from you first,
09:33:32  8   if you'd generally like to say anything.  And I'd like to
09:33:35  9   hear from Mr. Frazier, if he'd like to say something.  But
09:33:39  10  what would help me the most in making sure that I protect
09:33:44  11  your client's rights is, I'd like to go through, one at a
09:33:49  12  time, whatever step for relief it is that you're asking me
09:33:52  13  for, you could explain why you think that you're entitled
09:33:56  14  to.
09:33:56  15          I've read everything.  I woke up last night
09:33:59  16  around 3:00 in the morning and thought about it.  So I'd
09:34:04  17  like to hear anything that you've -- the way I handle my
09:34:08  18  hearings is, you have -- you have whatever time you'd like
09:34:10  19  to have to make whatever arguments you'd like to have.  I
09:34:15  20  may interrupt you, at some point, just if I have something
09:34:17  21  that I think is important I want you to explain; but if I
09:34:20  22  do, I always want you to finish your thought later and
09:34:24  23  you'll have as much time.
09:34:26  24          Mr. Frazier obviously is going to have the same
09:34:29  25  opportunity.  But I want to make absolutely certain we go

09:34:32  1    through, make a good record, and that you have an

09:34:35  2    opportunity to raise with the Court every issue that you

09:34:38  3    think needs to be addressed on behalf of your client.

09:34:41  4              MS. OTTO:  Thank you, your Honor.  I appreciate

09:34:43  5    the opportunity for this hearing.

09:34:47  6              Are you able to hear me?

09:34:49  7              THE COURT:  Yes, ma'am.

09:34:50  8              MS. OTTO:  Okay.  Good.  Thank you.

09:34:51  9              I would like just to begin with the fact that

09:34:56  10   we're here because the Court in June of the year 2000

09:35:03  11   entered an order, entered its judgment, and very

09:35:06  12   specifically said how this case was going to proceed.  Mr.

09:35:11  13   Vialva, in fact, filed a notice of appeal, which activated

09:35:14  14   the portion of the judgment and placed a stay in effect,

09:35:19  15   and that stay is in effect until further order of the

09:35:23  16   Court following a mandate.

09:35:28  17             There has been no further order of the Court

09:35:32  18   lifting that stay.  The United States did not come to this

09:35:37  19   court requesting an order and judgment.  The government

09:35:40  20   never came back into this court requesting that the stay

09:35:43  21   be lifted.  Instead, the Attorney General of the United

09:35:48  22   States, through the warden at Terre Haute, Indiana,

09:35:53  23   provided Mr. Vialva with a letter that advised him that he

09:35:57  24   would be executed in 55 days from the date of the letter.

09:36:04  25             We have come to this court seeking an injunction,

09:36:07 1  seeking this Court's order enjoining the government from

09:36:11 2  conducting that execution because it is in violation of

09:36:16 3  the court order first; also, it's in violation of Texas

09:36:21 4  law and that Texas law is incorporated into this case by

09:36:27 5  the explicit provisions of the Federal Death Penalty Act.

09:36:32 6          I anticipate that the government is going to say

09:36:34 7  that the Attorney General under the regulations in 28

09:36:39 8  C.F.R., Section 26.4, has the authority to set the time

09:36:44 9  and date and place of the execution.  The Attorney General

09:36:49 10 may, indeed, have that authority, but that authority is

09:36:51 11 only derived through an order of the Court.  This is

09:36:58 12 standing practice.  But in this case, the United States

09:37:01 13 did not do that, and now we are faced with an execution

09:37:06 14 that violates Texas law because it did not give Mr. Vialva

09:37:11 15 the 91 days minimum that he would be entitled under Texas

09:37:16 16 law nor did it apply --

09:37:19 17          THE COURT:  Ms. Otto, let me ask you this.

09:37:22 18          MS. OTTO:  Yes, sir.

09:37:23 19          THE COURT:  I see -- but I could be wrong.  I'm

09:37:26 20 working through this.  Let me make -- but I see -- in my

09:37:32 21 mind, you've raised two issues.  One is, did the U.S. --

09:37:35 22 did the Attorney General err by setting -- forget the 90

09:37:41 23 days for a second.  But my predecessor court, Judge

09:37:48 24 Smith's stay order was in place, and therefore, forgetting

09:37:50 25 the 90 days for a second, the Attorney General violated,

09:37:56  1  in effect, my stay order, the Court's stay order.  Also --

09:38:03  2  then we get to the 90 days issue.

09:38:06  3          So focusing just on the stay -- and if I'm wrong

09:38:08  4  about this, let me know.  But what prevents me from

09:38:14  5  mooting the first prong?  I'm not dealing with the 90

09:38:18  6  days.  I get why that's important.  But if I simply say

09:38:25  7  I'm lifting the stay and then, we'll take it up whether or

09:38:29  8  not 90 days matters or not.

09:38:31  9          But doesn't my -- doesn't decision by me to lift

09:38:34  10  the stay moot your concern over that, the violation of the

09:38:39  11  court order?

09:38:41  12          MS. OTTO:  I would say, sir, that it doesn't

09:38:43  13  because the judgment that was entered by Judge Smith in

09:38:49  14  this case clearly says -- and I'm looking at page 2 of the

09:38:52  15  judgment, the section is entitled, Imprisonment.  It's the

09:38:59  16  second full paragraph.  If an appeal is taken from this

09:39:02  17  conviction and sentence, which it was, execution of the

09:39:05  18  sentence shall be stayed pending further order of this

09:39:07  19  court upon receipt of the mandate of the court of appeals.

09:39:12  20          There is a stay currently in place.  The United

09:39:17  21  States has not asked this court to lift that stay.  It has

09:39:22  22  not advised the Court in accordance with the requirements

09:39:27  23  under the Code of Federal Regulations and the requirements

09:39:32  24  of standing federal law that it's time for this court to

09:39:39  25  set an execution date.

09:39:40  1          Had the government done that, I would have had

09:39:44  2  the opportunity to come in, discuss this with the Court.

09:39:48  3  We could have discussed what timing was appropriate, and

09:39:52  4  what was sufficient.  Essentially what the government is

09:39:55  5  asking you to do is to overlook their violation of this

09:39:59  6  statute, their violation of the Court's order, and simply

09:40:04  7  say, okay, that doesn't matter, no matter why we're here,

09:40:07  8  we're here now.  Judge, just go ahead and lift the stay

09:40:10  9  and let's proceed.

09:40:12  10         The government has yet to ask this court to lift

09:40:16  11 the stay.  They have not recognized that a stay is in

09:40:20  12 place.  That's why we needed the injunction.  I think your

09:40:23  13 question is, what do I do now?  If we are at the moment

09:40:28  14 that you're going to say that what the government has done

09:40:31  15 up to this point is sufficient to invoke the jurisdiction

09:40:34  16 of the Court, to give the Court notice of its intention of

09:40:39  17 what to do and when it intends to do it, then we can move

09:40:42  18 on to timing.

09:40:43  19         But the government has not complied with any

09:40:46  20 portion of that.  It has not complied with Title 28 -- or

09:40:50  21 I'm sorry, 28 C.F.R., 26.2.  It has not advised the Court

09:40:54  22 of that.  It has not followed the statute.  The Court

09:41:00  23 obviously has the authority to lift this stay if it

09:41:02  24 chooses to do so as a matter of pure "do you have the

09:41:06  25 jurisdiction to do that."  I still believe that would be

09:41:09  1    an error under the law because the law is very specific on

09:41:12  2    this.

09:41:14  3         And the Federal Death Penalty Act, as we know, is

09:41:18  4    the subject of extensive litigation in other

09:41:22  5    jurisdictions.  It's the subject of litigation in the

09:41:25  6    Protocol cases in the D.C. Circuit.  And certainly the

09:41:28  7    last denial of cert in the Mitchell case, Justice

09:41:32  8    Sotomayor made it very clear that the Federal Death

09:41:36  9    Penalty Act was something that the Court was going to have

09:41:38  10   to construe at some point and is not a matter of just

09:41:41  11   paperwork or mere technicalities that the Attorney General

09:41:48  12   of the United States -- there's a little hand on my

09:41:53  13   screen.  Does that mean I'm being told to be quiet?

09:41:53  14        SPEAKER:  No.

09:41:58  15        MS. OTTO:  Oh, okay.  Just asking.  I see a hand

09:41:59  16   up.  I'm going, well, maybe they want me to shut up now.

09:42:05  17        It is not a matter of just mere paperwork.  This

09:42:08  18   is a matter of the Court's jurisdiction, it's a matter of

09:42:11  19   process, and it's a matter of how does the Federal Death

09:42:15  20   Penalty Act work.  If we allow the United States Attorney

09:42:19  21   General to simply start this process by randomly sending

09:42:22  22   out letters to people through the warden, then we have

09:42:28  23   abandoned essentially a part of the statute that ensures

09:42:34  24   due process.

09:42:35  25        It is not too much to ask the government to

| | | |
|---|---|---|
| 09:42:38 | 1 | follow its own rules.  And the Court lifting a stay right |
| 09:42:43 | 2 | now would be essentially saying that what they've done up |
| 09:42:46 | 3 | to this point, no matter how egregious the violation will |
| 09:42:52 | 4 | be forgiven because it just doesn't matter.  We take the |
| 09:42:55 | 5 | position that it does. |
| 09:42:55 | 6 | THE COURT:  Okay.  Let me hear from Mr. Frazier, |
| 09:42:57 | 7 | if I could. |
| 09:42:58 | 8 | Mr. Frazier, I don't want you to yet get into the |
| 09:43:00 | 9 | 90-day issue.  But I would like you to explain why you |
| 09:43:05 | 10 | believe Ms. Otto is wrong and that I can -- that I can, in |
| 09:43:11 | 11 | fact, go ahead and lift the stay. |
| 09:43:13 | 12 | I'm of the -- on one level, I am of the opinion |
| 09:43:17 | 13 | that I'm going to have to treat this as though I were the |
| 09:43:21 | 14 | judge, that I'm modifying -- since Judge Smith has -- I've |
| 09:43:27 | 15 | taken his place, I'm going to treat this as though I had |
| 09:43:30 | 16 | entered the original order for purposes of deciding it.  I |
| 09:43:34 | 17 | have to say, I'm of the mind that I have the power to do |
| 09:43:37 | 18 | in this respect anything I want.  But I certainly |
| 09:43:39 | 19 | understand Ms. Otto's position that there's a due process |
| 09:43:44 | 20 | interest in allowing the defendant to have a say in why I |
| 09:43:49 | 21 | should or should not lift the stay. |
| 09:43:52 | 22 | So, Mr. Frazier, I'll hear from you. |
| 09:43:55 | 23 | MR. FRAZIER:  Thank you, Judge.  Can you hear me |
| 09:43:57 | 24 | okay? |
| 09:43:57 | 25 | THE COURT:  Yes, sir. |

09:43:58    1            MR. FRAZIER:  Okay.  So the argument or, rather,

09:44:02    2    the position the Court has just articulated regarding

09:44:05    3    lifting of the stay is certainly something we believe the

09:44:08    4    Court has the authority to do, but we're not sure the

09:44:11    5    Court even needs to reach that decision in this particular

09:44:15    6    case: it's because of the language that's not only used in

09:44:19    7    the judgment, but what that language actually means.

09:44:22    8            So in this particular point, let's talk about the

09:44:25    9    stay itself.  In actuality, Judge, the stay just isn't

09:44:29    10   even in effect anymore, and here are the reasons why we

09:44:32    11   say that.  I understand the judgment says that the stay

09:44:37    12   has been provided for pending further order of the Court.

09:44:40    13   However, that's not to mean that that language is to be

09:44:44    14   read that the stay would persist indefinitely, or forever,

09:44:47    15   or long after the appeal process was already over, which

09:44:53    16   has been for some time now unless the Court had issued

09:44:58    17   some contrary order.

09:44:59    18           In this particular case, the judgment also states

09:45:01    19   that Vialva's death sentence, quote, will be implemented,

09:45:06    20   end quote, upon exhaustion of the all appeal -- the

09:45:09    21   appeals, rather, and it specifically directs the Bureau of

09:45:12    22   Prisons and the Marshal Service to do that.  In any event,

09:45:15    23   the Court -- not this court, but the prior court, Judge

09:45:19    24   Smith, has issued several orders, including the denial of

09:45:24    25   the defendant's 2255 motion, his 60(b) motion, and all his

09:45:30  1    denials of certificates of appealability to the Fifth

09:45:36  2    Circuit.  Those actions are all incompatible with the

09:45:38  3    continued existence of a stay in this particular case.

09:45:41  4            And as the Court is aware, Mr. Vialva bears the

09:45:48  5    burden in this particular case of making a strong showing

09:45:53  6    of likely success.  So technically, Judge, we're arguing

09:45:59  7    the stay does not exist at this point, but the Court could

09:46:02  8    lift it now if the Court wanted to, to do that.  If they

09:46:05  9    wanted to do so.

09:46:08  10           THE COURT:  And, Mr. Frazier, I guess from the

09:46:11  11   government's perspective, going in order, if Judge Smith's

09:46:19  12   order entering this stay, if the intent of it was simply

09:46:24  13   to preclude any -- obviously the execution itself until

09:46:31  14   other rights were exhausted by the defendant, and those

09:46:35  15   included the ones you just said, the Rule 60 motion, 2255,

09:46:40  16   obviously he had an appeal.  There's going to be an appeal

09:46:42  17   in every one of these cases.

09:46:45  18           If I were to find that no stay were necessary,

09:46:50  19   then that would moot the -- or make the -- Ms. Otto's

09:46:55  20   argument without merit.  But it would also -- it could

09:47:03  21   also lend to an argument that if I were to lift the stay

09:47:08  22   today, it would be consistent with the intent of the

09:47:13  23   original court, and there would be no due process

09:47:16  24   violation by me simply lifting the stay.  And in the end,

09:47:24  25   the result would be essentially identical, correct?

09:47:26   1          MR. FRAZIER:  Yes.

09:47:27   2          THE COURT:  I would either determine that Judge

09:47:29   3   Smith's intent was simply to make sure that no action was

09:47:33   4   taken with respect to the defendant until all of his

09:47:37   5   rights -- appellate rights were exhausted.  He didn't

09:47:41   6   intend for a stay to interfere with any conduct that

09:47:45   7   occurred after the appellate rights had been exhausted.

09:47:48   8   But if there's a question whether the stay does or does

09:47:52   9   not exist, then it would be appropriate for the Court to

09:47:56  10   resolve that ambiguity by removing the stay.

09:48:03  11          MR. FRAZIER:  Yes, sir.  That's correct.

09:48:04  12          That's our argument we've made to the Court in

09:48:06  13   our reply -- in our response, rather.  Excuse me.

09:48:07  14          THE COURT:  Ms. Otto, if I could hear a response

09:48:09  15   to that, please.

09:48:10  16          MS. OTTO:  Yes, your Honor.

09:48:11  17          I believe what the government is doing is

09:48:14  18   basically cutting and pasting from the language in the

09:48:21  19   original judgment.  The section that -- of the judgment

09:48:25  20   Mr. Frazier is reading from, upon exhaustion of appeals,

09:48:28  21   is actually in the first paragraph of the judgment, and it

09:48:34  22   describes upon exhaustion of appeals, a sentence of death

09:48:38  23   will be implemented by the defendant being released from

09:48:40  24   the custody of the Bureau of Prisons to the custody of the

09:48:43  25   marshals, who shall supervise the execution of the

09:48:46  1   defendant in the manner prescribed by the laws of Texas.

09:48:53  2   So the laws of Texas govern that eventuality in this case.

09:49:03  3          The next paragraph says, the time, place and

09:49:05  4   manner are to be determined by the Attorney General, and

09:49:07  5   that's this not less than 60 and not more than 90 days

09:49:11  6   from the date of the judgment.  Next sentence:  If an

09:49:15  7   appeal is taken, execution of this sentence shall be

09:49:18  8   stayed pending further order of this court upon receipt of

09:49:24  9   the mandate of the court of appeals.

09:49:27  10         The government is essentially arguing that

09:49:30  11  because Judge Smith entered final orders in our successive

09:49:36  12  pieces of litigation that we've pursued in postconviction,

09:49:39  13  that that's somehow inconsistent with a stay, it is

09:49:45  14  entirely consistent with there being a stay.  The

09:49:48  15  government did not attempt to execute Mr. Vialva while

09:49:52  16  those pieces of the litigation were pending nor should

09:49:56  17  they.  The case was still in process.

09:50:03  18         The order of this court must be consistent with

09:50:06  19  the laws of Texas.  And the laws of Texas are explicit.

09:50:10  20  There has to be an order of the Court setting the

09:50:14  21  execution.  Simply lifting the stay is not sufficient.

09:50:19  22  This court is -- will be entering the order of execution.

09:50:28  23  The Attorney General of the United States does not possess

09:50:30  24  that authority.  The Attorney General can determine the

09:50:34  25  time, place and manner, provided it's prescribed in the

09:50:41  1  laws of the state of Texas.  That's the Federal Death

09:50:43  2  Penalty Act.

09:50:45  3       The Federal Death Penalty Act requires this court

09:50:47  4  and every other court before whom a federal death penalty

09:50:53  5  is pending to either use the law that exists in that

09:50:57  6  jurisdiction, if it's a jurisdiction that has the death

09:51:01  7  penalty, or to select another jurisdiction and use that

09:51:06  8  jurisdiction's rules.

09:51:08  9       We don't have to engage in that process here.

09:51:10  10  The state of Texas has an execution process, and their

09:51:15  11  process is explicit.  Only the Court can direct the

09:51:20  12  execution.  Lifting the stay would be part of directing

09:51:25  13  that execution, but it has to be done in accordance with

09:51:28  14  the laws of the state of Texas.  A fact that the United

09:51:33  15  States Attorney has not acknowledged.  It was required to

09:51:39  16  request that the Court set the order of execution, and

09:51:43  17  certainly as long as the stay was in place, that wouldn't

09:51:46  18  happen.

09:51:47  19       We sort of got -- we got multiple carts before

09:51:50  20  the horse here, and now we're in a mess, and the

09:51:54  21  government wants to say, don't worry, Judge, just vacate

09:51:57  22  the stay and we can just proceed onward.  They have never

09:52:01  23  requested that this court enter an order of execution, and

09:52:04  24  that is required under the law of Texas.

09:52:10  25       THE COURT:  Mr. Frazier.

09:52:13  1          MR. FRAZIER:  Yes, your Honor.

09:52:14  2          To address one of the points, this is sort of

09:52:19  3  combining a couple of the points that she made -- that

09:52:23  4  counsel made in her brief regarding the Attorney General's

09:52:30  5  authority.  She indicated earlier the standing practice

09:52:35  6  that there must be an order of the Court allowing the

09:52:38  7  Attorney General to set a date for execution, but that's

09:52:41  8  not entirely correct.  The Court -- the only thing the

09:52:43  9  Court must do is issue a judgment sentencing the defendant

09:52:48 10  to death, which has been done in this case.  The executive

09:52:50 11  branch then has the duty, both constitutional and

09:52:54 12  statutory, to carry out that sentence.

09:52:55 13          The judgment does not preclude the Attorney

09:52:58 14  General from setting an execution date.  The judgment

09:53:02 15  requires -- the judgment as it's written requires the

09:53:06 16  Attorney General to set this date, as it states, between

09:53:10 17  61 and 90 days from the date of judgment.  Using the logic

09:53:12 18  that Mr. Vialva is arguing in his brief on this -- for

09:53:17 19  this injunction that the Attorney General would forever be

09:53:22 20  forfeited -- would ever forfeit his ability to set a date

09:53:25 21  at all because it didn't fall within 61 to 90 days, that

09:53:29 22  just doesn't make any sense.

09:53:30 23          But instead, pointing to those paragraphs that

09:53:33 24  Ms. Otto just pointed out, the time, place and manner of

09:53:36 25  execution are to be determined by the Attorney General.

09:53:39    1    That's part of the judgment that was entered in this

09:53:43    2    particular case.  And that provision, that language that

09:53:47    3    sets this time period from between 60 -- 61 and 90 days is

09:53:53    4    language that was taken from the sentencing language used

09:53:56    5    in the old death penalty provision under Title 21, United

09:54:01    6    States Code, Section 848, and that was all repealed.  That

09:54:06    7    was the death penalty under the drug statute.  That was

09:54:10    8    repealed in 2006.

09:54:11    9         But the commentary in that language made clear

09:54:13   10    what that 61 to 90 days was about.  It was meant only to

09:54:17   11    give a defendant time to appeal, and it didn't suggest the

09:54:21   12    same time limits were meant to apply even if a defendant

09:54:24   13    did appeal.  There's no way an appeal would ever be

09:54:26   14    resolved within that time period.  It's not possible.

09:54:31   15         Instead, and in fact, in other language which is

09:54:34   16    also in Mr. Vialva's judgment says that if a defendant

09:54:37   17    appeals, his death sentence is stayed, and the Bureau of

09:54:42   18    Prisons and the marshals have to wait until exhaustion for

09:54:45   19    the procedures for appeal of the judgment and conviction

09:54:48   20    and review of the sentence takes place before those be

09:54:51   21    carried out.  And that's also statutory in Title 18,

09:54:56   22    United States Code, Section 3596(a).

09:54:59   23         So therefore, to read this together, the best

09:55:00   24    reading of this is not that the stay was in effect, but

09:55:04   25    that the Attorney General's discretion about when to set a

09:55:07  1   date apply only when it's the defendant's appeals have

09:55:12  2   run, not just to the 61 and 90-day provision that's in the

09:55:17  3   judgment; otherwise, it wouldn't make sense to read it in

09:55:21  4   a way that it would.

09:55:22  5            And again, in the alternative, as we've argued in

09:55:26  6   our response, the Court could simply ratify the date that

09:55:32  7   has been set by the Bureau of Prisons, as directed by the

09:55:34  8   Attorney General in the notice that we filed with the

09:55:37  9   Court.  There's no reason why the Court couldn't just

09:55:40  10  adopt that if it wanted to in the alternative.

09:55:43  11           Now, regarding the argument that the defendant is

09:55:46  12  making in this case regarding the -- that a further order

09:55:51  13  is necessary for this court to -- for the marshals to

09:55:58  14  supervise the execution, the letter that was provided --

09:56:03  15  counsel had argued initially that the letter that was

09:56:05  16  provided to Mr. Vialva from the warden at Terre Haute was

09:56:10  17  insufficient because it didn't comply with the requirement

09:56:15  18  that a warrant be issued.

09:56:18  19           But that letter, Judge, that notice that she was

09:56:20  20  given that -- I'm sorry, Judge.  I just wanted to make

09:56:27  21  sure I -- sorry about that.  That letter serves as notice,

09:56:33  22  the functional equivalent of a warrant that an execution

09:56:36  23  date was set.  And to suggest that there needed to be some

09:56:40  24  additional compliance, some other type of document issued,

09:56:45  25  putting the defendant on notice that the government was

09:56:47  1  seeking a specific execution date is just incorrect.

09:56:51  2       In fact, that same notice was given in another

09:56:53  3  case, and a court construed it as sufficient notice in

09:56:56  4  another case, in a death penalty case, in the Mitchell

09:57:00  5  case in the Ninth Circuit, which is cited in our response

09:57:05  6  that was -- that was cited in our response in this point

09:57:10  7  number three that was raised by counsel.

09:57:16  8       And also, Judge, in addition to whatever process

09:57:21  9  counsel is arguing may need to be issued by this court in

09:57:23  10  order for the marshals or the Bureau of Prisons to

09:57:27  11  effectuate and carry out the death penalty, there's

09:57:29  12  already a statutory requirement for them to do so now.

09:57:35  13  The duty exists -- already have a statutory and reg --

09:57:41  14  have statutory and regulatory authority under 18 U.S.C.

09:57:45  15  3596(a) and 28 C.F.R. 26.3(a)(4) to supervise the

09:57:51  16  execution, and the Court's original judgment specifically

09:57:55  17  directs them to do so.

09:57:58  18       The final point that I wanted to make regarding

09:58:01  19  the Texas procedures that counsel argues that the

09:58:07  20  execution as it's laid out in the judgment and paragraphs

09:58:16  21  -- this is on page 2 of the judgment, docket 289,

09:58:20  22  paragraphs number two and number three, that the

09:58:23  23  government must implement a sentence in the manner

09:58:25  24  prescribed by the laws of the state in which the sentence

09:58:28  25  was imposed.

09:58:31  1          In this particular case, Judge, that's already

09:58:34  2  been interpreted for you.  Several courts have already

09:58:38  3  considered this issue, and they indicate that the word

09:58:42  4  "manner," which the same language was used in the judgment

09:58:47  5  that basically the -- Mr. Vialva's judgment has the same

09:58:51  6  language entered, or very similar language, that the

09:58:53  7  manner of implementing a death sentence refers to the

09:58:56  8  manner effectuating death, not the pre-execution

09:59:00  9  procedural requirements.  That's cited in the Mitchell

09:59:03  10  case that we cited in our reply.  That's also in the

09:59:06  11  Peterson vs. Barr and in one of the Protocol cases, the

09:59:10  12  decision, as well, that are also cited in our response.

09:59:13  13          Our position is, Judge, that when we're talking

09:59:16  14  about the manner of the execution and not all of the

09:59:20  15  pre-execution procedural requirements, it's covering only

09:59:24  16  the choice of the means of the execution, whether by

09:59:30  17  lethal injection, hanging, firing squad, things of that

09:59:33  18  nature.  That would be consistent with the reading of

09:59:36  19  Title 18, United States Code, Section 3596.  And likewise,

09:59:43  20  even the other cases where there were -- have read that to

09:59:47  21  have a broader interpretation of the manner, it's still

09:59:51  22  limited just to execution-related details such as the

09:59:54  23  choice of the drugs, dosage, who can be present, things of

09:59:58  24  that nature.  No one has held that it includes

10:00:02  25  pre-execution procedures such as the issuance of a

10:00:04  1    warrant, choice of the date, notification, things of that

10:00:07  2    nature.

10:00:08  3            And that's also in the Mitchell case, which was

10:00:11  4    cited in our response to the motion in this particular

10:00:18  5    case.  So the bottom line is, Judge, the government is

10:00:21  6    arguing that the judgment essentially is interpreted

10:00:26  7    through other -- through opinions in other courts.  But

10:00:29  8    also in what it actually means based on the litigation and

10:00:36  9    the history that's taken place would mean that the

10:00:41  10   Attorney General has complied and the Bureau has complied

10:00:44  11   with the requirements that are necessary to effectuate a

10:00:48  12   death sentence.  And in fact, that those same requirements

10:00:53  13   have been done in other cases recently where the death

10:00:56  14   penalty was also imposed and effectuated.

10:00:59  15           Indeed, does the Court have any other question on

10:01:02  16   that?  Have I addressed all the Court's points?  Was there

10:01:05  17   anything -- any other question the Court has that I could

10:01:07  18   address on that?

10:01:08  19           THE COURT:  No.  I'll hear from Ms. Otto.

10:01:10  20           MS. OTTO:  Thank you, your Honor.

10:01:11  21           To begin with, I would agree with the government

10:01:16  22   that it would be strange to argue that if you didn't

10:01:20  23   execute someone within 90 days after the date of the

10:01:23  24   judgment, that would be a ridiculous position to take.

10:01:29  25   That's why we didn't take it.

| | | |
|---|---|---|
| 10:01:31 | 1 | What we're saying is, the second portion of that |
| 10:01:34 | 2 | paragraph is what is applicable, and this whole thing has |
| 10:01:41 | 3 | been stayed pending further order of the court.  Now, the |
| 10:01:44 | 4 | government says that there's no requirement under the |
| 10:01:48 | 5 | rules for the Attorney General to ask for an order.  I |
| 10:01:53 | 6 | would direct the Court's attention to 28 C.F.R., Section |
| 10:01:57 | 7 | 26.2(a), which says whenever this part becomes applicable, |
| 10:02:03 | 8 | the attorney for the government shall promptly file with |
| 10:02:05 | 9 | the sentencing court a proposed order and judgment.  And |
| 10:02:09 | 10 | the order and judgment shall state, in addition to any |
| 10:02:12 | 11 | other matters required by law or otherwise appropriate; |
| 10:02:18 | 12 | and then, it sets out that the sentence shall be executed |
| 10:02:21 | 13 | by the marshal, the sentence shall be executed by |
| 10:02:25 | 14 | intravenous injection; the sentence shall be executed on a |
| 10:02:28 | 15 | date and at a place designated by the Director of the |
| 10:02:31 | 16 | Bureau of Prisons; and that the prisoner under the |
| 10:02:35 | 17 | sentence of death shall be committed to the Attorney |
| 10:02:39 | 18 | General or his authorized representative for appropriate |
| 10:02:41 | 19 | detention pending execution of the sentence. |
| 10:02:43 | 20 | That's what I was referring to when I said |
| 10:02:46 | 21 | standing practice.  This has been in the C.F.R.  This has |
| 10:02:51 | 22 | been a requirement for the Department of Justice.  I agree |
| 10:02:55 | 23 | with Mr. Frazier that a number of cases have touched on |
| 10:03:01 | 24 | the issues of what does the manner of execution mean.  All |
| 10:03:07 | 25 | of the cases that have addressed this have been Protocol |

| | | |
|---|---|---|
| 10:03:12 | 1 | cases, that is, how do we execute someone?  How much |
| 10:03:18 | 2 | access does the lawyer have to the person?  Are we allowed |
| 10:03:21 | 3 | to see the manner in which the intravenous line is set? |
| 10:03:27 | 4 | Who gets to witness?  All of those details. |
| 10:03:30 | 5 | The -- as Judge -- Justice Sotomayor noted, the |
| 10:03:36 | 6 | Protocol case at 955 F. 3d is the case that has done the |
| 10:03:43 | 7 | most to examine this.  It's the D.C. Circuit's opinion. |
| 10:03:46 | 8 | There are three judges, there are three different |
| 10:03:50 | 9 | opinions.  One of the judges says, you have to follow |
| 10:03:53 | 10 | everything down to the pin, down to the minutia.  One |
| 10:03:58 | 11 | judge says, well, I think what you have to do is, you have |
| 10:04:00 | 12 | to follow the general rules about this.  One judge |
| 10:04:05 | 13 | worries:  Well, how hard is this going to be to apply? |
| 10:04:09 | 14 | But all of the judges indicate that you must follow the |
| 10:04:14 | 15 | statutes. |
| 10:04:16 | 16 | I understand that it may be very difficult for |
| 10:04:21 | 17 | the United States of America to suss out through all of |
| 10:04:25 | 18 | the various protocols and all of the various jurisdictions |
| 10:04:27 | 19 | where they have chosen to prosecute people federally for |
| 10:04:30 | 20 | homicides, how can they go about doing this? |
| 10:04:34 | 21 | But we don't have to reach that issue here. |
| 10:04:37 | 22 | That's not what is before this court.  The minutia of the |
| 10:04:41 | 23 | protocol process is for the Protocol case.  We have that |
| 10:04:45 | 24 | pending in the district right now.  That's not the problem |
| 10:04:50 | 25 | right now.  The problem right now is that the government |

| | | |
|---|---|---|
| 10:04:54 | 1 | has jumped past a plain and simple requirement of the |
| 10:04:59 | 2 | statute. |
| 10:05:01 | 3 | It is required for a court to issue a death |
| 10:05:05 | 4 | warrant.  The government is saying, don't worry about |
| 10:05:09 | 5 | that, we'll just send a letter and you can ratify it |
| 10:05:13 | 6 | later.  They're citing the Mitchell case.  I certainly |
| 10:05:16 | 7 | think the Mitchell case deserves to be looked at.  Mr. |
| 10:05:20 | 8 | Mitchell wasn't talking about the warrant in that case. |
| 10:05:24 | 9 | If he complained about it, he complained too late.  Mr. |
| 10:05:28 | 10 | Mitchell received 139 days notice that he was going to be |
| 10:05:33 | 11 | executed back in 2019.  That didn't happen because there |
| 10:05:38 | 12 | was a litigation that engendered a stay, and the |
| 10:05:42 | 13 | government was precluded from executing him. |
| 10:05:45 | 14 | This last round of litigation occurred when the |
| 10:05:48 | 15 | government decided to attempt to execute him again and, of |
| 10:05:51 | 16 | course, they succeeded.  But the fact that the government |
| 10:05:55 | 17 | succeeded is not the same thing as saying what the |
| 10:05:57 | 18 | government is doing in this case is correct. |
| 10:06:01 | 19 | We have timely raised this.  Perhaps Mr. Mitchell |
| 10:06:04 | 20 | may have waived his right to challenge the absence of a |
| 10:06:07 | 21 | warrant.  He didn't raise the issue appropriately.  That |
| 10:06:10 | 22 | does not govern this court's determination, and it |
| 10:06:14 | 23 | certainly does not excuse the government's failure and |
| 10:06:18 | 24 | refusal to follow the rules. |
| 10:06:21 | 25 | In Texas, the court issues the warrant.  In other |

10:06:27  1   jurisdictions, the chief executive does.  If we were in

10:06:31  2   one of those jurisdictions where the chief executive

10:06:33  3   issued the order of execution, we would be having this

10:06:37  4   discussion with the President of the United States.  But

10:06:40  5   we are in a jurisdiction where the Court issues the order.

10:06:46  6         The United States is asking you to look past all

10:06:48  7   of its procedural failures, to look past all of its

10:06:53  8   attempts to bypass a very simple, very plain, very

10:06:58  9   ordinary request that could have been submitted to this

10:07:03  10  court in February when our last round of litigation

10:07:07  11  concluded in the United States Supreme Court from the Rule

10:07:11  12  60(b) motion.

10:07:13  13        We received notice that Mr. Vialva was going to

10:07:16  14  be executed July the 25th of this year, 55 days from the

10:07:21  15  date of his scheduled execution.  We have not delayed.  We

10:07:27  16  have been steady and stedfast in our request that the

10:07:31  17  Attorney General of the United States follow the law.

10:07:35  18        I respectfully submit that the government's

10:07:38  19  suggestion that this court ratify its violation of law

10:07:44  20  flies in the face of statutory rules, and it certainly

10:07:50  21  flies in the face of the rule of law.  It is not too much

10:07:53  22  to ask the Attorney General of the United States through

10:07:56  23  the United States Attorney in the Western District of

10:07:59  24  Texas to submit a proposed order and judgment that would

10:08:03  25  have given us notice.

10:08:05  1    Ratifying it at this point is I don't believe

10:08:10  2  structurally an option for this court, and that's why I'm

10:08:12  3  so reluctant to say that simply vacating a stay at this

10:08:17  4  point would cure the problem.  We still don't have a

10:08:21  5  proper request from the United States.

10:08:26  6    THE COURT:  Mr. Frazier, anything else on this

10:08:27  7  point or any of those points?

10:08:29  8    MR. FRAZIER:  Yes, your Honor.  Just a few

10:08:32  9  things.

10:08:32  10    First of all, other than just counsel's asserting

10:08:34  11  that the procedures that are set out under 18 U.S. -- or

10:08:38  12  28 U.S.C. 3596 require us to comply with Texas procedures,

10:08:44  13  she's never explained why that's correct.  We've explained

10:08:49  14  at length in our response that the manner of pre-execution

10:08:53  15  -- the manner of execution doesn't apply to the

10:08:57  16  pre-execution procedures, and every court has agreed with

10:08:59  17  that.  There's no court opinion that's interpreting the

10:09:04  18  law the way Vialva is interpreting it in this particular

10:09:09  19  case.

10:09:11  20    You know, alleging that we not follow the rules,

10:09:13  21  or not follow the statute, or we've engaged in procedural

10:09:17  22  failures is simply wrong because the other courts just

10:09:21  23  don't agree with that interpretation.  I think it's

10:09:25  24  interesting, too, Judge, that counsel now, today in an

10:09:31  25  issue raising 26.2 of 28 C.F.R. that we didn't submit a

| | | |
|---|---|---|
| 10:09:36 | 1 | proposed judgment and order has never been raised in the |
| 10:09:39 | 2 | previous 20 years of litigation prior to it being inserted |
| 10:09:46 | 3 | in the reply brief.  I don't believe it was raised in the |
| 10:09:49 | 4 | original petition for an injunction in this particular |
| 10:09:53 | 5 | court.  I may be wrong about that, but I do recall it |
| 10:09:56 | 6 | being in the reply brief that's being asserted now for the |
| 10:09:58 | 7 | first time. |
| 10:09:59 | 8 |     If it truly were a procedural issue that counsel |
| 10:10:08 | 9 | -- or that Mr. Vialva believed was appropriate, then it |
| 10:10:11 | 10 | should have been raised years ago, but wasn't.  But in any |
| 10:10:14 | 11 | event, even that particular regulation makes clear under |
| 10:10:18 | 12 | 26.2 that the proposed judgment and order is really for |
| 10:10:22 | 13 | the convenience of the Court. |
| 10:10:23 | 14 |     The Court has already issued a judgment and order |
| 10:10:26 | 15 | in this particular case.  The Court doesn't have to adopt |
| 10:10:30 | 16 | everything -- if the government -- even if the government |
| 10:10:32 | 17 | provided a proposed order and motion at this point, the |
| 10:10:34 | 18 | Court wouldn't have to adopt it.  And the code section |
| 10:10:38 | 19 | provides no sanction if we fail to comply with that. |
| 10:10:44 | 20 | Especially not an injunction in this particular case |
| 10:10:46 | 21 | precluding the government from carrying out its particular |
| 10:10:49 | 22 | sentence. |
| 10:10:50 | 23 |     We cite for the Court, Dolan vs. United States, |
| 10:10:54 | 24 | Supreme Court case at 560, U.S. 605, where the Supreme |
| 10:10:58 | 25 | Court said where a statute does not specify a consequence |

10:11:00  1    for noncompliance with its timing provisions, federal

10:11:04  2    courts will not in the ordinary course impose their own

10:11:08  3    coercive standard.

10:11:09  4            The final thing I want to point out to the Court

10:11:12  5    is the legal framework under which Vialva's operating in

10:11:17  6    right now, and that's the injunction.  That's the motion

10:11:20  7    for an injunction.  So one of the standards which really

10:11:23  8    haven't been mentioned -- and I know the Court is aware of

10:11:25  9    these that we put in our response as to what Mr. Vialva

10:11:28  10   has to show in order to get this extraordinary remedy.  In

10:11:33  11   page 5 of our brief, we show, number one, that the

10:11:36  12   defendant must show the use of existing methods or

10:11:38  13   procedures, rather than proffered alternatives, will cause

10:11:42  14   him irreparable injury.  And the mere existence of a death

10:11:47  15   sentence is not enough.  That's the standard in the Fifth

10:11:50  16   Circuit.  The fact that there's a death sentence is

10:11:52  17   insufficient.

10:11:52  18           And the Court must also take into account the

10:11:56  19   state's very strong interest in enforcing its criminal

10:11:59  20   judgments without undue interference from courts,

10:12:03  21   particularly where a capital defendant brings a claim

10:12:06  22   shortly before his sentence is due to be carried out.  And

10:12:08  23   we cite Murphy vs. Collier, Fifth Circuit case in our

10:12:12  24   particular reply.

10:12:13  25           Those standards simply have not been met in this

10:12:15  1   particular case, Judge.  Mr. Vialva has not reached the

10:12:19  2   level -- the very high level that he has to acquire to

10:12:23  3   make the showings that will entitle him to an injunction

10:12:26  4   at this point.  If I could have just a moment, your Honor.

10:12:42  5   I don't think I have anything else on this point unless

10:12:44  6   the Court has any questions.

10:12:45  7           THE COURT:  I don't.

10:12:46  8           Ms. Otto, if you'd like to shift -- if you have

10:12:50  9   anything else you'd like to say, of course, you can.  But

10:12:51  10  if you'd like to shift to the issue of the 90 days, that

10:12:54  11  will be fine, as well.

10:12:56  12          MS. OTTO:  Yes, your Honor.

10:12:57  13          Just on the point that the government has made

10:13:01  14  about the timing of this.  The timing of this has been

10:13:06  15  driven entirely by Mr. Vialva being advised after being on

10:13:12  16  death row for a considerable period of time, 20 years,

10:13:18  17  that the government was going to execute him in 55 days.

10:13:22  18  This is not the sort of last-minute action that where we

10:13:29  19  waited.  I think that was one of the issues in Mitchell,

10:13:32  20  that this was coming really right on the day of the

10:13:35  21  execution.

10:13:37  22          And, of course, the Supreme Court has made it

10:13:38  23  clear that they look at those last-minute stays with great

10:13:43  24  disfavor.  That's why we brought this to the Court's

10:13:46  25  attention as promptly as we did.  We have come into court

```
10:13:50   1   as quickly as we possibly could.  We are requesting
10:13:55   2   injunctive relief simply because that appears to be the
10:13:57   3   only way to stop the government from proceeding with its
10:14:02   4   intentions.
10:14:03   5          THE COURT:  Ms. Otto.
10:14:04   6          MS. OTTO:  Yes.
10:14:05   7          THE COURT:  Let me put that on the record, number
10:14:06   8   one, I don't think I heard Mr. Frazier arguing this is a
10:14:13   9   last-minute -- and he can correct me.  But I worry a
10:14:19  10   little bit that you're arguing about something -- you're
10:14:21  11   responding to an argument I don't think the government's
10:14:23  12   making in terms of this clearly is not a we're about to
10:14:28  13   have -- we're about to have the execution at 5:00 today
10:14:34  14   and you filed it yesterday.
10:14:35  15          In fact, I commend you for filing it when you
10:14:37  16   did.  And part of the reason I set the hearing now was so
10:14:43  17   that if I were to make a decision adverse to your client,
10:14:47  18   I wanted to be doing it quickly enough so that I will give
10:14:51  19   you as much opportunity to have appellate relief from any
10:14:53  20   decision I make.
10:14:55  21          So I'm saying this not to -- I'm not criticizing
10:15:00  22   or chastising you.  I'm actually complimenting you.  I
10:15:04  23   think you all moved with great dispatch and this court is
10:15:08  24   -- I think we moved -- not that they wouldn't have done
10:15:11  25   it, anyway.  The government responded very quickly, and we
```

10:15:13  1   wanted to get this hearing done to give your client every

10:15:17  2   opportunity.

10:15:18  3          So I just wanted to make the record clear that I

10:15:22  4   don't view this as a last-minute -- it is, in some sense,

10:15:27  5   a last -- last-minute's the wrong word.  It is clearly a

10:15:33  6   last -- an effort to prevent the final act of the play, as

10:15:39  7   it were, since the government now wants to actually have

10:15:44  8   the capital punishment take place.  But I think this is

10:15:48  9   taking place in a very orderly way, and I commend what you

10:15:51 10   all are doing.  I don't find it -- the issues that have

10:15:55 11   been raised by others as a last-minute effort.

10:15:59 12          But if there's anything else you'd like to say

10:16:00 13   about what Mr. Frazier has argued, that's fine.  And then,

10:16:04 14   if you would like to explain to me why you believe that

10:16:08 15   I've gotta make sure that there are 90 -- or more than 90

10:16:11 16   days, that will be great.

10:16:13 17          MS. OTTO:  Yes, your Honor.  I'm happy to do

10:16:14 18   that.

10:16:14 19          I just simply wanted to make it clear that since

10:16:18 20   the government has raised the specter that if we had a

10:16:21 21   complaint about anything, we should have raised it during

10:16:24 22   these 20 years.  That this is really the first time that

10:16:27 23   the issue has become ripe for litigation and ripe for

10:16:32 24   decision.

10:16:33 25          I believe that where we are at this point is that

10:16:37    1    Mr. Vialva has received notice that the government intends

10:16:40    2    to execute him on September the 24th.  We have raised the

10:16:45    3    issue that we have only received this notice 55 -- giving

10:16:52    4    us 55 days and that it does not comport with Texas law.

10:16:55    5            I will agree that this is, I believe, a case of

10:17:00    6    first impression.  I agree that this precise issue about

10:17:06    7    the timing of the warrant, the issuance of the warrant,

10:17:08    8    the manner of the warrant being challenged so directly, so

10:17:13    9    succinctly, and so clearly, has not been presented.  It

10:17:18    10   wasn't presented in Danny Lee's case.  It wasn't presented

10:17:20    11   in Lezmond Mitchell's case.

10:17:22    12           THE COURT:  Ms. Otto, let me ask you this, too.

10:17:25    13   And again, I'm trying to be -- I want my question to be

10:17:28    14   clear.

10:17:29    15           MS. OTTO:  Yes, sir.

10:17:30    16           THE COURT:  Because when I say this, I will be

10:17:34    17   paraphrasing the way that someone else famously said about

10:17:38    18   what difference does it make.

10:17:41    19           But my question here is, what issues -- what

10:17:51    20   prejudice will you suffer, will your client suffer because

10:17:56    21   it's 51 days, instead of 90 days?  What issues would you

10:18:02    22   not be -- I have something in the record this has been 20

10:18:07    23   years, it's been litigated every way in, I think -- every

10:18:14    24   issue that I could think of has been raised.  You all are

10:18:18    25   not arguing that I've seen, but if you are, please put it

10:18:23   1   on the record now -- that I get that you're saying it's

10:18:29   2   Texas by fate, you know, the defendant was convicted in

10:18:36   3   Texas, Texas law applies, Texas law requires 90 days.

10:18:42   4          But I don't know what you're saying is the

10:18:46   5   prejudice that would accrue to your client because if we

10:18:50   6   had 40 more days, we could get X done, but because we only

10:18:56   7   had 51 days, is your argument -- is there anything more to

10:19:00   8   your argument than -- in terms of actual prejudice to your

10:19:04   9   client than it happened to have been Texas, Texas requires

10:19:09   10  90 days, there are -- what the Attorney General did, it

10:19:13   11  was fewer days than that, and we are going to be

10:19:15   12  prejudiced because the shortage of days we would have

10:19:19   13  gotten would have allowed us to raise an issue that we

10:19:23   14  won't be able to raise.  I haven't seen that in any of the

10:19:27   15  papers.

10:19:29   16         MS. OTTO:  Well, your Honor, I believe in our

10:19:31   17  reply, we did note in a footnote that we have a matter

10:19:34   18  pending in the Southern District of Indiana at this point.

10:19:39   19  We have raised a claim about the constitutionality of

10:19:45   20  proceeding with the execution of Mr. Vialva, and we have

10:19:49   21  raised that in the context of Title 28, United States

10:19:52   22  Code, Section 2241.

10:19:55   23         I believe I see that the government's lawyer who

10:19:57   24  is representing the United States in that case is present

10:20:00   25  for this hearing, and we are certainly pursuing that

10:20:06  1   litigation.  The timing --

10:20:09  2          THE COURT:  But -- you were about to say.  I'm

10:20:11  3   sorry.  You were about to answer my question.  Please, go

10:20:13  4   ahead.

10:20:14  5          MS. OTTO:  Yes.

10:20:14  6          So the timing of this is that we have filed that.

10:20:18  7   We are proceeding in the Southern District of Indiana.  I

10:20:23  8   don't know if we're going to get a hearing or not in that

10:20:25  9   case, but of course, it is now September the 3rd and we

10:20:31  10  are looking at 20 -- functionally, 21 days left to do this

10:20:38  11  litigation.

10:20:40  12         The clemency procedures that exist for federal

10:20:45  13  prisoners allow you to submit a clemency petition.  You

10:20:49  14  have 30 days to do that from the date of the notice of

10:20:53  15  your execution, and additional 15 days after that 30 days

10:20:58  16  to submit anything else.  Had we waited for our entire 45

10:21:04  17  days to submit our matters to the Office of Pardon

10:21:07  18  Attorney, that would have left 10 days for all that to go

10:21:11  19  through the procedure in Washington and for us to seek

10:21:15  20  executive clemency in this case.

10:21:18  21         The President of the United States, of course,

10:21:20  22  has an independent authority, separate and apart from the

10:21:27  23  Attorney General and the Department of Justice, to grant

10:21:31  24  clemency.  He's allowed to do that by the Constitution.

10:21:33  25  The procedure says that we are supposed to go through the

10:21:35  1  Department of Justice, and we are doing that.  The fact

10:21:39  2  that --

10:21:39  3          THE COURT:  Well, Ms. Otto.

10:21:42  4          MS. OTTO:  Sorry.

10:21:43  5          THE COURT:  Ms. Otto, help me out here.

10:21:46  6          Because, again -- and I want to be careful how I

10:21:50  7  say this, but it is just fate that Texas has 90 days.  It

10:21:58  8  could have been 120.  It could have been 60.  It could

10:22:01  9  have been whatever.  It's fate that your client was in

10:22:04  10  Texas.  Again, I'm trying to focus on, it seems to me,

10:22:10  11  that to the extent that the issues you've raised with the

10:22:16  12  Indiana court -- but I'm over my skis here because I don't

10:22:22  13  do this a lot.  But I'm just -- but I did do federal court

10:22:28  14  practice for 40 years, so I'm hoping I'm right.

10:22:31  15          But if the issues you're raising with the Indiana

10:22:35  16  court, which I'm sure are foresighted on because that's

10:22:38  17  where the execution's going to be and there are specific

10:22:41  18  issues you're raising there, wouldn't they be able to

10:22:46  19  postpone the execution or stay the execution if they

10:22:49  20  thought your claims were meritorious?  And how is any

10:22:53  21  shortage of the number of days of what I'm doing, how does

10:22:58  22  it impact that?  How are you prejudiced by not getting the

10:23:07  23  90 days with respect to what the Indiana court can do?

10:23:11  24          I just don't know.  I would love for you to

10:23:15  25  educate me.

| | |
|---|---|
| 10:23:15 | 1 |
| 10:23:18 | 2 |
| 10:23:20 | 3 |
| 10:23:25 | 4 |
| 10:23:28 | 5 |
| 10:23:34 | 6 |
| 10:23:37 | 7 |
| 10:23:42 | 8 |
| 10:23:46 | 9 |

MS. OTTO:  Well, I wish I could, your Honor.  I
-- of course, there's no way of knowing whether the
Indiana court is going to issue an injunction or not.  The
government predictably is vigorously opposing any
injunction, and that can't be counted on.  We have the
lethal injection Protocol case that's pending in the
District of Columbia.  The few cases that have obtained
injunctions out of that litigation, those injunctions have
been very swiftly dissolved.

But I would like to just return to the point that
I understand that there is -- there's a certain amount of
serendipity to where one is prosecuted and the law of the
state where one is prosecuted.  I know that there have
been a number of attempts, certainly Janet Reno, all those
years ago when all of this started with the federal death
penalty, had asked if it weren't possible for the Attorney
General to simply be able to draft up a plenary execution
protocol.

I think this is one of the things that Justice
Sotomayor is concerned about is that how do we -- how do
we fairly and uniformly apply a federal death penalty
statute that depends, in part, on the law of the
jurisdiction where the conviction occurred?  That is
certainly an issue that might be certworthy.

What concerns me is that when the United States

10:24:57   1   decided to start executing people again, initially they

10:24:59   2   gave 137 days notice, 139 days notice, which is quite a

10:25:06   3   bit of time and you can do a lot of litigating.  You could

10:25:11   4   go into many jurisdictions and you could raise many, many

10:25:15   5   issues.  There is no explanation for why we received 55

10:25:19   6   days, and I think that the prejudice to us flowing from

10:25:25   7   that is twofold.

10:25:26   8          First, the less time you have -- this is obvious,

10:25:29   9   but I'm going to say it, anyway.  The less time you have,

10:25:32  10   the less time there is to do things in a timely fashion.

10:25:36  11   And the closer you come to that edge with the United

10:25:41  12   States Supreme Court, or with an appellate court, or with

10:25:46  13   a district judge of saying you have delayed too long, you

10:25:49  14   have waited until the last minute and this is just a

10:25:52  15   desperate attempt not to be executed.

10:25:54  16          I think there is a larger question at stake here.

10:25:59  17   It may be serendipitous that we are in Texas.  It may be

10:26:03  18   just a matter of Texas law that we get a minimum of 90

10:26:06  19   days.  But as we noted in our pleading, Texas courts

10:26:10  20   routinely give substantially more than 90 days for

10:26:15  21   executions, and we do this for a reason.  It's so that you

10:26:18  22   can pursue executive clemency in an orderly fashion.  It's

10:26:22  23   so you can pursue any claims that you may have about the

10:26:26  24   niceties, the minutia, as they refer to it in the Protocol

10:26:29  25   cases.

| | | |
|---|---|---|
| 10:26:30 | 1 | THE COURT:  Ms. Otto, let me ask you this. |
| 10:26:33 | 2 | MS. OTTO:  Yes, sir. |
| 10:26:33 | 3 | THE COURT:  Again, this is -- I'm showing my |
| 10:26:36 | 4 | ignorance here.  I'm not questioning you all's good faith |
| 10:26:40 | 5 | and the way that you've handled this. |
| 10:26:43 | 6 | What prevented your ability to begin the clemency |
| 10:26:52 | 7 | procedure?  This ability to ask for clemency only began |
| 10:26:57 | 8 | when -- look, I get -- it seems to me, and certainly the |
| 10:27:03 | 9 | President has this authority.  You know, that's why he's |
| 10:27:07 | 10 | the President to -- through his Attorney General to decide |
| 10:27:12 | 11 | to start having capital punishment, having the executions |
| 10:27:15 | 12 | if he wants to, but I'm also aware that we haven't had any |
| 10:27:22 | 13 | for a while. |
| 10:27:23 | 14 | So -- but what, if anything -- why -- let me ask |
| 10:27:32 | 15 | it this -- were clemency -- were you asking for clemency |
| 10:27:36 | 16 | all along?  Does that -- when does that begin?  You raised |
| 10:27:40 | 17 | the issue of the shortage of days might -- that might |
| 10:27:44 | 18 | could affect your ability to ask for clemency, but I don't |
| 10:27:48 | 19 | really -- I know what clemency is, but I don't know how |
| 10:27:50 | 20 | one goes about asking for that in this context. |
| 10:27:55 | 21 | MS. OTTO:  Certainly, I can answer that question. |
| 10:27:57 | 22 | Uh-oh.  Oh, there you are.  You moved.  It threw me off. |
| 10:28:02 | 23 | All right.  I can answer that question pretty |
| 10:28:06 | 24 | simply.  The rules of the Department of Justice are that |
| 10:28:09 | 25 | you can ask for clemency once.  We actually petitioned the |

10:28:15  1   last administration for clemency and submitted our

10:28:19  2   clemency packet.  It did not ever make it out of the

10:28:26  3   Office of Pardon Attorney, as far as we can tell.  It was

10:28:29  4   never even opened in the Office of Pardon Attorney, and we

10:28:32  5   withdrew it before Mr. Trump was inaugurated as President

10:28:39  6   Trump.  Because we withdrew it, it was not considered a

10:28:43  7   tabletop or a desktop denial.  So we still have the right

10:28:48  8   to raise that.

10:28:50  9        During this administration, during the nearly

10:28:54  10  four years of this administration, there was no apparent

10:28:57  11  effort to execute anyone until very recently.  Certainly

10:29:04  12  requesting executive clemency can be submitted, but you

10:29:09  13  have to be out of court.  You can't have pending court

10:29:12  14  actions while you're doing that.

10:29:13  15       And we were litigating the 60(b) motion.  That

10:29:20  16  was only denied in -- very early in this year in 2020.

10:29:23  17  And so, we were actively litigating matters.  And

10:29:27  18  traditionally, you don't request executive clemency until

10:29:33  19  everything's finished in court.  I'm in the state of

10:29:37  20  Oklahoma.  We have a clemency process here, and clemency

10:29:41  21  isn't entertained by the Pardon and Parole Board until

10:29:46  22  there's an execution date set.

10:29:49  23       This could be a flaw in, again, in the way we

10:29:53  24  administer the federal death penalty.  Perhaps there

10:29:55  25  should be some clarity about that from the Department of

10:29:59  1   Justice or from each administration when it comes in.  But

10:30:05  2   it's certainly -- for death penalty practitioners, it

10:30:08  3   would be odd for you to be requesting clemency while you

10:30:11  4   were still pursuing some form of relief in the court.

10:30:16  5          So part of our decision has been driven by the

10:30:19  6   fact we were actively litigating the 60(b); and part of it

10:30:23  7   was simply a practical matter of not asking for clemency

10:30:28  8   during the administration because there was no real threat

10:30:32  9   until recently that Mr. Vialva would be executed.  He was

10:30:36  10  not one of the five men selected last year and notified of

10:30:42  11  the government's intention to execute him.

10:30:46  12         I suppose we could have submitted a clemency

10:30:50  13  petition then, but frankly, I don't think that it would

10:30:53  14  have received very much attention, for one thing, and it

10:30:57  15  would be -- would have been very strange for us to be

10:31:01  16  doing that while we were still pursuing the 60(b) motion.

10:31:06  17  Had the 60(b) motion been granted, clemency would not have

10:31:10  18  been necessary because we would have been granted relief.

10:31:12  19         Every substantive thing that we're litigating is

10:31:14  20  a substance thing we're litigating.  We're not litigating

10:31:18  21  about the niceties of, you know, where a venous access is

10:31:23  22  obtained in any of our pleadings in the 2241.  The

10:31:27  23  Protocol case is where we're litigating the issues about

10:31:32  24  the execution process.  So we are presenting substantive

10:31:34  25  issues in our 2241.

10:31:36 1        And argument could be made, well, why are you

10:31:39 2   presenting clemency now since you have the 2241?  Quite

10:31:43 3   frankly, 2241s are statistically a long shot.  And I

10:31:49 4   didn't feel that it was effective assistance of counsel

10:31:52 5   for Christopher Vialva to live on hope that I might get a

10:31:57 6   stay from the Southern District of Indiana.  So instead,

10:32:01 7   we pursued executive clemency, and that's why we were

10:32:05 8   doing it in this manner.

10:32:06 9        No matter what decision you make in these

10:32:08 10  cases -- I've been doing this for a while.  No matter what

10:32:11 11  decision you make, you always feel that it's the wrong

10:32:14 12  one, that you should have done something else or something

10:32:17 13  different.  What we're doing here is, we are trying to

10:32:19 14  enforce Mr. Vialva's rights under the laws of Texas and

10:32:24 15  under the Federal Death Penalty Act, which incorporate the

10:32:27 16  laws of Texas, as inconvenient and vexatious as that might

10:32:32 17  be, and to ask this court to hold the government to its

10:32:37 18  burden and to hold the government to the law.

10:32:40 19        We will be asking the Court in Indiana to take a

10:32:44 20  look at the procedure.  And we are asking the President of

10:32:48 21  the United States to look hard at this case and grant us

10:32:51 22  executive clemency.  We are trying to do everything we can

10:32:56 23  obviously to save Christopher Vialva's life, and that's my

10:33:00 24  job and that's why I'm doing this.  So I certainly

10:33:08 25  understand why I could be criticized for not having

10:33:11  1  presented a petition for executive clemency to President

10:33:14  2  Trump when he came in the door the first day of office,

10:33:16  3  but it seemed premature to us, and it also seemed like we

10:33:19  4  had a basis for hope that the 60(b) might be granted.

10:33:25  5       I hope that answers your questions about the

10:33:27  6  timing.

10:33:29  7       THE COURT:  It does.

10:33:30  8       Let me ask you this and this is -- I don't know

10:33:34  9  this has even a legal implication.  But what -- it seems

10:33:41  10  illogical to me that unless the Attorney General is -- it

10:33:48  11  seems illogical to me that the Attorney General is in this

10:33:53  12  time pursuing a capital -- to have your client executed

10:34:00  13  and that there is a realistic hope for clemency.  Could

10:34:04  14  you explain -- again, I don't -- I've never had to deal

10:34:08  15  with this, but why would there be any reasonable

10:34:12  16  expectation of clemency while the Attorney General is --

10:34:19  17  obviously there are a lot of attorneys on this Zoom call

10:34:23  18  who are all working hard to make sure that the -- that

10:34:28  19  execution date is met.

10:34:31  20       It seems illogical to me that you would have a

10:34:34  21  shot at clemency.  Could you explain why you think you do?

10:34:37  22       MS. OTTO:  Absolutely, your Honor.  I'd be happy

10:34:39  23  to do that.

10:34:40  24       We believe that we have a very legitimate case

10:34:44  25  for clemency for a number of very compelling reasons.  I

10:34:50  1  would like to point out that the Office of Pardon

10:34:53  2  Attorney, although it is within the Department of Justice,

10:34:56  3  is somewhat separated from the rest of the Department of

10:35:00  4  Justice, and it is my understanding that they make their

10:35:06  5  reviews and their recommendations independently.  They

10:35:10  6  certainly seek like -- they will be seeking Mr. Frazier's

10:35:14  7  opinions.  They did in the past when we -- when we

10:35:18  8  submitted the clemency application during the Obama

10:35:24  9  administration.  I'm certain that the United States'

10:35:26  10  interest in executing Mr. Vialva will be very vigorously

10:35:29  11  and very ably presented by the United States.

10:35:32  12          What we're saying is -- as far as Christopher

10:35:36  13  Vialva is concerned, that he is different from the men who

10:35:40  14  have been executed up to this point.  And by up to this

10:35:45  15  point, I can go all the way back to Timothy McVeigh.  Mr.

10:35:50  16  Vialva is very representative of a section of the men who

10:35:53  17  are on death row because a significant group of them were

10:35:59  18  charged and convicted before their 21st birthday.  If you

10:36:09  19  expand that out from the age of 25, it jumps from one

10:36:12  20  statistical point to another statistical point.

10:36:15  21          So although Mr. Vialva certainly isn't a teenager

10:36:18  22  anymore, he was 19 years old when he was charged in this

10:36:21  23  capital case.  He was 20 years old when he was convicted.

10:36:24  24  He has grown up on death grow, literally.  There are very

10:36:30  25  few services that are provided on death row.  It's

10:36:35  1   essentially you're put there to await death.  You're in a

10:36:41  2   single cell.  There's not a lot of rehabilitative

10:36:44  3   opportunities for you.

10:36:47  4           But over the course of Mr. Vialva's incarceration

10:36:51  5   during these past 20 years, he's lived long enough and

10:36:54  6   he's lived under circumstances that have allowed his brain

10:36:58  7   to mature.  He is now a fully functioning adult.  He has

10:37:05  8   used his adult brain to make very excellent choices while

10:37:09  9   he has been on death row.

10:37:10  10          He pursued one faith practice for a period of

10:37:14  11  time that I think was completely transformative for him.

10:37:20  12  It was a practice that required him to literally put his

10:37:24  13  head to the floor five times a day, to bend his stiff neck

10:37:29  14  before God, and to ask for forgiveness, and to ask to

10:37:33  15  humble his heart.

10:37:36  16          Since that time, he has moved on, and he is now a

10:37:39  17  practitioner of Messianic faith, which means that he has

10:37:43  18  accepted -- he refers to Jesus as Yeshua by his Hebrew

10:37:50  19  name.  He has accepted Yeshua as his messiah, as his

10:37:56  20  redeemer, and he is conducting his life in accordance with

10:38:00  21  those precepts.  He has a faith community.  He was

10:38:04  22  actually allowed to start a little faith group, and he has

10:38:06  23  nine people that he was practicing with before he was

10:38:08  24  moved over to the A range.

10:38:11  25          I think that Mr. Vialva was convicted by a jury

10:38:15  1  that never heard the most salient parts of his life, the

10:38:19  2  most salient features of his life.  We believe strongly

10:38:22  3  that we've made an excellent case for ineffective

10:38:26  4  assistance of counsel.  His learned in law counsel was

10:38:29  5  deeply conflicted at the time with a conflict that could

10:38:34  6  not be waived.

10:38:39  7      We believe that his jury didn't hear very

10:38:42  8  important things that were available that could have

10:38:46  9  explained and contextualized what happened that horrible

10:38:50  10  night.  And we believe that at least one juror probably

10:38:54  11  could have been persuaded that his life was worth saving.

10:38:58  12  We believe that if we are given the opportunity, we can

10:39:01  13  show the President, if he will give us that chance and we

10:39:04  14  hope that he will, we can show him that the idea that we

10:39:09  15  can judge at 19 years old a person to be unworthy of life,

10:39:14  16  that they're irredeemable, and that there is no hope for

10:39:18  17  anybody to ever do anything good again is wrong.

10:39:23  18      That future dangerousness is, in fact, wrong as

10:39:26  19  many times as it is right.  And Christopher Vialva is a

10:39:30  20  living, breathing example of how you say you know

10:39:34  21  somebody, and you really don't, based on the worst thing

10:39:37  22  that they've ever done.  I believe that this President

10:39:43  23  understands that.  I believe that the Department of

10:39:46  24  Justice understands that.

10:39:49  25      The rule of law exists so that everyone has an

10:39:53  1   opportunity to fully litigate their claims, and that did

10:39:58  2   not happen in this case.  If you look at this from a

10:40:01  3   purely legal standpoint, I think we have a basis for

10:40:07  4   executive clemency.  If you look at this from a purely

10:40:10  5   humanitarian standpoint from the question, does this man

10:40:14  6   deserve to die and is his death necessary, I believe that

10:40:17  7   we can make a case for clemency.

10:40:19  8        We have been granted a hearing in font of the

10:40:23  9   Office of Pardon Attorney, and they're going to

10:40:26  10  accommodate us on September 10th.  We'll have to be

10:40:29  11  appearing by Zoom.  I hope I get better at it between now

10:40:32  12  and then, but we will be appearing by Zoom.  One of his

10:40:38  13  attorneys who has been assisting us in this, Michael

10:40:42  14  Williams from Kirkland & Ellis, is also participating in

10:40:45  15  that presentation to the Office of Pardon Attorney.

10:40:50  16        I do not believe this is hopeless.  I never

10:40:53  17  believe it's hopeless, even in front of the Oklahoma

10:40:57  18  Pardon and Parole Board, because we have obtained clemency

10:41:00  19  from the Oklahoma Pardon and Parole Board in the past.

10:41:02  20  And some of our governors have granted clemency, and I

10:41:06  21  will be honest with you, Judge, it's been with people

10:41:08  22  exactly like this.  People where we could demonstrate that

10:41:12  23  they were changed, that prison had done its duty and had

10:41:17  24  done its job.  It had broken them of their bad behavior

10:41:21  25  and that they were changed men.

10:41:23   1       We will not be asking the President of the United

10:41:25   2  States to turn Mr. Vialva loose.  We will be asking for a

10:41:31   3  term of life in prison without he possibility of parole,

10:41:34   4  which should be more than sufficient and not greater than

10:41:36   5  necessary to do justice in this case.  I hope that answers

10:41:42   6  your question.

10:41:44   7       THE COURT:  With great eloquence.  Is there

10:41:46   8  anything else you'd like to add before I turn to Mr.

10:41:48   9  Frazier?

10:41:50  10       MS. OTTO:  No, sir.

10:41:51  11       THE COURT:  Mr. Frazier.

10:41:55  12       MR. FRAZIER:  Yes, sir.

10:41:57  13       I know the Court is familiar with the facts of

10:42:00  14  this case, but Mr. Vialva was judged by a jury 20 years

10:42:08  15  ago for the actions he did back on June 21st, 1999.

10:42:14  16  Unanimous recommendation for the death penalty.  Let me

10:42:18  17  remind the Court, as the Court is aware, that the

10:42:20  18  defendant executed Todd and Stacie Bagley in the trunk of

10:42:25  19  their own vehicle after kidnapping -- assisting in

10:42:28  20  kidnapping them, parading them around town to show them

10:42:33  21  off to their gang buddies, and then, made the cool,

10:42:37  22  calculated decision that Todd and Stacie Bagley had to die

10:42:41  23  because they had seen his face.

10:42:43  24       This was not a decision, Judge, that took place

10:42:46  25  over the course of a few minutes.  It took hours.  He

10:42:50 1 deliberated on it.  He had friends, gang members who were

10:42:53 2 with him who tried to dissuade him, and he still wanted to

10:42:58 3 go forward and kill the two people who were not only

10:43:01 4 begging for their lives, but trying to pray with them to

10:43:06 5 not only release themselves but just to give up what they

10:43:09 6 had been trying to do to them, the robbery and the

10:43:13 7 carjacking.

10:43:16 8       And at the moment when Chris Vialva opened the

10:43:21 9 trunk of that vehicle, Stacie Bagley pleaded with him and

10:43:23 10 told him, "Jesus loves you, Jesus forgives you," and his

10:43:27 11 words to her were to the effect of "shut up, bitch, I'm

10:43:30 12 about to open the trunk."  And when he did that, he shot

10:43:34 13 and killed -- he shot Stacie Bagley, who did not die, who

10:43:38 14 later died based on the fire that the codefendant set, but

10:43:41 15 did kill Todd Bagley instantly with a single bullet to the

10:43:46 16 head in the trunk.

10:43:47 17       That decision of the jury, Judge, came after not

10:43:52 18 only hours of testimony from an expert that Chris Vialva

10:43:58 19 had a deprived childhood, had deficiencies in his

10:44:02 20 upbringing, had hours and hours of testimony about the

10:44:07 21 background of Chris Vialva.  The jury got to hear all of

10:44:10 22 that, evaluated all of that, and took that in

10:44:14 23 consideration in determining that the statutory and

10:44:18 24 non-statutory aggravating factors outweighed the

10:44:20 25 mitigating factors, and sentenced him to death.

10:44:23 1          Chris Vialva's raised these issues regarding

10:44:29 2 ineffective assistance of counsel, conflict of counsel,

10:44:31 3 repeatedly over the years.  Those same requirements, those

10:44:38 4 claims that he's made have been unanimously rejected by

10:44:42 5 every court that's heard it.  In this particular case,

10:44:46 6 Judge, counsel is alleging that they really haven't had --

10:44:52 7 or they need additional time, and when the Court inquired,

10:44:54 8 the Court inquired about what you would do with the

10:44:56 9 additional time.

10:44:58 10          But, Judge, the Rule 60(b) motion -- counsel will

10:45:03 11 correct me if I'm wrong, but I believe the Rule 60(b)

10:45:06 12 motion, which was the last litigation that was pending

10:45:09 13 before the 2241, cert was denied on that back in January

10:45:13 14 or February, but it was earlier this year.  That 2241

10:45:18 15 motion could have been filed long before the notice that

10:45:22 16 was filed on July 31st of this year.

10:45:24 17          And as counsel has pointed out, they had already

10:45:28 18 previously sought clemency and, for whatever reason,

10:45:31 19 withdrew that petition.  And now, after the notice of

10:45:35 20 execution has been filed on July 31st, they have

10:45:40 21 petitioned the attorney -- the President for clemency in

10:45:44 22 this case.

10:45:45 23          And Mr. Vialva's not alleging that they've been

10:45:47 24 unable to raise claims related to the execution or any

10:45:51 25 other issues.  In fact, the fact that we're here today

| | | |
|---|---|---|
| 10:45:54 | 1 | arguing this motion on the injunction is, indeed, proof |
| 10:45:57 | 2 | that they have had opportunity.  There's litigation now |
| 10:46:00 | 3 | pending, I believe, in two other jurisdictions regarding |
| 10:46:05 | 4 | Mr. Vialva in either the Protocol or the 2241 motion where |
| 10:46:10 | 5 | essentially -- I'm not going to rehash the allegations, |
| 10:46:13 | 6 | but counsel will correct me if I'm wrong, but basically |
| 10:46:16 | 7 | the allegation that the 2255 was inadequate to raise |
| 10:46:21 | 8 | certain claims that they're raising now before the judge, |
| 10:46:24 | 9 | and yet, they've had ample opportunity to do that since |
| 10:46:28 | 10 | the legislation ended in this particular case. |
| 10:46:31 | 11 | The only requirement under federal law regarding |
| 10:46:34 | 12 | timing, Judge -- and because we've had this issue come up, |
| 10:46:38 | 13 | it's been talked about -- is whether or not the execution |
| 10:46:40 | 14 | should be stayed to give the defendants more time to do |
| 10:46:44 | 15 | something, whatever that may be.  We don't know what that |
| 10:46:48 | 16 | would be.  As counsel admits, more time you have, the more |
| 10:46:52 | 17 | time you have to see what you don't know or whatever the |
| 10:46:55 | 18 | argument was.  I know I'm not artfully rephrasing what she |
| 10:46:58 | 19 | said, but the Court heard it and relied on what she had |
| 10:47:01 | 20 | said. |
| 10:47:01 | 21 | But the only requirement under federal law in |
| 10:47:05 | 22 | this particular case is that the defendant be given 60 |
| 10:47:07 | 23 | days from the date of judgment to set an execution.  And |
| 10:47:12 | 24 | that's under 26.3 -- 28 C.F.R. 26.3.  The judgment in this |
| 10:47:18 | 25 | case, Judge, is 20 years old.  The judgment is not being |

10:47:22  1  issued by the Court today.  It's not being issued back

10:47:24  2  when the cert was denied on the 60(b) motion in January.

10:47:29  3  The judgment was entered in June of 2000.  More than 60

10:47:35  4  days have passed.

10:47:36  5        The only other requirement is that Mr. Vialva be

10:47:38  6  able to exhaust all of his appeals and all of his

10:47:41  7  collateral review before a date has been set, and he has

10:47:44  8  done that.  That 60 days has passed.  Once the defendant

10:47:51  9  has done -- has exhausted all of his remedies, he has no

10:47:55  10  further right to delay under federal law, and we are past

10:47:58  11  that.  We are at the stage now where Mr. Vialva's

10:48:01  12  execution -- the judgment is ripe to be executed at this

10:48:09  13  particular point.

10:48:10  14        I would also point out to the Court that the

10:48:18  15  clemency petition that's pending in this case certainly --

10:48:22  16  as counsel's pointed out, it sounds like the Office of the

10:48:25  17  Pardon Attorney is going to not only consider the petition

10:48:28  18  fully, but give Mr. Vialva a hearing.  And counsel's

10:48:32  19  right, they have consulted with us, and we will be

10:48:35  20  submitting information, you know, to them, as well, as

10:48:38  21  part of that process.

10:48:39  22        But the fact that there's a mere pending clemency

10:48:43  23  petition does not, in and of itself, give the right for a

10:48:46  24  stay.  Does not give the right to extend the time for the

10:48:50  25  date of execution.  And in fact, a similar petition was

| | |
|---|---|
| 10:48:53 | 1 |
| 10:48:57 | 2 |
| 10:49:01 | 3 |
| 10:49:03 | 4 |

1  denied in district court in the Mitchell case because the

2  regulations didn't give Mr. Mitchell a protected liberty

3  interest in a decision on his clemency petition from the

4  President.

5          The execution can take place without -- while the

6  clemency petition is pending, if it is, but it doesn't

7  sound like that's going to be the case in this particular

8  instance.  So in order, Judge, we're at the end of the

9  litigation.  We're at the end of the stage where there is

10  nothing left for Mr. Vialva to litigate, to raise, to

11  claim.  He's had every fair opportunity to do that.

12          I go back to what I argued earlier.  I'm not

13  going to repeat it.  But the point that was made in

14  counsel's -- in Vialva's original motion that we replied

15  to regarding BOP's compliance with Texas procedures is

16  limited strictly to the manner of the execution and not

17  the preexisting procedural requirements, which are

18  governed by federal law, and we've complied with those.

19          So pending any other questions from the Court,

20  that's all I have.

21          THE COURT:  Ms. Otto, anything else you'd like to

22  add?

23          MS. OTTO:  Your Honor, just very, very briefly.

24  The 2241 that we have filed in the Southern District of

25  Indiana became ripe when the United States decided to try

| | | |
|---|---|---|
| 10:50:12 | 1 | to execute Mr. Vialva.  The substance of that claim is, it |
| 10:50:14 | 2 | will be unconstitutional to execute Mr. Vialva because of |
| 10:50:20 | 3 | the procedural posture of this case. |
| 10:50:23 | 4 | Mr. Frazier has characterized the fact that we |
| 10:50:28 | 5 | had an opportunity for a 2255, that we had a 60(b), I |
| 10:50:32 | 6 | would just like to make the record clear that the hearing |
| 10:50:37 | 7 | that you are conducting today is the first hearing that |
| 10:50:40 | 8 | has ever been conducted during the postconviction process |
| 10:50:44 | 9 | of Mr. Vialva's case.  We've raised multiple substantive |
| 10:50:50 | 10 | issues about ineffective assistance of counsel, issues |
| 10:50:55 | 11 | that -- |
| 10:50:55 | 12 | THE COURT:  Ms. Otto, we've lost you. |
| 10:50:57 | 13 | MS. OTTO:  You've lost me?  Okay.  Wait. |
| 10:51:08 | 14 | THE COURT:  Ms. Otto, we've lost your connection. |
| 10:51:12 | 15 | Okay.  Hold on.  Okay.  Just a minute. |
| 10:51:32 | 16 | Let me just make sure, Ms. Otto -- |
| 10:51:35 | 17 | MS. OTTO:  Okay. |
| 10:51:42 | 18 | THE COURT:  -- that Lily was able to hear.  I was |
| 10:51:42 | 19 | breaking up, but I wanted to make sure Lily got |
| 10:51:42 | 20 | everything, and she's shaking her head yes.  So please go |
| 10:51:45 | 21 | ahead.  Thank you. |
| 10:51:46 | 22 | MS. OTTO:  All right.  I'm just responding very |
| 10:51:50 | 23 | briefly to Mr. Frazier's comments about the adequacy of |
| 10:51:56 | 24 | all of the procedure that Mr. Vialva has received, and I |
| 10:52:01 | 25 | simply want the record to reflect that this is the first |

10:52:03  1  hearing that's taken place during a postconviction.  We

10:52:08  2  raised multiple series of claims about ineffective

10:52:12  3  assistance of counsel.  We never received an evidentiary

10:52:15  4  hearing.

10:52:18  5       This is the first time I've had a chance in 17

10:52:21  6  years that I've been representing him to speak up for Mr.

10:52:26  7  Vialva before any United States District Judge.  So to the

10:52:30  8  extent that we're relying on all of the process that he

10:52:32  9  has received, and all the court hearings that he's had,

10:52:34  10  and all of his opportunities, I think it's fair to note

10:52:39  11  that our opportunities have, in fact, been greatly

10:52:45  12  limited.

10:52:47  13       What will happen in the Southern District of

10:52:49  14  Indiana, who knows.  We may be denied this afternoon.  I

10:52:54  15  have no way of knowing that.  We may get a hearing.  There

10:52:58  16  may be an injunction.  But that's not the reason we're

10:53:03  17  here today.  And the reason we're here today is because

10:53:07  18  the United States has not complied with the statute.

10:53:11  19       Now, Mr. Frazier again wants to say that the only

10:53:13  20  thing that's required is 60 days, but respectfully

10:53:18  21  disagree with him, and I believe that both the judgment in

10:53:22  22  this case and the rules are contrary to that.

10:53:27  23       I am requesting that this court ratify the prior

10:53:31  24  judgment that was entered by Judge Smith and say that

10:53:35  25  there is a stay in place until further order of the Court.

| | | |
|---|---|---|
| 10:53:40 | 1 | If the Court then wishes to proceed and say, and here's my |
| 10:53:44 | 2 | further order of the Court, I request that this court, if |
| 10:53:48 | 3 | it is inclined to take what has happened up to this point |
| 10:53:54 | 4 | as sufficiently formal from the United States Attorney to |
| 10:53:56 | 5 | qualify as a request for order and judgment to say that |
| 10:53:59 | 6 | any execution of Christopher Vialva may take place in |
| 10:54:03 | 7 | accordance with the time and place designated by the |
| 10:54:06 | 8 | Attorney General of the United States and the Director of |
| 10:54:08 | 9 | the Bureau of Prisons at a date not less than 120 days |
| 10:54:14 | 10 | from today's date, not 90 but 120, to afford us the same |
| 10:54:19 | 11 | fair opportunity that Mr. Mitchell received and that Mr. |
| 10:54:26 | 12 | Lee received when they were noticed back in July of last |
| 10:54:31 | 13 | year that the government intended to execute them. |
| 10:54:34 | 14 | I really don't know of any procedure under -- |
| 10:54:40 | 15 | certain practice or any other where I can simply go into |
| 10:54:43 | 16 | court without an imminent threat of some harm and ask the |
| 10:54:48 | 17 | Court to relieve me of the burden of that harm.  I believe |
| 10:54:52 | 18 | that we have proceeded in an orderly fashion.  To the |
| 10:54:56 | 19 | extent Mr. Frazier says that we should have done this |
| 10:54:58 | 20 | years ago, or we should have done it in February, or we |
| 10:55:01 | 21 | should have done it right after the clemency petition was |
| 10:55:08 | 22 | withdrawn, we should have resubmitted it to the Trump |
| 10:55:11 | 23 | administration, all of that is just really a make-way |
| 10:55:16 | 24 | argument that offers no cogent explanation for the |
| 10:55:20 | 25 | government's failure to simply follow the rules. |

| | | |
|---|---|---|
| 10:55:24 | 1 | I respectfully ask the Court to enjoin the |
| 10:55:27 | 2 | government, to preclude them from executing Mr. Vialva as |
| 10:55:33 | 3 | they have scheduled on September the 24th, and to enter |
| 10:55:35 | 4 | whatever appropriate order the Court feels is necessary at |
| 10:55:39 | 5 | this point.  But I am requesting not just my minimum of 90 |
| 10:55:43 | 6 | days, but 120 days, which under Texas law, I could request |
| 10:55:49 | 7 | and which appears to be somewhat standard practice in |
| 10:55:52 | 8 | Texas that execution dates are set well off. |
| 10:55:56 | 9 | Why haven't we done it up to this point?  Because |
| 10:55:59 | 10 | this is the point when the government has made it clear |
| 10:56:02 | 11 | they intend to execute our client.  It's ripe for review |
| 10:56:05 | 12 | at this time, and I respectfully request the Court enter |
| 10:56:08 | 13 | an appropriate order. |
| 10:56:11 | 14 | THE COURT:  Mr. Frazier, anything else? |
| 10:56:15 | 15 | MR. FRAZIER:  Yes.  Just one last point, Judge. |
| 10:56:17 | 16 | Essentially, Ms. Otto's asking for an extension |
| 10:56:23 | 17 | of the execution date, and in this particular case, that's |
| 10:56:26 | 18 | effectively granting a temporary stay of execution.  And |
| 10:56:29 | 19 | she's failed to make any showing on success on the merits |
| 10:56:32 | 20 | or any equitable entitlement to that remedy, as we've |
| 10:56:36 | 21 | talked about earlier, that we discussed earlier.  That's |
| 10:56:38 | 22 | all I have. |
| 10:56:39 | 23 | THE COURT:  Is there anything else you'd like to |
| 10:56:40 | 24 | add about any point? |
| 10:56:42 | 25 | MR. FRAZIER:  Are you speaking to me, Judge? |

| | | |
|---|---|---|
| 10:56:44 | 1 | THE COURT:  Yes, sir. |
| 10:56:45 | 2 | MR. FRAZIER:  I don't have anything else.  I |
| 10:56:47 | 3 | believe we've covered everything adequately.  I'm not |
| 10:56:50 | 4 | going to be repetitive. |
| 10:56:50 | 5 | THE COURT:  Ms. Otto, is there anything else |
| 10:56:52 | 6 | you'd like to say on behalf of your client with respect to |
| 10:56:56 | 7 | any issue that you've raised with the Court? |
| 10:57:00 | 8 | MS. OTTO:  Your Honor, on the point of have I |
| 10:57:04 | 9 | shown a likelihood of success, I believe the government |
| 10:57:07 | 10 | has basically admitted that they didn't follow the rules. |
| 10:57:12 | 11 | They're just asking you to overlook it.  I think I've won |
| 10:57:15 | 12 | on that point, and I think I'm entitled to an injunction |
| 10:57:18 | 13 | at this particular moment in time.  Thank you. |
| 10:57:21 | 14 | THE COURT:  Anything else? |
| 10:57:23 | 15 | MS. OTTO:  That's it, sir. |
| 10:57:23 | 16 | THE COURT:  Okay.  I'm going to put you on -- I'm |
| 10:57:28 | 17 | going to go off screen and mute you all.  I'm going to |
| 10:57:31 | 18 | check with my clerk on a couple of things.  If you all |
| 10:57:33 | 19 | would just be patient and wait for me, I'll be back in |
| 10:57:36 | 20 | just a couple of minutes.  Don't go anywhere because my |
| 10:57:40 | 21 | screen turns black.  And if you can still hear what I'm |
| 10:57:43 | 22 | saying, someone yell out that you can still hear what I'm |
| 10:57:46 | 23 | saying.  Thank you. |
| 10:57:47 | 24 | MS. OTTO:  Okay. |
| 11:05:38 | 25 | (Recess.) |

| | | |
|---|---|---|
| 11:05:38 | 1 | THE COURT:  If we could go back on the record, |
| 11:05:41 | 2 | please. |
| 11:05:41 | 3 | So I've heard everything I think I need to to |
| 11:05:44 | 4 | help me write up a decision and that we'll get out |
| 11:05:47 | 5 | hopefully by middle of next week, end of the week at the |
| 11:05:50 | 6 | latest. |
| 11:05:51 | 7 | Let me ask you all this.  My understanding, there |
| 11:05:56 | 8 | is another motion that has to do with unsealing that also |
| 11:05:59 | 9 | involves another defendant.  When -- I would like to have |
| 11:06:07 | 10 | a hearing on that.  I worry about getting it done by |
| 11:06:09 | 11 | tomorrow, so I was thinking Tuesday, if everyone were |
| 11:06:15 | 12 | available. |
| 11:06:16 | 13 | Let me hear first from Mr. Frazier. |
| 11:06:21 | 14 | MR. FRAZIER:  Yes, sir.  You said Tuesday? |
| 11:06:23 | 15 | THE COURT:  Yes, sir. |
| 11:06:25 | 16 | MR. FRAZIER:  Yes, sir.  That's fine with me. |
| 11:06:28 | 17 | THE COURT:  Ms. Otto. |
| 11:06:29 | 18 | MS. OTTO:  I'll be here Tuesday.  No problem. |
| 11:06:32 | 19 | THE COURT:  Okay.  I would do it Monday, but |
| 11:06:37 | 20 | Monday's a federal holiday, and I'm just not sure I could |
| 11:06:40 | 21 | get everyone coordinated that needs to be coordinated, |
| 11:06:43 | 22 | given the additional logistics we have of getting the |
| 11:06:47 | 23 | people who we need to be available. |
| 11:06:49 | 24 | And then, I think Mr. Bernard's counsel is |
| 11:06:53 | 25 | attending the call.  If he is -- |

| | | |
|---|---|---|
| 11:06:56 | 1 | MR. OWEN:  That's correct, your Honor. |
| 11:06:57 | 2 | THE COURT:  Would you be available on Tuesday? |
| 11:07:00 | 3 | MR. OWEN:  Yes, your Honor.  The only time I |
| 11:07:02 | 4 | would ask the Court if it were possible to accommodate, I |
| 11:07:05 | 5 | have a scheduled phone call with an inmate who is |
| 11:07:09 | 6 | incarcerated at twelve noon central time.  So if we would |
| 11:07:13 | 7 | do it sometime besides the lunch hour, I would certainly |
| 11:07:17 | 8 | be available and appreciate the Court's accommodating |
| 11:07:19 | 9 | that, if it's possible. |
| 11:07:20 | 10 | THE COURT:  I'm absolutely certain we can |
| 11:07:22 | 11 | accommodate not doing it at lunchtime.  So that's -- |
| 11:07:26 | 12 | MR. OWEN:  Thank you, Judge. |
| 11:07:27 | 13 | THE COURT:  That's an easy accommodation to make. |
| 11:07:29 | 14 | Thank you for giving us the heads up.  And my law clerk |
| 11:07:31 | 15 | will coordinate with that. |
| 11:07:32 | 16 | With my great thanks to everyone for their hard |
| 11:07:35 | 17 | work and their great arguments this morning, again, let me |
| 11:07:38 | 18 | make -- just because it's so hard to get these together, |
| 11:07:41 | 19 | let me give everyone one more opportunity. |
| 11:07:43 | 20 | Ms. Otto, if there's anything else you'd like to |
| 11:07:46 | 21 | say on behalf of your client, I invite you to do so at |
| 11:07:49 | 22 | this time. |
| 11:07:49 | 23 | MS. OTTO:  Thank you, your Honor. |
| 11:07:50 | 24 | The only thing that I would like to place on the |
| 11:07:53 | 25 | record is, the administration in Terre Haute made it |

11:07:58  1  possible for us to dial in, and Mr. Vialva has been able

11:08:04  2  to listen to this hearing on a speaker phone here in my

11:08:07  3  office.  I notified the chambers, your Honor.  I had

11:08:14  4  advised Ms. Miles about this earlier today.  I would like

11:08:17  5  the record to reflect that Mr. Vialva, although he was not

11:08:21  6  present with his counsel, was able to listen, and I thank

11:08:23  7  you very much for that.

11:08:24  8          THE COURT:  Well, and we did everything we could

11:08:27  9  to make that.  I mean, that's very important to me.  As I

11:08:31  10 said, I've -- you know, I understand the position you're

11:08:34  11 in.  I've done -- I've traveled to Huntsville.  Obviously

11:08:41  12 we'll try and do the same thing for both of the gentleman

11:08:44  13 on Tuesday whenever the call takes place.  It is very

11:08:46  14 important to me that they -- if we can, that they be

11:08:50  15 allowed to hear what we're discussing, and they hear your

11:08:54  16 arguments, and they hear Mr. Frazier's arguments, and they

11:08:57  17 hear what I'm asking.

11:08:58  18          So anything else from you, Ms. Otto?

11:09:01  19          MS. OTTO:  No, sir.  Thank you.

11:09:01  20          THE COURT:  Mr. Frazier?

11:09:03  21          MR. FRAZIER:  No, sir.

11:09:04  22          THE COURT:  Okay.  We'll get back together on

11:09:06  23 Tuesday.  Thank you so much.  Have a good weekend.  Take

11:09:09  24 care.

        25          (Proceedings concluded.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          *   *   *   *   *   *

2

3

4    UNITED STATES DISTRICT COURT  )

5    WESTERN DISTRICT OF TEXAS)

6

7       I, LILY I. REZNIK, Certified Realtime Reporter,

8    Registered Merit Reporter, in my capacity as Official

9    Court Reporter of the United States District Court,

10   Western District of Texas, do certify that the foregoing

11   is a correct transcript from the record of proceedings in

12   the above-entitled matter.

13      I certify that the transcript fees and format comply

14   with those prescribed by the Court and Judicial Conference

15   of the United States.

16      WITNESS MY OFFICIAL HAND this the 28th day of October,

17   2020.

18

19

20                              /s/Lily I. Reznik
                                LILY I. REZNIK, CRR, RMR
21                              Official Court Reporter
                                United States District Court
22                              Austin Division
                                501 W. 5th Street,
23                              Suite 4153
                                Austin, Texas 78701
24                              (512)391-8792
                                SOT Certification No. 4481
25                              Expires:  1-31-21